**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

IN RE:

APPLICATION OF INTERNATIONAL MINERAL
RESOURCES B.V. FOR AN ORDER TO TAKE
DISCOVERY PURSUANT TO 28 U.S.C. § 1782

                 Applicant.

Case No. 1:14-MC-00340 (GK)

---

**REPLY MEMORANDUM IN FURTHER SUPPORT OF INTERNATIONAL MINERAL
RESOURCES B.V.'S APPLICATION FOR 28 U.S.C. § 1782 DISCOVERY**

KOBRE & KIM LLP

1919 M Street NW
Washington, D.C. 20036
Tel:  +1 202 664 1900
Fax: +1 202 664 1920

*Counsel for Applicant International
Mineral Resources B.V.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .........................................................................................................................3

I.    THE OPPOSITION IMPLICITLY CONCEDES THAT IMR IS ENTITLED TO DISCOVERY IN AID OF THE CONTEMPLATED DUTCH PROCEEDINGS .................3

II.   IMR IS ALSO ENTITLED TO DISCOVERY IN AID OF THE PENDING DUTCH ACTION...........................................................................................................................4

   A.    Discovery Is Sought "For Use" In The Dutch Action ..................................................4

        1.    Contrary to Mr. Akhmetshin's Claims, Evidence Gathered Pursuant To IMR's Application May Be Submitted In The Dutch Action For The Foreseeable Future .................................................................................5

        2.    Mr. Akhmetshin Ignores the Fact That Reviewing Documents Stolen From An Opponent, Including Privileged Documents, Creates an Unfair Litigation Advantage.........................................................................7

        3.    Mr. Akhmetshin Mischaracterizes What IMR Seeks To Obtain By Its Application .................................................................................................8

   B.    The *Intel* Factors Weigh in Favor of Granting Discovery...........................................9

        1.    The First *Intel* Factor Is Satisfied Because Mr. Akhmetshin Is Not a Participant In The Dutch Action ..............................................................9

        2.    The Second *Intel* Factor Is Satisfied Because Dutch Courts Would Be Receptive to the Requested Discovery .................................................10

        3.    The Third *Intel* Factor Is Satisfied Because IMR Is Not Circumventing Any Dutch Proof-Gathering Restrictions.........................11

        4.    The Fourth *Intel* Factor Is Satisfied Because IMR's Discovery Requests Are Not "Unduly Intrusive or Burdensome" .............................13

III.  PRIVILEGE IS NOT A PROPER BASIS ON WHICH TO DENY IMR'S APPLICATION...............................................................................................................13

IV.   THE COURT IS NOT REQUIRED TO MAKE ANY FACTUAL FINDINGS .................17

CONCLUSION.....................................................................................................................19

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Alexander v. FBI*, 194 F.R.D. 316 (D.D.C. 2000) .......................................................... 5

*Application of Consorcio Ecuatoriano de Telecomunicaciones S.A.
v. JAS Forwarding (USA), Inc.*, ___ F.3d ___, No. 11-12897,
2014 WL 104132 (11th Cir. Jan. 10, 2014) ................................................................. 3

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. M19-88 (BSJ),
2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ......................................................... 10, 11

*In re Application of Grupo Qumma*, No. M 8-85, 2005 WL 937486
(S.D.N.Y. Apr. 22, 2005)............................................................................................ 7

*In re Application of Sveaas*, 249 F.R.D. 96 (S.D.N.Y. 2008)........................................ 5

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012) ........................... 7

*In re Chevron Corp.*, 749 F. Supp. 2d 135 (S.D.N.Y. 2010) ........................................ 14

*Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995)........................................ 9, 10

*Fox v. Am. Airlines,* No. 02-2069 (RMU), 2003 WL 21854800 (D.D.C. Aug. 5, 2003) .............. 3

*Freedom Banc Mortg. Servs., Inc. v. O'Harra*, No. 2:11-CV-01073,
2013 WL 3745815 (S.D. Ohio July 15, 2013)........................................................... 11

*FTC v. GlaxoSmithKline*, 294 F.3d 141 (D.C. Cir. 2002) ........................................... 16

*Fudali v. Pivotal Corp.*, No. 03-1460 (JMF), 2010 WL 4910263 (D.D.C. Dec. 2, 2010) ........... 14

*GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189 (D.D.C. 2003)........................................ 14

*Goldstein v. FDIC*, 494 B.R. 82 (D.D.C. 2013) ......................................................... 13

*Gushlak v. Gushlak*, 486 F. App'x 215 (2d Cir. 2012)................................................... 18

*Hall v. CIA*, 668 F. Supp. 2d 172 (D.D.C. 2009)...................................................... 16

*Hickman v. Taylor*, 329 U.S. 495 (1947).................................................................. 14

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ........................................... *passim*

**Page(s)**

*In re Letters Rogatory from the Tokyo Dist. Tokyo, Japan,*
   539 F.2d 1216 (9th Cir. 1976) .................................................... 18

*In re Lindsey*, 158 F.3d 1263 (D.C. Cir. 1998) .................................... 13, 17

*Lockhart v. Coastal Int'l Sec., Inc.*, 905 F. Supp. 2d 105 (D.D.C. 2012) ...................................... 3

*Neuder v. Battelle Pac. N.W. Nat'l Lab.*, 194 F.R.D. 289 (D.D.C. 2000) ................................... 16

*In re Republic of Ecuador*, No. 10-mc-00040 (GSA), 2010 WL 4027740
   (E.D. Cal. Oct. 14, 2010) ........................................................ 5

*In re Sarrio S.A.*, No. 9-372, 1995 WL 598988 (S.D.N.Y. Oct. 11, 1995) ................................. 15

*Stephenson v. Cox*, 223 F. Supp. 2d 119 (D.D.C. 2002) ...................................................... 4

*In re Subpoena Duces Tecum Issued to CFTC*, 439 F.3d 740 (D.C. Cir. 2006) .......................... 15

*Toms v. Office of the Architect of the Capitol*, 650 F. Supp. 2d 11 (D.D.C. 2009) ...................... 4

*United States. v. I.S.S. Marine Servs., Inc.*, 905 F. Supp. 2d 121 (D.D.C. 2012) ........................ 14

*United States v. White*, 887 F.2d 2671 (D.C. Cir. 1989) ........................................... 15

*In re Veiga*, 746 F. Supp. 2d 8 (D.D.C. 2010) .................................................... *passim*

*Weber v. Finker*, 554 F.3d 1379 (11th Cir. 2009) .................................................... 14


**Statutes**

28 U.S.C. § 1782 .................................................................................... *passim*


**Rules**

Fed. R. Civ. P. 26 .................................................................................... 15

Local Civ. R. 7(b) .................................................................................... 4

International Mineral Resources B.V. ("IMR") respectfully submits this reply brief in further support of its Application for an order pursuant to 28 U.S.C. § 1782 authorizing it to take discovery from Rinat Akhmetshin, a resident of the District of Columbia, for use in pending and contemplated foreign proceedings in the Netherlands (the "Application").

## PRELIMINARY STATEMENT

IMR's computer systems were hacked, resulting in the loss of sensitive personal information, trade secrets, and privileged and confidential materials.  That information was obtained for, and leaked to, third parties and used by IMR's opponents to gain an unfair tactical advantage in foreign litigation.   In this proceeding, IMR is not asking the Court to determine guilt, innocence, or wrongdoing.   IMR is not asking the Court to make findings on the merits of the claims in the underlying foreign proceedings.  In fact, the Application does not require the Court to make any factual findings at all.  The only relief that IMR is seeking in this proceeding is the opportunity to gather more information.  Contrary to Mr. Akhmetshin's contentions, IMR should be given that opportunity for four reasons.

*First*, as IMR explained in its opening brief, it seeks to obtain discovery by its Application not only with respect to the pending litigation in the Amsterdam District Court (the "Dutch Action"), but **also** in support of anticipated litigation against Eurochem Volga-Kaliy LLC ("ECVK") and/or EuroChem in the Netherlands (the "Contemplated Dutch Proceedings").  The United States Supreme Court has made clear that Section 1782 discovery is proper to assist in future proceedings that are "within reasonable contemplation."  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004).  The Opposition does not even attempt to address IMR's request for discovery in aid of the Contemplated Dutch Proceedings.  It is well-settled in this District that a failure to address an opponent's argument is treated as a concession.  Because Section 1782 does not require an

applicant to have more than one ground for pursuing discovery, IMR's Application should be granted for this reason alone.

*Second*, IMR is also entitled to Section 1782 discovery in aid of the ongoing Dutch Action. Although the Opposition includes a number of extraneous factual arguments, these arguments largely ignore the actual legal standards that govern Section 1782's "for use" requirement and the Supreme Court's *Intel* factors.  Further, Mr. Akhmetshin has not met his burden of demonstrating that the Dutch court will refuse to accept the discovery sought in this Application.  Indeed, in addition to claiming incorrectly that the evidentiary phase of the Dutch Action is closed, he completely overlooks the fact that IMR can use the discovery it seeks for separate reasons, such as an application to show that ECVK breached its duties of fair play and full and frank disclosure.

*Third*, contrary to Mr. Akhmetshin's contention, the potential application of the attorney-client privilege is not a proper basis on which to deny IMR's Section 1782 Application.  The attorney-client privilege cannot be asserted in the abstract, and any privilege challenge at this stage is premature.  Furthermore, many of the materials that IMR seeks are, on their face, not privileged.

*Finally*, the fact that Mr. Akhmetshin and the attorney who hired him have submitted self-serving affidavits to try to create a factual dispute regarding whether they had involvement in the hacking of IMR's computer systems does not mean that the Application should be denied. Indeed, Section 1782 applications are routinely granted without factual findings and, therefore, the Court need not resolve the factual dispute.  That said, if the Court is inclined to resolve the factual dispute, it should order an evidentiary hearing to resolve any credibility issues raised by the competing versions of events set forth in the affidavits that have been submitted.

Accordingly, and for the reasons described below, IMR respectfully requests that the Court grant it permission to take discovery from Mr. Akhmetshin.

<u>**ARGUMENT**</u>

## I.   **THE OPPOSITION IMPLICITLY CONCEDES THAT IMR IS ENTITLED TO DISCOVERY IN AID OF THE CONTEMPLATED DUTCH PROCEEDINGS**

The Supreme Court held in *Intel* that Section 1782 discovery is available for use, not only in ongoing foreign proceedings, but also in future proceedings that are "within reasonable contemplation."  *Intel*, 542 U.S. at 259; *see also Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, ___ F.3d ___, No. 11-12897, 2014 WL 104132, at *5 (11th Cir. Jan. 10, 2014) ("[C]ontemplated proceedings satisfy section 1782").  IMR explained at length throughout its Application that it is contemplating a new action against ECVK and/or EuroChem in the Netherlands seeking damages for the unlawful hacking of IMR's computer systems.  (*See, e.g.*, IMR Br. at 10, 12-13, 17.)  IMR further demonstrated that the use of discovery in aid of the Contemplated Dutch Proceedings satisfies both the statutory requirements of 28 U.S.C. § 1782(a) and the discretionary factors that the Supreme Court articulated in *Intel*.  (*See* IMR Br. at 11-18.)

Mr. Akhmetshin and his supporting witnesses had ample opportunity to respond to IMR's contentions regarding the Contemplated Dutch Proceedings, but they did not even attempt to argue that discovery would be inappropriate for this purpose.  Nor could they:  the Supreme Court was clear that Section 1782 applies in precisely this situation.  *See Intel*, 542 U.S. at 259.  The law is well-settled in the District of Columbia that when a party files an opposition, but fails to address certain arguments made by the movant, the court may treat those arguments as conceded. *See, e.g.*, *Lockhart v. Coastal Int'l Sec., Inc.*, 905 F. Supp. 2d 105, 118 (D.D.C. 2012); *Fox v. Am. Airlines,* No. 02-2069 (RMU), 2003 WL 21854800, at *2 (D.D.C.

Aug. 5, 2003), *aff'd,* 389 F.3d 1291 (D.C. Cir. 2004); *Toms v. Office of the Architect of the Capitol,* 650 F. Supp. 2d 11, 18-19 (D.D.C. 2009); *Stephenson v. Cox,* 223 F. Supp. 2d 119, 122 (D.D.C. 2002) (dismissing as conceded certain counts, noting that "[t]he court's role is not to act as an advocate for the plaintiff and construct legal arguments on his behalf in order to counter those in the motion to dismiss"); *accord* Local Civ. R. 7(b) (Court may treat motion as conceded when defendant fails to file timely opposition memorandum).

As such, Mr. Akhmetshin has waived any potential objections to discovery in aid of the Contemplated Dutch Proceedings.  For this reason alone, the Application should be granted.

## II.   IMR IS ALSO ENTITLED TO DISCOVERY IN AID OF THE PENDING DUTCH ACTION

Although the Court need not reach the issue of the pending Dutch Action, it provides an independent basis to grant IMR's discovery request.  Discovery in aid of the Dutch Action complies with Section 1782's "for use" requirement, and all the discretionary *Intel* factors weigh in favor of granting discovery.  Mr. Akhmetshin's scattershot arguments in opposition are without merit.

### A.   Discovery Is Sought "For Use" In The Dutch Action

There are three statutory requirements that must be met to obtain discovery under Section 1782.  *See* 28 U.S.C. § 1782(a).  Mr. Akhmetshin explicitly concedes that two of the three statutory requirements have been met in this case.  (*See* Opp. Br. at 11.)  The lone argument raised by Mr. Akhmetshin with respect to the statutory factors is that the requested discovery is not "for use" in a foreign proceeding.  28 U.S.C. § 1782(a).

As IMR explained in its Application, the "for use" requirement is extremely permissive:  it imposes a "de minimus" burden on the applicant to show that the requested

discovery has some relevance to the foreign proceeding. *In re Veiga*, 746 F. Supp. 2d 8, 17-18 (D.D.C. 2010); *see also In re Republic of Ecuador*, No. 10-mc-00040 (GSA), 2010 WL 4027740, at \*4 (E.D. Cal. Oct. 14, 2010) (concluding that applicant had made a "prima facie showing that the information it seeks . . . has, generally speaking, some relevance" to the foreign proceeding). Relevance is "broadly construed and encompasses any material that bears on . . . any issue that is or may be in the case." *Veiga*, 746 F. Supp. 2d at 19 (citing *Alexander v. FBI*, 194 F.R.D. 316, 325 (D.D.C. 2000)). When relevance is in doubt, district courts are instructed to permit discovery. *Id.* (citation omitted); *In re Application of Sveaas*, 249 F.R.D. 96, 106-07 (S.D.N.Y. 2008) ("Given the broadly permissive standard by which a court evaluates the relevance of discoverable material," it is inappropriate to deny Section 1782 discovery where there is a "factual dispute regarding the relevance of the discovery sought").

Mr. Akhmetshin does not (because he cannot) dispute the permissive nature of the "for use" standard in his Opposition. (*See* Opp. Br. at 11-12.) Rather, Mr. Akhmetshin makes three arguments, all of which are unavailing for the reasons set forth below.

### 1. Contrary to Mr. Akhmetshin's Claims, Evidence Gathered Pursuant To IMR's Application May Be Submitted In The Dutch Action For The Foreseeable Future

Mr. Akhmetshin argues that the discovery being sought cannot be "for use" in the Dutch Action because the evidentiary component of the case is closed and the Dutch court has set May 28 as a target date for its judgment on liability. (Opp. Br. at 11; Koppenol-Laforce Decl. ¶ 4). This argument lacks merit for the simple reason that, no matter what the outcome of any potential judgment on May 28, IMR will still have the opportunity to submit additional evidence in the Dutch Action, including evidence that may be gathered pursuant to this Application.

As set forth in IMR's Application, there is a reasonable chance that the Dutch court will issue an interim judgment instead of a final judgment on May 28, at which point IMR would most likely have the opportunity to submit additional evidence.  If, however, the Dutch court issues a final judgment against IMR, the court will then proceed to determine the quantum of ECVK's damages in the second phase of the case, at which point IMR will have the opportunity to submit additional evidence.  And if the court enters judgment in favor of IMR, ECVK will have the right to appeal.  Any such appeal by ECVK (or any appeal by IMR, if the Dutch court rules for ECVK) would be *de novo*, and IMR would not be limited to the record in the trial court. IMR would instead have the opportunity to submit any additional evidence it gathers, including evidence it obtains pursuant to this Application. (IMR Br. at 9-10, 13, 15-16, n.8; Declaration of Robbert de Bree, Mar. 20, 2014 ("De Bree Decl. I") ¶¶ 11-15, 26-31; Declaration of Robbert de Bree, May 22, 2014 ("De Bree Decl. II") ¶¶ 6-8.)  Given the amount at stake (over US $1 billion) in the Dutch Action, an appeal is a virtual certainty.  (De Bree Decl. II ¶ 8.)[1]

Moreover, as described in detail in its Application, IMR has the right to seek dismissal of the Dutch Action (and/or the lifting of the preliminary order freezing its assets) based on ECVK's violation of the duty of fair play and the duty of full and frank disclosure.  (IMR Br. at 9-10, 13; De Bree Decl. I ¶¶ 9-15; De Bree Decl. II ¶¶ 9-10.)  Notably, in his Opposition, Mr. Akhmetshin does not dispute at all the notion that IMR would be entitled to make applications based on a breach of the duties of fair play and full and frank disclosure.  Rather, he ignores

---

[1] As explained by Mr. De Bree, the Opposition and accompanying declaration of Marielle Koppenol-Laforce contain several statements regarding the Dutch court's willingness to accept additional evidence that can be misleading.  While it is true that IMR cannot submit additional evidence in connection with the judgment that is projected to be rendered on May 28, it is equally true that IMR will have the opportunity to submit additional evidence, including evidence gathered pursuant to this Application, at later points in the Dutch Action.  (*See* De Bree Decl. II ¶¶ 4-11.)

these points altogether and simply submits a declaration from Marielle Koppenol-Laforce that makes the unremarkable point that a Dutch court would not necessarily refuse to consider evidence that had been obtained by way of hacking.  (Koppenol-Laforce Decl. ¶¶ 11-13.)  Of course, this misses the point entirely — regardless of whether, as an ***evidentiary*** matter, stolen evidence may be considered in Dutch proceedings, the fact remains that IMR is entitled to seek a remedy from the Dutch court based on ECVK's violations of the duties of fair play and full and frank disclosure.

In any event, it is well-settled that district courts should not attempt to determine whether the evidence would be admissible in the foreign proceeding.  *Veiga*, 746 F. Supp. 2d at 17-18; *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) (noting unanimity among the Circuits who have ruled on the issue that "a district court . . . should not consider the *admissibility* of evidence in the foreign proceeding in ruling on a section 1782 application"); *In re Application of Grupo Qumma*, No. M 8-85, 2005 WL 937486, at *3 (S.D.N.Y. Apr. 22, 2005) ("The [foreign] court, rather than this Court, should decide whether the additional evidence is admissible, and it will be in a better position to do so if [the applicant] is permitted to conduct the requested discovery first.  If the § 1782 application were to be denied, [the applicant] would be deprived of any opportunity even to try to offer the evidence.").

> ### 2.   Mr. Akhmetshin Ignores the Fact That Reviewing Documents Stolen From An Opponent, Including Privileged Documents, Creates an Unfair Litigation Advantage

Mr. Akhmetshin also argues that discovery sought is not "for use" in the Dutch Action because IMR did not show that the hacked documents were themselves cited in the Dutch Action.  Specifically, Mr. Akhmetshin claims that the unfair advantage that IMR asserts ECVK obtained in the Dutch Action as a result of the hacking cannot be shown because none of the

documents that were actually submitted as exhibits in the Dutch Action were hacked.  (*See* Opp. Br. at 8, 9-10, 16.)

In making this argument, Mr. Akhmetshin attempts to circumvent the fact that ECVK obtained an unfair advantage in the Dutch Action by having access to (and, presumably, reviewing and analyzing) stolen documents to which it was not entitled.  Indeed, Mr. Akhmetshin does not even attempt to address the fact that, among the documents that IMR asserts were hacked, were ***sensitive attorney-client privileged documents***.  (*See* IMR Br. at 7 ("The files also contained numerous folders of documents relating to the ECVK legal proceedings and privileged attorney-client communications related to those proceedings.")).  If a party to litigation accesses its opponent's privileged and confidential materials, including documents that reflect the advice and views of its opponent's lawyers, it would gain an unfair tactical advantage, regardless of whether the information was appended to its submissions.  Notably, Mr. Akhmetshin cites no authority for the proposition that the Dutch court would ***not*** potentially regard this as an unfair advantage.  To the contrary, the Dutch court very well may find that it was.  (De Bree Decl. II ¶ 11.)

### 3.    Mr. Akhmetshin Mischaracterizes What IMR Seeks To Obtain By Its Application

Finally, Mr. Akhmetshin argues that "IMR is essentially seeking discovery to recover its own materials," and that "[t]here is no need for this Court to provide IMR access to its own documents."  (Opp. Br. at 12.)  This argument reflects a fundamental misunderstanding about the purpose of the discovery.  IMR is not seeking the IMR material in Mr. Akhmetshin's possession to obtain documents that it does not have.  IMR is seeking the IMR material in Mr. Akhmetshin's possession to understand the full scope of what was stolen and gain further information regarding what was done with that stolen information.  Further, IMR's request is not

limited simply to the return of IMR's documents.  For example, IMR also seeks communications between Mr. Akhmetshin and third parties about the hacking of IMR's computers.  Such communications are plainly relevant and are not accessible to IMR absent Section 1782 discovery.

### B.   The *Intel* Factors Weigh in Favor of Granting Discovery

Although the Opposition includes a number of arguments about the *Intel* factors, these arguments do not hold up when compared with the underlying legal standards.  Each factor is addressed in turn.

### 1.   The First *Intel* Factor Is Satisfied Because Mr. Akhmetshin Is Not a Participant In The Dutch Action

The key question posed by the first *Intel* factor is whether the discovery target is a *party* to the foreign proceeding.  *See Intel*, 542 U.S. at 264 ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid").  In this case, Mr. Akhmetshin acknowledges that he is not a party to the Dutch Action.  (*See* Opp. Br. at 15.)

Mr. Akhmetshin nevertheless argues that this factor should weigh in his favor because the subpoena requests documents "concerning IMR, Shaft Sinkers, ENRC, EuroChem, ECVK, and/or Salisbury & Ryan," and the Dutch court could have requested these documents from the litigation parties directly.  (Opp. Br. at 15-16.)  This argument fails for three reasons.  First, IMR is interested in these documents to the extent that they are in Mr. Akhmetshin's possession because that evidence, in and of itself, would tend to corroborate that he was involved in the hacking of IMR's computers.  It is therefore irrelevant if the Dutch court could request these documents from the parties themselves.  *Cf. Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1098 (2d Cir. 1995) (noting the lack of a "quasi-exhaustion requirement . . . that would force

litigants to seek information through the foreign or international tribunal before requesting discovery from the district court") (internal quotations omitted).

Second, Mr. Akhmetshin conflates requests for documents from the parties and requests for documents *relating to* the parties.  IMR seeks documents *relating to* the parties in Mr. Akhmetshin's possession, including communications between Mr. Akhmetshin and others who are not parties to the Dutch Action.  The Dutch court would not be able to obtain these documents.

Third, in any event, IMR seeks more than just documents.  It seeks permission to take Mr. Akhmetshin's deposition.

### 2. The Second *Intel* Factor Is Satisfied Because Dutch Courts Would Be Receptive to the Requested Discovery

The question posed by the second *Intel* factor is whether the foreign tribunal would be receptive to discovery.  In examining the second *Intel* factor, the burden is on the "party resisting discovery [to] point to '***authoritative proof***' that the foreign tribunal would reject the evidence sought." *Veiga*, 746 F. Supp. 2d at 23-24 (emphasis added) (internal quotations omitted).  Courts do not consider a "battle-by-affidavit of international legal experts" to be authoritative proof. *Euromepa*, 51 F.3d at 1099-1100; *see also In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. M19-88 (BSJ), 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006) ("proof resting on equivocal interpretations of foreign policy or law generally provides an insufficient basis to deny discovery").  Rather, a district court's inquiry is limited to proof "embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *Euromepa*, 51 F.3d at 1100.  In this case, Mr. Akhmetshin cites to no such declarations.  IMR, by contrast, provided ample support for the proposition that Dutch courts are amenable to Section 1782 discovery and that discovery

obtained pursuant to this Application may be used in later phases of the Dutch Action.  (*See* IMR Br. at 15-16 & n.7; *supra* at II.A.1; De Bree Decl. I ¶¶ 9-15, 23-31; De Bree Decl. II ¶¶ 5-12.)

Mr. Akhmetshin's only argument with respect to the second *Intel* factor is that the evidentiary phase of the Dutch Action is now over.[2]  (Opp. Br. at 16.)  However, as discussed above, that contention is not accurate.  IMR will have the opportunity to submit new evidence, including evidence gathered pursuant to this Application, no matter what judgment is rendered on May 28.  *See supra* at II.A.1.

### 3. The Third *Intel* Factor Is Satisfied Because IMR Is Not Circumventing Any Dutch Proof-Gathering Restrictions

The third *Intel* factor asks whether the applicant filed the application in bad faith in an attempt to circumvent the foreign tribunal's proof gathering restrictions.  *See, e.g.*, *Veiga*, 746 F. Supp. 2d at 24-25; *Gemeinshcaftspraxis*, 2006 WL 3844464, at *7.  Mr. Akhmetshin asserts that IMR filed the Application in bad faith in an effort to delay the proceedings in the Dutch Action. In support of this argument, Mr. Akhmetshin notes that (1) Shaft Sinkers, an entity associated with IMR, unsuccessfully raised an issue regarding hacking in separate legal proceedings in which IMR is not a party; and that (2) IMR uncovered the hacking issue in January 2014, but has not yet raised the issue in the Dutch Action.  (Opp. Br. at 8-9.)

Although these arguments were included in the Opposition in an attempt to paint IMR and associated entities in a negative light, they actually underscore why IMR's Section 1782 Application should be granted.  Hacking is, by nature, difficult to prove.  *See, e.g., Freedom Banc Mortg. Servs., Inc. v. O'Harra*, No. 2:11-CV-01073, 2013 WL 3745815, at *4 (S.D. Ohio July 15, 2013) ("Computer hacking is difficult to prove.")  IMR spent months conducting an

---

[2] The Opposition references the second *Intel* factor, but mistakenly quotes the third *Intel* factor. (*See* Opp. Br. at 16.)

investigation into the hacking of its computer systems, an investigation that involved forensic analysis, internal fact-gathering, and the hiring of outside consultants.  (*See* IMR Br. at 4-8.) Rather than jumping the gun by raising this argument before its investigation was completed, IMR instead sought to gather even more evidence, this time using the formal legal channel provided by 28 U.S.C. § 1782.  Contrary to Mr. Akhmetshin's contentions, all these efforts demonstrate that IMR is making a good faith attempt to gather information.  It is for this exact reason that the Section 1782 Application should be granted.

Mr. Akhmetshin also argues that this factor somehow weighs in his favor because, if the Dutch court wanted U.S. assistance, it could have requested that assistance through mechanisms established by the Hague Convention.  (*See* Opp. Br. at 16.)  But the Dutch court's ability to request documents through the Hague Convention does not render an application pursuant to 28 U.S.C. § 1782 improper.  If it did, then presumably Section 1782 applications would never be proper, at least when they were being pursued in aid of foreign litigation in a jurisdiction that is a member of the Convention.  Of course, that is not the law, and Mr. Akhmetshin cites no authority suggesting otherwise.  To the contrary, as IMR explained in its Application, Dutch courts have made clear that discovery obtained by way of 28 U.S.C. § 1782 is welcomed in that jurisdiction.  (IMR Br. at 15-17 & De Bree Decl. I ¶¶ 9-21, 23-25.)  This is so despite the fact that the Netherlands is a member of the Hague Convention.  *See* HCCH Members, *available at* http://www.hcch.net/index_en.php?act=states.listing (last visited May 21, 2014).[3]

---

[3] Mr. Akhmetshin's argument that the Dutch court could have, but did not, avail itself of the evidence-gathering procedures established by the Hague Convention also ignores the Contemplated Dutch Proceedings.  As explained earlier, the Supreme Court has specifically authorized the use of Section 1782 discovery where, as here, a party is seeking evidence for use in contemplated, future foreign proceedings.  *Supra* at 3-4 (citing *Intel*, 542 U.S. at 259). Obviously, the Dutch court would not assist with gathering evidence in contemplation of future litigation that has not yet been filed.

       **4.**     **The Fourth *Intel* Factor Is Satisfied Because IMR's Discovery Requests Are Not "Unduly Intrusive or Burdensome"**

The fourth *Intel* factor asks whether the discovery requests are "unduly intrusive or burdensome." *See Intel,* 542 U.S. at 265. In this case, in an effort to narrowly tailor the discovery being sought, IMR prepared a proposed subpoena with a single document request. Mr. Akhmetshin asserted that this lone request was "[p]atently [i]intrusive." (Opp. Br. at 17.) However, instead of explaining why the request was intrusive, Mr. Akhmetshin merely stated that the "remainder of this brief addresses exactly why the discovery requested is intrusive and burdensome." (*Id.*) IMR refutes Mr. Akhmetshin's other arguments elsewhere, and IMR's arguments apply with equal force here. Further, to the extent that this lone document request somehow does create a burden for Mr. Akhmetshin, IMR would, of course, meet and confer with him in an effort to resolve the issue.

## III.    PRIVILEGE IS NOT A PROPER BASIS ON WHICH TO DENY IMR'S APPLICATION

Mr. Akhmetshin argues that the entire Application should be denied outright because some of the material sought may be privileged. (Opp. Br. at 12-14.) This contention is wrong as a matter of fact and law.

As an initial matter, the mere fact that a person has been hired by an attorney to assist with ongoing litigation does not render everything that person said or did during the course of his engagement privileged and protected from disclosure. If it did, then attorneys and their consultants could never be subpoenaed. That is not the law. *See, e.g.*, *Goldstein v. FDIC*, 494 B.R. 82, 90 (D.D.C. 2013) (allowing questioning of non-party consultant and noting that "the attorney-client privilege is a limited one, and it does not apply to every communication"); *In re Lindsey*, 158 F.3d 1263, 1281 (D.C. Cir. 1998) ("The attorney-client privilege must be strictly confined within the narrowest possible limits consistent with the logic of its principle . . .

"[w]ithout . . . limitations [on the protection accorded the work of third persons], the attorney-client privilege would engulf all manner of services performed for the lawyer that are not now, and should not be, summarily excluded from the adversary process.") (internal quotations omitted); *United States. v. I.S.S. Marine Servs., Inc.*, 905 F. Supp. 2d 121, 133 (D.D.C. 2012) ("not 'all written materials obtained or prepared by an adversary's counsel with any eye toward litigation are necessarily free from discovery in all cases.'") (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)); *Fudali v. Pivotal Corp.*, No. 03-1460 (JMF), 2010 WL 4910263, at *1-2 (D.D.C. Dec. 2, 2010) (denying motion to quash subpoena served on two law firms but allowing certain privileged information to be redacted); *GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 197 (D.D.C. 2003) (granting motion to compel subpoena served on law firm).   In fact, ***courts have found that attorneys themselves can be subject to discovery pursuant to 28 U.S.C. § 1782***.  *See, e.g.*, *In re Chevron Corp.*, 749 F. Supp. 2d 135, 137, 141 (S.D.N.Y. 2010) (granting Section 1782 Application aimed at lead counsel for plaintiffs who sought multibillion-dollar judgment against Chevron in Ecuador).

Because the law is clear that lawyers and their consultants can be subject to discovery, Mr. Akhmetshin's privilege arguments should be rejected as premature.  The Court need not, and should not, resolve questions regarding the potential application of the attorney-client privilege in the abstract.  Rather, the law contemplates that, after a court grants an application such as this and discovery requests are served, a respondent such as Mr. Akhmetshin will have an opportunity to raise whatever privilege objections he deems appropriate under the Federal Rules of Civil Procedure.  *Weber v. Finker*, 554 F.3d 1379, 1384 (11th Cir. 2009) ("Once discovery is authorized under § 1782, the federal rules, Fed. R. Civ. P. 26–36, contain the relevant practices and procedures for the taking of testimony and the production of documents."), *cert. denied,* 558

U.S. 816 (2009)*; see also Veiga*, 746 F. Supp. 2d at 19 ("Generally speaking, the standards for discovery set out in the Federal Rules of Civil Procedure also apply when discovery is sought under § 1782(a)").   Indeed, this is precisely the procedure employed by the court in the single case cited by Mr. Akhmetshin in support of his argument that IMR's Application should be denied on privilege grounds. *See* Opp. Br. at 13; *In re Sarrio S.A.*, No. 9-372, 1995 WL 598988, at *1-3 & n.1 (S.D.N.Y. Oct. 11, 1995) (ruling on privilege issue only after (1) granting Section 1782 Application *ex parte*, (2) applicant issued subpoenas, and (3) respondents filed a motion for protective order).

If Mr. Akhmetshin has legitimate privilege objections that he wishes to assert, he should prepare and provide a privilege log after he is subpoenaed so that IMR can assess whether it wishes to challenge such privilege assertions. *See* Fed. R. Civ. P. 26(b)(1), 26(b)(3), 26(b)(5); *In re Subpoena Duces Tecum Issued to CFTC*, 439 F.3d 740, 750 (D.C. Cir. 2006) ("It is well established that the proponent of a privilege bears the burden of demonstrating facts sufficient to establish the privilege's applicability.").   If IMR does not believe the communications on the log are privileged, then the parties presumably will meet and confer with respect to those privilege log entries.   To the extent that the parties are not able to resolve their dispute through the meet and confer process, the issue can be raised with the Court and will be ripe for adjudication as the Court will have a full record on which to determine whether the attorney-client privilege (or any exception to it such as the crime-fraud exception[4]) applies to any particular communication.

Setting aside the procedure for resolving privilege disputes, several categories of information sought by the proposed subpoena do not implicate the attorney-client privilege at all.

---

[4] Otherwise privileged communications are not protected if they "further a crime, fraud or other misconduct." *United States v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989).   IMR expects that it would argue that otherwise privileged communications would not be entitled to protection from disclosure if they revealed a plan to hack its computer systems.

First, IMR seeks evidence showing that Mr. Akhmetshin is in possession of IMR's confidential materials; the Opposition acknowledges — as it must — that such documents are not privileged. *See* Opp. Br. at 12 ("[O]ther than privileged documents, IMR is essentially seeking discovery to recover its own materials"); *see also Neuder v. Battelle Pac. N.W. Nat'l Lab.*, 194 F.R.D. 289, 294 (D.D.C. 2000) (noting that non-privileged documents cannot be transformed into privileged material simply because they come into the possession of lawyers or those who may be acting on behalf of lawyers).

Second, IMR seeks evidence showing that Mr. Akhmetshin passed IMR's confidential information to third parties, and it is black letter law that communications with third parties are not privileged. *Hall v. CIA*, 668 F. Supp. 2d 172, 192 (D.D.C. 2009) ("Information shared with a third party is not protected by the attorney-client privilege.").

Third, IMR seeks materials relating to Mr. Akhmetshin's public relations work done on behalf of ECVK, particularly related to the dissemination of information about IMR from hacked documents or otherwise, in an effort to gain an advantage in the Dutch Action. According to Mr. Akhmetshin's affidavit, in addition to performing research and consulting services, he also "developed and proposed to ECVK a strategic communications strategy relevant to the Dutch action." (*See* Akhmetshin Aff. ¶ 6.) Such public relations or government relations work is not privileged and therefore outside the scope of any claimed immunity from production.[5] *See*

---

[5] Mr. Akhmetshin is incorrect in arguing that his public relations work for ECVK through Salisbury & Ryan is privileged. The attorney-client privilege and work-product doctrine apply only to materials that are of a legal nature, not business materials. *See Neuder*, 194 F.R.D. at 292-93. Thus, documents and information related to Mr. Akhmetshin's proposed public relations strategy are not privileged. Mr. Akhmetshin's reliance on *FTC v. GlaxoSmithKline*, 294 F.3d 141, 148 (D.C. Cir. 2002), is misplaced. *GlaxoSmithKline* dealt with the separate and inapposite issue of whether the attorney-client privilege should be applied to communications with third-parties who are acting in the same role as employees and were integral to the rendering of legal services. *See id.* at 147-48. *GlaxoSmithKline* did not hold that PR materials

*Lindsey*, 158 F.3d at 1270 ("[A]dvice on political, strategic, or policy issues, valuable as it may have been, would not be shielded from disclosure by the attorney-client privilege.").  Indeed, Mr. Akhmetshin essentially conceded as much when he noted in his declaration that his retention by Salisbury & Ryan LLP in the present dispute is equivalent to his retention by law firms in *Egiazaryan v. Zalmayev*.  (*See* Akhmetshin Aff. ¶¶ 5-6.)  Notably, in *Egiazaryan v. Zalmayev*, Mr. Akhmetshin produced documents and sat for a deposition.  *See* Mem. of Law at 1-3 (ECF No. 171), *Egiazaryan v. Zalmayev*, No. 11-2670 (S.D.N.Y. Aug. 14, 2012).  Mr. Akhmetshin should be directed to do the same here.

## IV.     THE COURT IS NOT REQUIRED TO MAKE ANY FACTUAL FINDINGS

The Opposition and its supporting documents include a barrage of (often false and misleading) allegations about IMR and associated persons and entities.  Many of these allegations have no relevance whatsoever to this proceeding and are nothing more than a transparent attempt to paint IMR in a negative light.  Other allegations, such as the ones made by Mr. Akhmetshin and Mr. Salisbury in their supporting affidavits, attempt to dispute the facts set forth in IMR's Application.  For example, Mr. Akhmetshin denies that he discussed the hacking of IMR's computers in the London coffee shop, and both Mr. Salisbury and Mr. Akhmetshin intimate that Mr. Akhmetshin was hired for legitimate purposes.[6]  (Akhmetshin Aff. ¶¶ 6, 14; Salisbury Decl. ¶ 21.)

---

may be shielded by the attorney-client privilege simply because they were funneled through lawyers.

[6] Interestingly, in his carefully worded affidavit, Mr. Akhmetshin does not deny involvement in, or knowledge of, the hacking of IMR's computer systems.  Rather, he stops short and maintains that "I am not a computer specialist and I am not capable of "'hacking,'" glaringly raising the question of whether he was nonetheless involved with or had knowledge of the hacking.  (Akhmetshin Aff. ¶ 8.)  Similarly, in many ways, the affidavit submitted by Mr. Akhmetshin and the declaration submitted by Mr. Salisbury raise more questions than they answer.  For example, Mr. Akhmetshin was purportedly retained as a consulting expert and was given an initial payment

But the fact that Mr. Akhmetshin is attempting to manufacture a factual dispute does not mean that the motion should be denied or that the Court is required to resolve the factual dispute. District courts are not required to make any factual findings before ruling on a Section 1782 application. *See Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("[Respondent's] contention that he was entitled to respond to the § 1782 application both factually and legally and have his response considered by the district court as part of its plenary consideration of the application is without merit") (internal citations omitted). Indeed, in recognition of the fact that potential factual disputes need not be resolved in this context, many courts make it a practice to grant Section 1782 applications *ex parte*. *See id.* ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*"); *see also In re Letters Rogatory from the Tokyo Dist. Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976) ("Letters Rogatory are customarily received and appropriate action taken with respect thereto *ex parte*.").

Here, IMR has submitted a detailed Application explaining the basis for its discovery request and has satisfied the statutory and discretionary factors for obtaining that discovery. That is all that is required. That said, if the Court is inclined to make factual findings before ruling on the Application, it should order an evidentiary hearing to resolve any credibility issues raised by the competing versions of events set forth in the parties' affidavits.

---

of $45,000, with undisclosed additional sums to be paid thereafter. (*Id.* Ex. A at 1.) Yet Mr. Akhmetshin never testified in any proceeding and none of his research results were used by Salisbury & Ryan LLP. (Opp. Br. at 9-10.)

## CONCLUSION

Based on the foregoing, IMR respectfully requests that the Court issue an Order approving IMR's Application for discovery.


Dated:        Washington, D.C.
              May 22, 2014

                                        Respectfully submitted,

                                        /s/S. Nathan Park_____
                                        S. Nathan Park (D.C. Bar No. 1000365)
                                        KOBRE & KIM LLP
                                        1919 M Street NW
                                        Washington, D.C. 20036
                                        Tel:  +1 202 664 1900
                                        Fax: +1 202 664 1920
                                        nathan.park@kobrekim.com

                                        Jonathan D. Cogan (admitted *pro hac vice*)
                                        KOBRE & KIM LLP
                                        800 Third Avenue
                                        New York, New York 10022
                                        Tel:  +1 212 488 1200
                                        Fax: +1 212 488 1220
                                        jonathan.cogan@kobrekim.com

                                        *Attorneys for Applicant International*
                                        *Mineral Resources B.V.*