UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>APPLICATION OF INTERNATIONAL MINERAL RESOURCES B.V. FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782<br><br>Applicant. | Case No. 1:14-MC-00340 (GK) |

**NOTICE OF DECISION IN DUTCH ACTION**

# EXHIBIT A

COPY

# JUDGMENT

**DISTRICT COURT OF AMSTERDAM**

Private Law Division

Case number / cause-list number: C/13/539097/HA ZA 13-378

**Judgment of 25 June 2014**

in the case of

the company under foreign law
**EUROCHEM VOLGA-KALIY LLC**,
having its registered office in Kotelnikovo, Russian Federation,
claimant,
register lawyer Mr A. Knigge in Amsterdam,

versus

the private company with limited liability under Dutch law
**INTERNATIONAL MINERAL RESOURCES B.V.,**
having its registered office in Amsterdam,
defendant,
register lawyer, Mr. J.P. Heering in The Hague.

Hereinafter the parties will be referred to as ECVK and IMR.

## 1. The proceedings

1.1   The course of the proceedings is apparent from:
-   the interim judgment of 18 September 2013,
-   the written report of the personal appearance of the parties held on 21 January 2014, including the documents mentioned therein (in so far as it has been decided during the personal appearance of the parties that these documents will be included in the case file).

1.2   Finally judgment has been rendered.

## 2. The facts

2.1.   ECVK is a subsidiary of OJSC Mineral and Chemical Company Eurochem (hereinafter referred to as: Eurochem). ECVK has been incorporated by Eurochem in connection with the development and exploitation of a potassium field in Russia. Hereinafter this activity will be referred to as "the Project".

2.2. It was necessary for the implementation/performance of the Project that two mine shafts, both approximately -1.100 metres deep, were to be constructed. In the context of the Project, ECVK went in search of a company able to carry out this assignment partially or completely.

2.3. Shaft Sinkers (Pty) Ltd., hereinafter referred to as ShS, is a legal entity under South African law. ShS is active in the sinking of mine shafts. Early 2007, Alferon Management Ltd. (hereinafter referred to as: Alferon) alerted IMR to an investment opportunity in the form of the acquisition of an indirect equity interest in ShS. On 27 February 2007, IMR granted a power of attorney to Alon Davidov (hereinafter referred to as: Davidov) who was working for Alferon as a consultant, in order to represent ShS at the negotiations on the acquisition of an equity interest in ShS. The power of attorney automatically ended on 31 December 2007. In the course of 2007, Capstone 615 (Pty) Ltd. (hereinafter referred to as: Capstone) acquired all the shares in ShS, and IMR in its turn 54% of the shares in Capstone. The remaining shares in Capstone were afterwards held by Mmakau Mining (Pty) Ltd. and HolGoun Engineering (Pty) Ltd. (hereinafter referred to as: Mmakau and HolGoun). In its capacity as a shareholder in Capstone, IMR was entitled to nominate three of the six members of the Board of Directors, including the chairman, of both Capstone and ShS.

2.4. On 9 November 2007, Davidov was appointed non-executive director of ShS at the recommendation of IMR.

2.5. Jai Krishna Saraf (hereinafter referred to as: Saraf) was a managing director of IMR from October 2006 until May 2007. On 9 November 2007, Saraf was appointed non-executive director of ShS at the recommendation of IMR and filled this position until 1 January 2010. As from October 2007, Saraf was also a member of the Board of Directors of Capstone.

2.6. Ilmir Masgutov (hereinafter referred to as: Masgutov) was a managing director of IMR since 2006. On 18 March 2008, he was appointed non-executive director of Capstone at the recommendation of IMR and ended both appointments on 25 June 2008.

2.7. Amre Youness (hereinafter referred to as: Youness) was appointed a non-executive director of ShS at the recommendation of IMR on 17 June 2008 and held this office until 1 January 2011. As from July 2008, Youness worked as a consultant for Alferon. Alferon was taken over by IMR Management Services Limited (hereinafter referred to as: IMSL) in December 2008. In April 2009, Youness was appointed Chief Executive Officer (CEO) of IMSL.

2.8. Negotiations were conducted between ShS and ECVK about the sinking of one of the two mine shafts (the so-called Cage Shaft) by ShS. ShS mentioned then that it wished to construct this mine shaft by using the so-called grouting method. This method – which deviates from the traditional freezing method – means, briefly put, that water-containing layers which are traversed by the mine shaft are permanently strengthened by injecting so-called grouting material. On 14 December 2007, a Services Agreement was concluded between ShS and ECVK on the basis of which ShS was to investigate the technical possibilities for the construction of a mine shaft by way of the grouting method. In a letter of 14 March 2008, ShS guaranteed ECVK that by using the grouting method the shaft to be built to a depth of –540 metres could be constructed watertight. On 17 July 2008, an

agreement (hereinafter: the BCW Agreement) was effected between ShS and ECVK with regard to the building of the mine shaft.

2.9. In 2010 all the shareholders in Capstone transferred their shares to Shaft Sinkers Holdings Plc (hereinafter referred to as: ShS Holdings) in exchange for an interest in ShS Holdings. Since then, IMR has held an interest of approximately 48% in ShS Holdings. The shares in ShS Holdings have been quoted on the London Stock Exchange since December 2010.

2.10. The prospectus drawn up on the occasion of this flotation of ShS Holdings mentions the following, among other things:

> *"Since April 2007, IMR has exercised significant control and influence over the Group`s operations. Immediately following Admission, IMR will own 48.0 per cent of the Company* (with which ShS Holdings is meant at all times; District Court) *and, as a result, will be able to exercise significant influence over all matters requiring shareholder approval, including the election of directors and significant corporate transactions. Although the Company has entered into a relationship agreement with IMR, there can be no assurance that IMR will not continue to exert significant influence over the Group`s operations.*
> *(…)*
> *PART II: DIRECTORS, SENIOR MANAGERS AND CORPORATE GOVERNANCE*
> *1. Directors*
> *The Board of Directors of the Company will, on Admission, consist of three Executive and four Non-executive Directors:*
> ***Amre Youness, Non-executive Chairman, Age 48***
> *Mr Youness is the Chief Executive Officer of IMR Management Services Limited.*
> *(…)*
> ***Alon Davidov, Chier Executive Officer, Age 36***
> *Mr Davidov has been a director of Shaft Sinkers (Pty) since 2007. He currently works for IMR in its business development function (2003 to present) but will, on Admission, no longer be employed by IMR. As IMR`s South African representative, he was responsible for IMR`s original investment in the Group in 2007 and oversight of the Group`s subsequent development on behalf of IMR. (…)*
> *(…)*
> *8.11 (…) (i) Amre Youness is Chief Executive Officer of IMR. (…)"*

2.11. In December 2011, ShS suspended its activities on the mine shaft at ECVK`s request. This after it had become apparent to ECVK that at that moment ShS had dug a shaft with a depth of –93.5 metres (for an intended depth of more than –1,100 metres) and that the walls of this shaft let water through, so that there was water in the shaft all the time. In April 2012, ECVK terminated the BCW Agreement.

2.12. ECVK has instituted two arbitration proceedings against ShS. In these proceedings, it states that ShS was aware as early as in May 2008 that the grouting method used by it was unsuitable for the construction of a (watertight) mine shaft in the layers in the soil of the field in question. This knowledge had been obtained by ShS, according to ECVK, on the basis of a report of BASF

(hereinafter referred to as: the BASF Report) about the possibilities/impossibilities of mining in a manner as planned by ShS. ShS had not informed ECVK of the content of the BASF Report. Furthermore, ECVK stated in the arbitration proceedings that ShS had given certain guarantees contrary to the truth and that ShS had informed ECVK incorrectly on the results achieved. In this context ECVK blames ShS that it had bribed the person managing the implementation of the activities on ECVK`s behalf in situ, Mr A. Skrylnikov (hereinafter referred to as: Scrylnikov). For this reason ECVK claims damages from ShS to the amount of EUR 805,600,000 based on fraud, bribery and other wrongful actions. ShS has filed counterclaims in both arbitration proceedings up to an amount of US$ 15,000,000.

2.13.   On 26 June 2013, ECVK filed a petition to levy a prejudgment attachment on movable goods and shares as well as an attachment by garnishment against IMR. The Relief Judge of this District Court granted permission to do so in a judgment of 19 July 2013.

**3.      The dispute**

3.1.    ECVK requests to obtain a declaratory decision:
primarily
1. to the effect that IMR is liable towards ECVK on the basis of wrongful act because IMR has paved the way or permitted wrongful actions of ShS or at least omitted to prevent these and to warn ECVK against these,
2. to the effect that IMR is liable towards ECVK on the basis of wrongful act due to wrongful actions committed by or attributable to ShS,
3. to the effect that IMR is liable towards ECVK for the wrongful actions committed by Davidov.
Alternatively:
4. to the effect that IMR in its capacity as a (pseudo) representative of ShS towards ECVK on the basis of wrongful act  due to committing wrongful actions as a representative or due to attribution or liability in a certain capacity for wrongful actions committed by Davidov in the representation activities of IMR.
More alternatively:
5. to the effect that IMR has to be equated with ShS and thus is liable for the damage arising from wrongful actions towards ECVK for which ShS is held liable in any proceedings.
Even more alternatively:
6. to the effect that IMR is liable towards ECVK for incitement and/or profiting of wrongful actions committed by ShS.
Ordering IMR to compensate the damage suffered by ECVK to be assessed later by the Court and awarding the costs of the proceedings against IMR.

3.2.    ECVK states – briefly put – that IMR as majority shareholder of ShS has intensively intervened in the policy of ShS and therefore can be held liable for the wrongful actions committed by ShS. Furthermore IMR is liable, according to ECVK, for wrongful actions committed by Davidov, because it was Davidov`s employer, or at least because Davidov has committed the wrongful actions as a non-employee in the context of his performance of an assignment of IMR. In so far as Davidov

has committed wrongful actions in the context of his capacity as a representative of IMR, ECVK deems IMR liable for it as well. In addition, the wrongful actions of ShS and Davidov have to be considered as committed by IMR on the basis of attribution. Furthermore IMR is liable as a representative of ShS for wrongful actions committed by ShS (via Davidov). IMR is also directly liable towards ECVK, because it can be equated with ShS or because it has wrongfully acted towards ECVK by provoking and/or profiting from wrongful actions committed by ShS, always according to ECVK.

3.3. IMR has advanced a defence. It has intensively contested to have been involved in the business operations of ShS. It had no knowledge of the wrongful actions alleged by ECVK. Furthermore IMR contests that it has employed Davidov or that he has carried out activities for IMR as a non-employee. Davidov cannot be considered to be a representative of IMR, either. Therefore there can be no attribution of the wrongful actions allegedly committed by ShS. IMR further contests that it has acted as a representative of ShS (via Davidov) and that it can be equated with ShS. IMR also denies that it has incited to commit any wrongful activity of ShS towards ECVK or has profited from it.

3.4. The arguments of the Parties will be discussed below, in so far as these are of interest.

**4.      The assessment**

4.1. The core of the case is the question whether IMR is liable for damage suffered by ECVK as a result of a wrongful act committed by ShS and/or its director Davidov. This question can only be answered in the affirmative if it is established that ShS and/or Davidov have committed the alleged wrongful actions, but also that IMR can be taken to court for it. The starting point for this is that ECVK, which invokes that (i) ShS and/or Davidov have acted wrongfully towards it, and that (ii) IMR is liable for it, has to advance sufficient concrete facts and circumstances from which this follows and, if IMR contests stating reasons, to substantiate (in further detail) and, if necessary, to prove its arguments. The District Court sees reason to first answer the question of IMR`s liability.

*I.      IMR liable as a shareholder?*

4.2. ECVK states in the first place that IMR is liable as an (indirect) shareholder of ShS. ECVK states that IMR was intensively involved in the policy and the business operations of ShS including the wrongful actions committed towards ECVK and had a decisive influence on these. ECVK further states that IMR had knowledge of the wrongful actions of ShS and had incited to commit these or permitted these and nevertheless had omitted to intervene or to warn ECVK.

4.3. The District Court is of the opinion that it cannot result from what has been advanced by ECVK that IMR was actively involved in the policy and business of ShS and had a decisive influence on these in the period in which the alleged wrongful actions of ShS were committed. It has been established that IMR indirectly held 54% of the shares in ShS. That is insufficient in itself to assume that IMR was indeed actively involved in and influenced the business operations of ShS. Nor has ECVK advanced any concrete facts or circumstances against IMR`s contestation which show this direct involvement of IMR. EVCK has also stated that the participation in ShS was very important to IMR and that it is to be assumed for that reason that IMR was intensively involved in the business operations of ShS. ECVK has not made this specific in further detail. This would have been logical all the more now that it has to be assumed on the basis of the non-contested arguments of IMR that the equity interest of IMR in ShS Holdings was a relatively small participation (3.8% of IMR`s equity in

2010). IMR has further stated without being contested that it was permitted to nominate no more than half (three out of six) of the directors of Capstone and ShS for appointment on the basis of the shareholders agreement with Mmakau and Holgoun. To this extent there is no dominant influence of IMR on the policy of ShS, either. After the reasoned contestation of IMR to that end, ECVK has not substantiated in any way whatsoever its bare argument that the directors appointed at ShS at IMR`s nomination had reported on the fraudulent state of affairs alleged by ECVK, so that from this the stated active involvement and influence of IMR cannot follow, either.

4.4. The fact that it was mentioned in the prospectus for the flotation of ShS Holdings that ShS exercised *"significant control and influence over the Group`s operations"* is insufficiently concrete in order to assume on that basis that IMR was indeed actively involved in the project and in the fraudulent and wrongful actions of ShS as alleged by ECVK. In addition, like IMR the District Court deems it not implausible that this passage, which was included in a prospectus that is also intended to inform prospective investors about any possible risks of investing in ShS Holdings, solely states that IMR could exercise its usual shareholders rights with regard to group companies. The sole exercising of these powers does not entail any liability for the actions of the subsidiary. The statement made by ShS during the negotiations that it uses the knowledge, expertise and (financial) support of IMR is deemed insufficiently specific by the District Court in order to assume that IMR was involved in the day-to-day management of ShS and therefore was informed, or should have been informed in reasonableness, of the stated wrongful actions of ShS and/or Davidov, let alone that it had the opportunity to intervene.

4.5. ECVK has further stated insufficiently concrete facts and circumstances against the contesting of IMR from which it can follow that and, if so, in which way IMR exercised a decisive influence on ShS with regard to the Project and had knowledge of the stated wrongful actions of ShS. ECVK states in this context that Davidov, Youness, Masgutov and Saraf were all associated with IMR and held key positions within ShS. ECVK has not substantiated in further detail its statement that Masgutov has been a director of ShS as opposed to IMR`s contestation thereof, so that the District Court will ignore it. As far as Saraf, Youness and Davidov are concerned, it applies that, if it has to be assumed that the wrongful actions stated by ECVK have indeed taken place, they should have had knowledge thereof as a result of their positions in ShS. However, that and, if so, why the knowledge of these three directors of ShS can subsequently be attributed to IMR cannot be understood. The following is an explanation thereof. As far as Saraf is concerned, IMR has stated without being contested that he was not (any longer) associated with IMR during the period that he was a director of ShS. Without any further substantiation, which is absent, it cannot be assumed that what Saraf knew or should have known can be attributed to IRM as well.
As far as Davidov is concerned, the District Court is of the opinion that it has not been established that during the period that he was a director of ShS he was also an employee or representative of IMR as well. Therefore the same applies to him as well as to Masgutov and Saraf.
As far as Youness is concerned, ECVK states, while referring to, *inter alia*, a curriculum vitae attached to a witness statement of Youness and a part of the passage from a prospectus of ShS Holdings cited sub 2.10, that he was CEO of IMR as from 2008. IMR contests that Youness has been a director or has been in its employment.
It is an established fact that Youness is not mentioned in the historical extract from the Commercial Register of the Chamber of Commerce of IMR (Exhibit E-01) as one of the current directors or former directors of IMR since the incorporation of that company. This is at least an important indication that Youness, as IMR states, has never been a director or CEO of said company. Now that is has not become apparent from the prospectus invoked by ECVK that it has been drawn up under the

responsibility of IMR, Youness is stated elsewhere in said prospectus – according to that same passage cited sub 2.10 – as CEO of IMSL and it has not been contested that IMSL is also usually called IMR London – which can result in confusion – it cannot follow from this, either, that Youness has been a director of IMR. In addition, even if it is correct that it has been mentioned in the curriculum vitae added to the witness statement that Youness had allegedly been CEO of IMR, it is apparent from the statement itself that he was CEO of IMSL. Therefore it cannot follow from the indications made by ECVK, even if these are correct, that Youness has been a director of IMR at any given time. Under these conditions it would have been logical if ECVK had provided its statement that Youness had been a director or CEO of IMR with a sufficiently concrete factual substantiation, for instance by pointing out any concrete decision taken by Youness on behalf of IMR or any other act of management effected by Youness. ECVK has not done any of this but has limited itself to pointing out the passages in the curriculum vitae and the prospectus. This is insufficient towards the reasoned contesting by IMR in order to assume that Youness has been a director or CEO of IMR. The conclusion is that it cannot be established on the arguments of ECVK that IMR had such an insight in and control over the policy and business operations of ShS that it knew or should have foreseen that, as a consequence of said policy and, more in particular the fraudulent activities stated by ECVK, ECVK would be harmed and, in spite of the fact that IMR was able to do so, it has omitted to take measures against it.

*II.     Ground for liability of IMR because of its capacity?*

4.6.    ECVK further bases its claim towards EMR on various forms of liability arising from a certain capacity, namely the liability for actions of employees, non-employees and representatives. The District Court will discuss these bases separately below.

*(i)     IMR's liability for employees*

4.7.    According to ECVK, the contested wrongful actions have actually been committed by Davidov in the sense that Davidov is the person who has prevented the content of the BASF Report and other critical expert`s reports becoming known to ECVK and who has bribed Skrylnikov. ECVK further states that Davidov was an employee of IMR in the period when the activities mentioned above have taken place. In this connection, ECVK has pointed out passages in the prospectus for the flotation of ShS Holding which mention that Davidov *"currently works for IMR"* but *"no longer [will] be employed by IMR"*. ECVK also refers to a press release of ShS in which Davidov is mentioned as an *"IMR and Shaft Sinkers Directors"* and to the website of ShS which mentions that Davidov *"previously worked for IMR"*. In addition, ECVK has indicated a power of attorney granted by IMR to Davidov in December 2007. If Davidov was not formally employed by IMR at the time the activities he was blamed for took place, it applies, according to ECVK, that he qualifies as an employee of IMR because there was an authority to instruct.

4.8.    IMR contests that Davidov has ever been in its employment. According to IMR, it came into contact with Davidov because he worked at Alferon. On the basis of Alferon`s involvement in the takeover of ShS and the knowledge obtained therewith of both companies, IMR decided to propose Davidov as a non-executive director of ShS. IMR contests that, contrary to its indirect shareholdership of ShS as a basis, it had any right to instruct Davidov.

4.9.    The District Court establishes that ECVK has only advanced indirect indications which allegedly show that Davidov was employed by IMR. In response to the reasoned contestation thereof by IMR, ECVK has not furnished any further substantiation of its argument that Davidov was in the employment of IMR (or that IMR was entitled to any other instructional power). The explanation

given by IMR of the fact that ShS Holdings has stated in its prospectus that Davidov was *"employed"* with/at IMR and that ShS has mentioned on its website that Davidov had *"previously"* carried out *"work"* for it – which comes down to Davidov having carried out advice activities for IMR, also in the context of the Project – is not assessed as implausible by the District Court and entails that, without any further detailed explanation, which is absent, it cannot be simply inferred from these entries that there was an employment or power to instruct indeed. Nor does it follow from the content of the power of attorney defined sub 2.3, to which ECVK has pointed in this context, that Davidov was in the employment of IMR. Now that no further concrete facts or circumstances have been advanced from which it can be inferred that Davidov has carried out his duties as a director of ShS as an employee of IMR, there are no grounds for assuming IMR`s liability for the actions of an employee.

*(ii)    Liability IMR for non-employees*

4.10.   Subsequently ECVK argues that, in so far as Davidov cannot be considered as IMR`s employee, IMR is liable because Davidov acted as a director of ShS under the authority of and in order to carry out the operations of IMR. IMR contests that Davidov had allegedly carried out the activities attributed to him under the authority of and in order to carry out the operations of IMR. Davidov`s task was to direct ShS and this cannot be considered as part of the business of IMR, according to IMR.

4.11.   The District Court follows IMR`s defence here as well. For the sole circumstance that Davidov was appointed a director of ShS after having been nominated by IMR does not entail that he would subsequently carry out his duties as a director of ShS under the authority of and in order to carry out the operations of IMR. ECVK has not advanced sufficiently concrete facts or circumstances on the basis of which the assessment thereof should be different.

*(iii)   Liability IMR for representatives*

4.12.   ECVK states further that IMR is liable for the wrongful actions committed by Davidov as a representative of IMR. It invokes in this context the power of attorney granted to Davidov on 27 February 2007. As a non-executive director of ShS, Davidov cannot have committed the activities attributed to him in behalf of ShS, now that he had no executive powers within said company. Therefore he derived the scope he had in which to commit the attributed activities from the mandate granted by IMR, according to ECVK. IMR contests that Davidov carried out his activities as a director of ShS as a representative of IMR.

4.13.   It solely arises from the power of attorney granted by IMR to Davidov on 27 February 2007 (see sub 2.3 above), contrary to ECVK`s opinion, that Davidov was authorised to represent IMR in the negotiations on the acquisition of a equity interest in ShS. The power of attorney was also limited in time until 31 December 2007. Only in this context and in said period, Davidov had the powers to act as a representative of IMR. Both the alleged written guarantees given by ShS and the BCW Agreement and bribery occurred afterwards and do not refer to the acquisition of a equity interest in ShS. In so far as it has to be assumed that Davidov has actually been involved in any way there in (which has been contested by IMR stating reasons), it cannot be assumed therefore, without any further explanation, which is absent, that this involvement was based on the afore-mentioned power of attorney.
In the course of 2007, Davidov was nominated by IMR for an appointment as a director of ShS. It has not been contested that he had to keep an eye on the strategic (investment) interests of the majority shareholder IMR in the performance of these duties. However, without any additional circumstances,

which have not become apparent, this does not lead to the conclusion that Davidov acted then as well as a representative of IMR. It has neither been stated nor become apparent that Davidov then presented himself as a representative of IMR as well or that IMR has stated towards ECVK that Davidov was to be considered as IMR`s representative. That IMR as the party granting the power of attorney should be liable for the actions of Davidov can therefore not be accepted, either.

### III.     Further grounds for liability

*(i)     Liability IMR based on attribution of wrongful actions*

4.14.     ECVK states that the activities of Davidov and ShS in social and economic life have to be considered as activities of IMR and that therefore IMF is liable for the consequences thereof. It refers in this context to the position of IMR as majority shareholder, the fact that IMR has nominated Davidov as its employee or representative as a director of ShS, and that Davidov, as well as the other directors appointed at the nomination of IMR, were aware of the unsuitability of the grouting method used by ShS, which knowledge is attributable to IMR, according to ECVK.

4.15.     The District Court does not follow ECVK in this, either. As considered above, it has not been established that Davidov has to be considered as an employee or agent of IMR, whereas the attribution to IMR of the alleged knowledge of Saraf, Masgutov and Youness there is no sufficient basis, either. The sole fact that IMR is an (indirect) majority shareholder of ShS is also insufficient in order to assume that there is such a interwovenness of both legal entities that the activities of ShS in social and economic life have to be considered as activities of IMR.

*(ii)     Liability IMR as representative*

4.16.     ECVK states that there was an attributable apparent representation of ShS by IMR. This because IMR conducted the negotiations with ECVK via its officer Davidov. Davidov was a non-executive director of ShS, therefore as such he could not assume a commitment on behalf of ShS. Thus he has to be considered as having acted on behalf of IMR which in its turn represented ShS. IMR contests all this.

4.17.      Regardless of the question whether or not Davidov was entitled in his position as a non-executive director to enter into obligations on behalf of ShS, the argument of ECVK already fails because of the fact that it has not been established that Davidov acted as an officer of IMR.

*(iii)     Liability IMR based on equation*

4.18.     ECVK further argues that there are grounds for equation of ECVK and ShS. Leaving aside that, as already assessed hereinabove, it has not become apparent that IMR had any decisive influence on ShS as argued by ECVK, ECVK has not made (sufficiently) clear that and, if so, how and why there would be any abuse of the identity difference between both companies, and it does not explain why in this case the equation of both companies is to be the most obvious form of redress. Thus it has insufficiently put forward arguments in order to conclude IMR`s liability.

*(iv)     Liability IMR based on provocation and profiting from wrongful actions ShS*

4.19.     In so far as ECVK bases its claim that IMR is liable on the fact it has profited from a wrongful activity of ShS or Davidov, or at least has incited to commit it, it applies that this cannot be awarded

now that is has not been established, as considered hereinabove, that IMR was aware or should have been aware of the alleged wrongful actions.

*Conclusion*

4.20.	The conclusion is that ECVK has advanced insufficient concrete facts and circumstances with regard to the reasoned contestation by IMR, from which facts and circumstances it could arise that IMR is liable for any wrongful act committed by ShS or Davidov. Under these conditions it can be ignored whether there has actually been any wrongful act by ShS and/or Davidov towards ECVK, whereas the question whether or not all this has to be assessed under Russian law, which is argued by IMR and contested by ECVK, need no longer be answered. For the claim fails already because of the fact that there is an insufficient factual ground to attribute to IMR any such wrongful act by ShS and/or Davidov.

*The costs of the proceedings*

4.21.	The foregoing leads to the fact that none of the claims instituted by ECVK can be awarded. The costs of the proceedings will be awarded against ECVK as the party against whom the judgment has been given. The costs of IMR are estimated as follows:

- Court fee            EUR   589.00
- Costs of summons     EUR    76.71
- Lawyer`s fee         <u>EUR   904.00</u> (2 points x rate EUR 452.00)
Total                  EUR 1,569.71

**5.     The decision**

The District Court:

5.1.    rejects the claims,

5.2.    awards the costs of the proceedings against ECVK estimated for IMR up to now at EUR 1,569.71.

5.3.    declares the decision on the costs of the proceedings to be immediately enforceable.

This judgment was rendered by the judges A.W.H. Vink, K.M. van Hassel and R. Raat and pronounced at the public hearing of 25 June 2014.

[signature, illegible]                              [signature, illegible]


CERTIFIED TRUE COPY
The Registrar of the
District Court of Amsterdam

[signature, illegible]