**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE:

APPLICATION OF INTERNATIONAL MINERAL RESOURCES, B.V. FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Jan Luijkenstraat 68
Amsterdam, 1071CS
Netherlands,

Applicant.

1:14-MC-00340 (GK)

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO APPLICANT'S RENEWED**
**APPLICATION FOR 28 U.S.C. § 1782 DISCOVERY**

SPERDUTO THOMPSON PLC

Kim Hoyt Sperduto
DC Bar No. 416127
Joshua S. Kauke
DC Bar No. 999296

1133 Twentieth Street, N.W.
Second Floor
Washington, D.C. 20036

Phone: (202) 408-8900
Fax: (202) 408-8910 (f)

Counsel for Rinat Akhmetshin

# Table of Contents

**Preliminary Statement** ........ **1**

**ARGUMENT** ........ **1**

**The Factual "Showing" In Support Of IMR's Application Is Demonstrably Deficient.** ........ **1**

**POINT I**

THE COURT LACKS AUTHORITY TO ORDER DISCOVERY OF PRIVILEGED MATERIALS. ........ **3**

**POINT II**

PRODUCTION WOULD OFFEND FOREIGN LAWS AND POLICIES. ........ **6**

**POINT III**

THE APPLICATION IS UNDULY INTRUSIVE AND BURDENSOME. ........ **11**

**CONCLUSION** ........ **13**

# Table of Authorities

## Cases

***FTC v. GlaxoSmithKline,***
294 F.3d 141 (D.C. Cir. 2002) .......... 4, 5

***In re Application of Microsoft Corp.,***
428 F. Supp. 2d. 188 (S.D.N.Y. 2006) .......... 4

***In re Chevron Corp.,***
749 F. Supp. 2d 141 (S.D.N.Y. 2010) .......... 7

***In re Okean B.V.,***
12 Misc. 104, 2014 U.S. Dist. LEXIS 145548 (S.D.N.Y. Oct. 10, 2014) .......... 4, 9, 10, 13

***Intel Corp. v. Advanced Micro Devices, Inc.,***
542 U.S. 241 (2004) .......... 4, 7

***Yeda Research & Dev. Co. v. Abbott GMBH & Co. KG,***
292 F.R.D. 97 (D.D.C. 2013) (Collyer, J.). .......... 8

## Statutes

28 U.S.C. § 1782 .......... 2

## Rules

Fed. R. Civ. P. 26 .......... 4

## Preliminary Statement

Rinat Akhmetshin submits this Memorandum of Points and Authorities in opposition to the renewed application of International Mineral Resources B.V. ("IMR") for discovery from Mr. Akhmetshin pursuant to 28 U.S.C. § 1782.[1] The arguments proffered by IMR in its third effort to justify discovery from Mr. Akhmetshin remain just as unconvincing as in the first two. Nothing in IMR's April 3, 2014 Application, May 22, 2014 Reply Memorandum, or October 30, 2014 Renewed Application should persuade this Court to grant the unduly intrusive, undoubtedly expensive, unmeasurably burdensome, and unnecessary discovery sought.

## ARGUMENT

### The Factual "Showing" In Support Of IMR's Application Is Demonstrably Deficient.

IMR's third proffer in support of the requested discovery does nothing to ameliorate the comical "smoke and mirrors" allegations originally submitted that purport to justify IMR's request. IMR offers no new "facts" to substantiate its allegations that its "investigators received reports" from unnamed sources that Mr. Akhmetshin "distributed" to unnamed "third parties" unidentified "materials" designed to give EuroChem Volga-Kaliy LLC ("ECVK") an ethereal and undisclosed "unfair advantage" in its European disputes with IMR. (*See* April 3, 2014 Application ("App.") at 4-6). IMR now admits these "unfair advantages" for ECVK led to IMR's present victory from which ECVK now appeals (Third Dec. of Robbert De Bree dated October 27, 2014 at ¶ 13). IMR continues to ask this Court to accept its self-serving smoke and mirrors as facts and blindly believe its unsupported claims that (i) it was hacked, (ii)

[1] While IMR styled its memorandum as one in support of its "motion" to renew its § 1782 request, IMR never served any such "motion."

that Mr. Akhmetshin was somehow responsible, and (iii) ECVK received some undisclosed benefit as a result. (*See* App. at 4).

The factual allegations underlying IMR's application remain so implausible that it is impossible even to conceive how the discovery sought would be probative of the issues identified. IMR asserts: ECVK filed a meritless claim; ECVK engaged in litigation misconduct; and ECVK violated duties of full and frank disclosure. (*See* Renewed App. at 5-6). Absent from IMR's Application and supporting papers is any reference to or from IMR's "forensic analysis" or forensic professional to substantiate its "suspicion" that Mr. Akhmetshin conducted any "hacking." Even assuming *arguendo* that IMR was hacked as alleged, there is no evidence proffered in its Application, Reply Memorandum, or Renewed Application to tie Mr. Akhmetshin or ECVK to such hacking. Instead of offering an affidavit or declaration from a forensic expert, IMR offers only the self-serving speculation and personal "belief" of its General Counsel, an individual whose technical savvy and background IMR has not disclosed. According to the Applicant's own counsel: "Based on the disparate [undisclosed] nature of the files on the thumb drive, which pertain to numerous [unidentified] employees at multiple [unnamed] companies, and which *would have been* stored on separate servers, *I believed* that they *could only have been* obtained by way of illegal hacking." (Dec. of Tadeusz Jarmolkiewicz dated March 26, 2014 ¶ 15) (emphasis added). There is absolutely no basis to credit such amateur and intentionally opaque testimony cloaked in the shroud of mystery and knowingly lacking in credible detail.

Again, if IMR possessed forensic analysis that concluded that IMR had been hacked, why wasn't that forensic analysis provided to substantiate that allegation? Why didn't Mr. Jarmolkiewicz reference or rely on that forensic analysis in developing his "belief" that IMR

was "hacked?" Certainly, this Court may assume that if IMR had real evidence -- such as professional forensic evidence -- that it was "hacked" and that such "hacking" was attributable to ECVK through Mr. Akhmetshin, then IMR would have produced such evidence. Its absence speaks volumes. Indeed, if IMR's "Application" was instead a federal complaint, it would not even survive the *Iqbal/Twombly* plausibility test.

Even if one indulges the assumption that IMR has carried its factual burden to demonstrate the need for discovery, and even if the time has come when new evidence *may* be proffered in the Dutch Action, IMR's application should still be denied for at least three reasons: (1) it impermissibly seeks privileged information; (2) it seeks to circumvent foreign proof-gathering restrictions and other policies of a foreign county; and (3) the subpoena contains unduly intrusive and burdensome requests, especially given the speculative and contrived premise for the requests.

The American phrase "no harm, no foul" also comes to mind. If Mr. Akhmetshin allegedly gave ECVK an "unfair advantage" in the Dutch proceedings below, why did ECVK lose the proceeding below? Mr. Akhmetshin's alleged conduct could not possibly have harmed IMR because IMR won. No harm, no foul. For these reasons, as well as those set out in Mr. Akhmetshin's May 15, 2014 Opposition Memorandum and June 16, 2014 Surreply, IMR's renewed Application should be denied with prejudice.

## POINT I

## THE COURT LACKS AUTHORITY TO ORDER DISCOVERY OF PRIVILEGED MATERIALS.

The Renewed Application should be denied because on its face it seeks privileged documents and communications. (*See* Subpoena attached to the Exhibits to the April 2, 2014 Declaration of John Scanlon at Ex. A) The overwhelming majority, if not all, of the requested

discovery is protected by the attorney-client and work product privileges and thus precluded from discovery. IMR requests "All documents and communications concerning IMR, Shaft Sinkers, ENRC, EuroChem, ECVK, and/or Salisbury & Ryan." (*See* Rider to Subpoena at 7). While it is true that this document request is the only request IMR has made, IMR's claim that this one request is "narrowly tailor[ed]" is as preposterous as the alleged "facts" which underlie IMR's Application. (*See* Renewed App. at 7). The request literally seeks all communications between Mr. Akhmetshin and the law firm that hired him.

The law is otherwise. "A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." 28 U.S.C. § 1782(a). *Accord In re Okean B.V.*, 12 Misc. 104, 2014 U.S. Dist. LEXIS 145548, *24 (S.D.N.Y. Oct. 10, 2014). "Accordingly, such documents are not discoverable under § 1782, which 'expressly shields privileged material.'" *In re Application of Microsoft Corp.*, 428 F. Supp. 2d. 188, 196 (S.D.N.Y. 2006) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004)).

In this Circuit, there is absolutely no doubt that Mr. Akhmetshin's services as consulting research expert on Russia are privileged under U.S. law. Mr. Akhmetshin's only connection with this matter is through his retained role for the Salisbury & Ryan law firm as consulting research expert, assisting counsel for purposes of providing legal advice to the client. Our Circuit was unambiguous in its opinion in *FTC v. GlaxoSmithKline*, 294 F.3d 141, 148 (D.C. Cir. 2002) that the "attorney-client privilege extends also to those communications that GSK shared with its public relations and government affairs consultants. . . . there is no reason to distinguish between a person on the corporation's payroll and a consultant hired by the corporation *if each acts for the corporation and possesses the information needed by attorneys in*

*rendering legal advice*." (emphasis added) Mr. Salisbury has submitted a declaration confirming that Mr. Akhmetshin's services were retained for purposes of preparing and rendering legal advice. (Dec. of Patrick Salisbury dated May 15, 2014 at ¶ 20). Mr. Akhmetshin's Affidavit is to the same effect. (Aff. of Rinat Akhmetshin sworn to May 14, 2014 at ¶ 6).

On the facts here, *GlaxoSmithKline* compels finding application of the attorney-client privilege. Mr. Akhmetshin was hired by Salisbury & Ryan on behalf of ECVK to play a role that was "completely intertwined" with ECVK's litigation and legal strategies. (Akhmetshin Aff. Ex. A, ¶ 1 ("[Y]ou will provide the Client with assistance in the Client's investigation of claims it may have against companies relating to a mining project being built by the Client in Russia.")). In that role, Mr. Akhmetshin was admonished not to disseminate the information and documents provided to him. (*See id.* ¶ 4 (acknowledging application of attorney-client and attorney work product privileges and obligation to keep and duty "to preserve the confidentiality of all information and data" disclosed or provided by the ECVK or Salisbury & Ryan)). Based on analogous facts, the *GlaxoSmithKline* court found "no reason to distinguish between a person on the corporation's payroll and a consultant hired by the corporation if each acts for the corporation and possesses the information needed by attorneys in rendering legal advice." 294 F.3d at 148. Moreover, IMR can hardly argue that any "strategic communications" work performed by Mr. Akhmetshin must fall outside of the spectrum of litigation related services entitled to protection, when IMR cites ECVK public statements to support its legal arguments. (*See*, *e.g.*, Renewed App. at 2-3 (citing a "spokesperson for EuroChem")).

Beyond *GlaxoSmithKline*, Fed. R. Civ. P. 26(b)(3)(A) places materials produced by a consultant beyond the reach of discovery if they are "prepared in anticipation of litigation." Indeed, Fed. R. Civ. P. 26(b)(4)(D) makes clear that consulting experts are not subject to

discovery. According to the Rule, "Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." That language describes Mr. Akhmetshin's role with precision. His work product is protected pursuant to both provisions of Rule 26(b). So even if the current § 1782 application were granted, this Court would face nothing but continual motions to quash or other requests for protective orders, and this proceeding would devolve into an unnecessary discovery quagmire. There would be no "efficient means of assistance;" to the contrary, there would be months if not years of wrangling to determine privilege issues. Given IMR's admission that it needs this discovery for use in the Dutch Appeal by January or February of 2015, the overwhelming odds are that these issues won't even be resolved until after the discovery loses its alleged utility (*see* Third DeBree Dec. at ¶¶ 13-15, 23-24). Such a result would render this entire proceeding meaningless and vexatious.

**POINT II**

**PRODUCTION WOULD OFFEND FOREIGN LAWS AND POLICIES.**

Not only does IMR's application improperly seek privileged materials, but also production of those documents would require circumvention of foreign proof gathering restrictions and important foreign policies. The Dutch Court is fully capable of controlling discovery concerning both the client (ECVK) and law firm (Salisbury & Ryan) before it. That means that the third of the four discretionary *Intel* factors weighs decidedly against the requested discovery, insofar as this discovery would circumvent the Dutch court's authority.[2] In *Chevron*, the court described the Supreme Court's *Intel* discretionary factors as follows:

[2] Mr. Akhmetshin also explained how the first and second factors favored dismissal in his May 15, 2014 Memorandum in Opposition To IMR's Application. For the Court's "relief" these arguments are not repeated here.

> (1) Whether the material sought is within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court jurisdictional assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive and burdensome requests.

*In re Chevron Corp.*, 749 F. Supp. 2d 141, 160 (S.D.N.Y. 2010) (citing *Intel,* 542 U.S. at 264-65).

IMR's best argument for circumventing the applicable American privileges would offend Dutch and Russian laws in contravention of the third *Intel* factor. IMR wrongly claims that "to the extent that a privilege might otherwise apply to any of the documents, these documents are nevertheless discoverable because the crime-fraud exception applies." (Renewed App. at 5).[3] Even if the crime-fraud exception permitted production under U.S. law, application of the crime-fraud exception would likely offend the applicable foreign laws and policies. The Dutch court is perfectly capable of making that decision, particularly with respect to the parties and attorneys already before it.

Where "privileged communications took place in a foreign country or involved foreign attorneys or proceedings," a United States court should "defer to the law of the country that has the predominant or the most direct and compelling interest in whether those communications should remain confidential, unless that foreign law is contrary to the public policy of the forum." *Yeda Research & Dev. Co. v. Abbott GMBH & Co. KG*, 292 F.R.D. 97, 104 (D.D.C. 2013) (Collyer, J.).

[3] IMR's "showing" to invoke the "crime-fraud" exception is laughably vague. As pointed out in Mr. Akhmetshin's original opposition papers dated May 14, 2014, IMR's showing is nothing but surmise based upon self-serving conjecture founded on unsubstantiated innuendo.

In addition to the Dutch court's legal authority, given the ties to Russia of both the parties and the underlying dispute, there can be little doubt that Russia has the predominant and most compelling interest in determining whether the communications remain confidential. Mr. Akhmetshin was hired by Salisbury & Ryan LLP as agent for the Russian company ECVK. (*See* Akhmetshin Aff. Ex. A ("Salisbury & Ryan LLP, as attorney agent for its client and not in its individual capacity (the 'Client'), has engaged you to provide the services described below.")) Mr. Akhmetshin's client ECVK is a Russian company that at all time relevant to Mr. Akhmetshin's service was headquartered in Russia. (*See* DeBree Decl. Ex. A at 1). In entering into the service of ECVK, Mr. Akhmetshin promised to comply with "all applicable laws of the U.S. and other relevant jurisdictions." (*See* Akhmetshin Aff. Ex. A at ¶ 1). The underlying contract is for services to be rendered in Russia. Shaft Sinkers was to construct a mine shaft on ECVK's behalf near the Russian town of Kotelnikovo. (*See* Jarmolkiewicz Dec. ¶¶ 4-6, 9). ECVK has alleged that Shaft Sinkers fraudulently induced it to enter into a $350 million Russian mine shaft construction contract. (*See* Salisbury Dec. ¶¶ 3, 5; Jarmolkiewicz Dec. ¶ 4). Of course, the whole reason Mr. Akhmetshin was hired is because he is an expert on Russia. (*See, e.g.*, Akhmetshin Aff. ¶¶ 6, 14). Salisbury & Ryan did not retain a Swiss, or Dutch, or French, or South African expert. The law firm chose a Russian expert because this is a Russian dispute applying Russian law concerning construction of a Russian mine. Russia has the predominant and most direct and compelling interest in seeing its privilege laws applied to protect its citizen's communications that relate to legal proceedings that arose based on events in Russia.

The recent decision from *In re Okean* is instructive. In *Okean*, Judge Engelmeyer denied -- after two years of proceedings -- an application seeking discovery for use in a civil lawsuit filed in the District Court of Amsterdam, the Netherlands, from Chadbourne & Parke

LLP. 2014 U.S. Dist. LEXIS 145548 at *1-2. The documents sought related to work that Chadbourne had performed for several defendants in the Netherlands law suit. *Id.* *3-4. Petitioner in *Okean* also argued that the crime fraud exception applied to vitiate any application of the attorney-client privilege. Judge Engelmeyer premised his well-reasoned denial on both *Chevron/Intel* factors three and four. In Footnote 2 he reasoned:

> [T]he third discretionary *Intel* factor . . . has now in fact been shown, too, to favor denial of Okean's § 1782 application. The Court originally held otherwise, based on its finding that the §1782 application did not offend the discovery rules of the *Dutch* forum . . . . However, the Court is now persuaded that production of Chadbourne's privileged materials would breach the laws of two other countries, Russia and Ukraine. This finding reinforces and supplies an independent basis for denial of the § 1782 application.

*Id.* at *34 n.2. In rejecting the crime-fraud argument, Judge Engelmeyer found that the "burden and intrusiveness of compelling production of these documents would be substantial" where (i) the documents sought were privileged; (ii) Chadbourne and its counsel face potential sanctions for breaching foreign laws preventing their disclosure (*Intel* 3); (iii) translation, review, and production would impose a heavy burden in terms of time and money on Chadbourne; (iv) and the probative value of the materials was "conjectural at best." *Id.* at *34-36.

In reaching his decision, Judge Engelmeyer rejected the very crime-fraud argument IMR makes here. *See id.* at *26 ("Okean contends, the documents it seeks reflect communications in furtherance of a fraudulent conveyance, and any privilege applicable to these documents is nullified.") Judge Englemeyer's thoughtful analysis determined that U.S. and Russian privilege laws were not coextensive, and he declined to "graft" the American legal concept of the crime-fraud exception "onto these foreign laws" to overcome the asserted privilege. *Id.* at *26. Thus, Judge Engelmeyer concluded that permitting the discovery of the privileged documents would "frustrate rather than promote the twin aims of § 1782: providing

efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.* at *28. The same logic and reasoning compels denial of the crime-fraud exception here, even if a basis existed under U.S. law.

IMR is transparently attempting to circumvent the proof-gathering mechanisms available to it in the Dutch proceeding. IMR isn't interested in what Mr. Akhmetshin has or knows, it wants to know what ECVK and its lawyers have. IMR's justifications for discovery from Mr. Akhmetshin expose this truth. IMR purports to seek discovery to prove that: (1) "ECVK [-- not Mr. Akhmetshin -- ] filed a meritless claim"; (2) "ECVK [ -- not Mr. Akhmetshin -- ] engaged in litigation misconduct; and (3) as a "litigant" ECVK or its lawyers -- not Mr. Akhmetshin -- violated duties of "full and frank disclosure." (Renewed App. at 5-6.) Mr. Akhmetshin was hired by ECVK counsel Salisbury & Ryan to provide consulting expert research and related services with respect to the disputes between ECVK and IMR and its affiliates. (Akhmetshin Aff. ¶ 2; Salisbury Dec. ¶ 20.) Ultimately, not a single document or piece of information that Mr. Akhmetshin's research produced was introduced or otherwise used in any of those proceedings. (Salisbury Dec. ¶¶ 10, 11, 15; Declaration of Professor Dr. Marielle Koppenol-Laforce dated May 15, 2014 at ¶ 3). That renders the "no harm, no foul" argument virtually unassailable.

Thus, if IMR truly seeks to do in the Dutch Action with the evidence it claims to seek, then discovery would be more appropriately sought from ECVK -- an actual party to the Dutch proceeding -- or counsel, Salisbury & Ryan -- an entity that would be within ECVK's custody and control. Certainly, as co-counsel Salisbury & Ryan's conduct is within the Dutch tribunal's authority. The Dutch Court, however, denied IMR's only request for discovery in that

proceeding. (*See* Salisbury Dec. ¶ 11). IMR never sought review of that opinion or sought other discovery. (*See id.*) The only logical explanation for IMR targeting Mr. Akhmetshin, and not ECVK or Salisbury & Ryan, for the requested discovery, is that IMR is legally prohibited from obtaining the discovery from those parties in the Dutch proceeding.

**POINT III**

**THE APPLICATION IS UNDULY INTRUSIVE AND BURDENSOME.**

Any benefit that IMR might obtain from the production sought is vastly outweighed by the undue burden, expense, and vexation that it would impose upon Mr. Akhmetshin. The fourth *Intel* factor compels this Court to exercise its discretion in a manner to deny IMR's Application. The parties to the Dutch litigation are fighting over claims in excess of $1 billion. (*See* Salisbury Dec. ¶ 8). Mr. Akhmetshin is merely a pawn in an international war between one Russian oligarch (Mr. Malnichenko -- ECKV) and a troika of oligarchs (Messrs. Machkevitz, Chodiev, and Ibragimov -- IMR). In contrast to these treasuries, even these Application papers present a financial hardship to Mr. Akhmetshin.[4] This, in and of itself, should be sufficient grounds to deny the Renewed Application.

Every reason why IMR argues that discovery should proceed in haste similarly illustrates the scope of the burden and expense that Mr. Akhmetshin confronts if the Renewed Application is granted. IMR "concedes" that:

> The U.S. discovery process can take several months, even by conservative estimates. If this Court grants IMR's Application, Mr. Akhmetshin will . . . need to . . . gather and review the relevant documents, prepare a privilege log, and draft and serve his objections. The parties will be required to meet and confer regarding Mr. Akhmetshin's objections. If no agreement can be reached, the parties will brief their respective positions, and additional time will be needed to allow

---

[4] In the Memorandum Order dismissing the application the first time, the Court apparently attributed Mr. Akhmetshin's opposition to ECVK: "ECVK strongly opposes the granting of such discovery." While ECVK aided Mr. Akhmetshin with affidavits and declarations to be used in opposition to IMR's Application, ECVK has not intervened on Mr. Akhmetshin's behalf nor paid Mr. Akhmetshin's attorneys' fees.

> the Court to resolve the discovery disputes. IMR expects that there will be discovery disputes that require litigation in this case, as Mr. Akhmetshin has already asserted in other submissions that all the requested documents are covered by the attorney-client privilege . . . .

(Renewed App. at 4-5). Each of these steps will cost Mr. Akhmetshin considerable time and money. Given the inevitable quagmire of discovery disputes this Court will confront, the financial impact on Mr. Akhmetshin may become debilitating.

Even when the discovery was sought from a rich, international law firm, Judge Engelmeyer denied discovery finding it would be unduly intrusive and burdensome. In *Okean*, as here, production of any non-privileged materials "would require creation of an extensive privilege log." *Okean*, 2014 U.S. Dist. LEXIS 145548. That promised to be "[a] very very expensive process [since t]here are usually multiples levels of review to assure that the log is correct and to assure that the privilege determination has been fairly made. The expense . . . compounded because there may be foreign notions of privilege . . . ." *Id.* at *8. But where the subpoenaed party in *Okean* was an international law firm that could bear the time and expense of discovery, Mr. Akhmetshin would be overwhelmed by similar procedures. If it is overwhelming for a rich international law firm, *a fortiori* it is overwhelming for Mr. Akhmetshin. The reasons compelling denial in *Okean* compel the same conclusion here: "document production would be unduly burdensome and would injure [the non-party] . . . and . . . this burden is not justified by the limited probative value if any, of these documents for [Applicant] in the Dutch litigation." *Id.* at *22.

Application of the *Okean* burden-probative balancing analysis here demonstrates that the undue burden, expense, and intrusion far surpass any probative value of discoverable documents. While IMR's papers make it hard to believe that Mr. Akhmetshin engaged in the conduct alleged, there is no doubt that Mr. Akhmetshin will unnecessarily suffer undue intrusion,

expense, vexation, and burden if IMR's Application is granted. The fourth discretionary *Intel* factor alone compels denial of the Renewed Application.

## CONCLUSION

For all the foregoing reasons, as well as the reasons set forth in Mr. Akhmetshin's May 15, 2014 Opposition Memorandum and supporting papers, and his June 16, 2014 Surreply, the Renewed Application should be denied.

Dated: Washington, D.C.
November 17, 2014

Respectfully submitted,

/s/

Kim Hoyt Sperduto
D.C. Bar No. 416127

Joshua S. Kauke
D.C. Bar No. 999296

SPERDUTO THOMPSON PLC
1133 Twentieth Street, N.W.
Second Floor
Washington, D.C. 20036
202.408.8900
202.408.8910 (f)

ksperduto@sperdutothompson.com

Counsel for Rinat Akhmetshin

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of November 2014, that I caused copies of Rinat Akhmetshin's Memorandum Of Points And Authorities In Opposition To Applicant's Renewed Application For 28 U.S.C. § 1782 Discovery to be served using the Court's Electronic Case Filing System pursuant to Local Rule 5.4, on counsel for Applicant, S. Nathan Park, KOBRE & KIM LLP, 1919 M Street, NW, Washington, D.C. 20036, Nathan.park@kobrekim.com.

/s/
Joshua S. Kauke