# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE:

APPLICATION OF INTERNATIONAL MINERAL
RESOURCES B.V. FOR AN ORDER TO TAKE
DISCOVERY PURSUANT TO 28 U.S.C. § 1782
Jan Luijkenstraat 68
Amsterdam,  1071CS
Netherlands

              Applicant.

Case No. _____

<u>**DECLARATION OF AKIS PHANARTZIS**</u>

Pursuant to 28 U.S.C. § 1746, I, Akis Phanartzis, declare under penalty of perjury as follows:

1.      I am a Senior Manager with GlobalSource Cyprus Ltd. ("GlobalSource"), based in Nicosia, Cyprus.  GlobalSource carries out research and investigations for our clients worldwide, including in the United States and the United Kingdom.  I have been with GlobalSource since May 2011.

2.      I submit this Declaration in support of International Mineral Resources B.V.'s ("IMR") *Ex Parte* Application for an Order Under 28 U.S.C. § 1782 Permitting IMR to Issue a Subpoena for the Taking of a Deposition and the Production of Documents from Rinat Akhmetshin.

3.      I am familiar with the facts set forth in this Declaration, either from personal knowledge or on the basis of documents that have been provided to me.  Insofar as they are within my own knowledge, the facts and matters testified to are true to the best of my own knowledge and belief.  Because this Declaration is being submitted for a specific legal purpose,

the information provided in the Declaration does not include every single fact that I know that may be pertinent to this subject matter.

4.       GlobalSource was retained, among other things, to investigate allegations that Rinat Akhmetshin was employed by a Russian company named EuroChem to organize a smear campaign against IMR, aimed at weakening IMR's and its associated companies' positions in various legal disputes with EuroChem and its subsidiary, EuroChem Volga-Kaliy LLC ("ECVK"), over a mining project located near the Russian city of Kotelnikovo.  GlobalSource was also retained to investigate reports that Mr. Akhmetshin had organized the hacking of IMR's and associated entities' computer systems in an attempt to collect information that could be used in his smear campaign.

5.       In the course of our investigation, GlobalSource received information in the middle of January 2014 that Mr. Akhmetshin would be traveling to London.  We periodically made inquiries with five star hotels in Central London where we thought he might be staying, as we planned to conduct surveillance on him.

6.       On January 29, 2014, through the inquiries with London hotels, we located him at Le Meridien Piccadilly.

7.       I immediately instructed one of our local surveillance teams to initiate work, and I also went to the location.

8.       Our surveillance team had a detailed description of Mr. Akhmetshin as well as several pictures of him that we had obtained from public sites on the Internet.

9.       Using this description and pictures, we identified Mr. Akhmetshin checking in at Le Meridien Piccadilly at approximately 5:30 p.m. on the evening of January 29, 2014.

10. The next morning, on January 30, 2014, at approximately 11:15 a.m., we observed Mr. Akhmetshin entering the Café Royal Coffee Shop on Regent Street.

11. I also entered and took a table close to where Mr. Akhmetshin was sitting. I was sitting at a table approximately one meter from him, with the goal of hearing any conversation that might take place.

12. At approximately 11:25 a.m., Mr. Akhmetshin was joined by an unidentified businessman who appeared to be in his forties. The businessman was carrying a laptop.

13. After exchanging pleasantries, Mr. Akhmetshin handed the businessman an external hard drive and stated that it contained internal documents and emails from IMR. Mr. Akhmetshin explained that the hard drive contained "memos, emails and stuff" and that there are all "these folders and documents about transactions, memos, statements and stuff. There are emails and attachments." Mr. Akhmetshin further stated: "There are directories and sub-directories. There are folders for different things."

14. Mr. Akhmetshin described how the documents were obtained. Mr. Akhmetshin stated that he organized the hacking of IMR's computer systems specifically on behalf of EuroChem, which was in a dispute with IMR over a mining project near the Russian city of Kotelnikovo. Mr. Akhmetshin further stated that he used a group of Russians to do the actual hacking and that: "I had to pay a lot of money to get this stuff."

15. Mr. Akhmetshin explained: "We targeted everyone important" at IMR, "everyone connected." Mr. Akhmetshin said that this targeting included senior executives such as IMR CEO Amre Youness, as well as persons in key administrative positions whose computers would also contain important internal IMR documents.

16.     Mr. Akhmetshin explained to the businessman that there is "about 50 gigabytes of stuff," and the businessman asked Mr. Akhmetshin, "How much information in a gigabyte?"  Mr. Akhmetshin replied that, "there is a lot of shit."  Mr. Akhmetshin said that there were additional materials that were not as sensitive which were not included in the electronic folders.  Mr. Akhmetshin said: "I have this at home.  I will try to pull it together for you in the next couple of days."

17.     The businessman commented on the volume of material.  Mr. Akhmetshin stated: "There is a lot of the stuff, so -- but that's why you are paying money."

18.     Mr. Akhmetshin explained that one of the persons he was dealing with at EuroChem was the company's "head of security" who he described as "a former KGB agent."

19.     Mr. Akhmetshin explained that EuroChem hired him because of his expertise in disputes that require sensitive work and because of his contacts in Kazakhstan.

20.     Mr. Akhmetshin stated that he had met with lawyers for Andrey Melnichenko, EuroChem's owner, in New York.  He identified one of these lawyers as Patrick Salisbury of Salisbury & Ryan LLP, and said Salisbury was representing EuroChem in its cases against Shaft Sinkers and IMR.

21.     Mr. Akhmetshin added that he was hired because there were certain things that the law firm could not do.

22.     Mr. Akhmetshin noted that he had a meeting with Patrick Salisbury the following week in New York to discuss next steps for the case against IMR.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in *Nicosia, Cyprus*, on this *20* day of March, 2014.

Akis Phanartzis