# EXHIBIT R

# SPERDUTO THOMPSON PLC
1133 TWENTIETH STREET, N.W. - SECOND FLOOR
WASHINGTON, D.C. 20036
TEL. (202) 408-8900 - FAX (202) 408-8910
ksperduto@sperdutothompson.com
www.sperdutothompson.com

KIM HOYT SPERDUTO

Admitted in
NY DC VA PA MD

Jonathan D. Cogan
KOBRE & KIM
800 Third Avenue
New York, New York 10022

April 27, 2015

Via Email & US Mail

Re:   Application of IMR For An Order To Take Discovery (No. 1:14-mc-340)(GK)

Dear Jonathan:

      This letter responds to your correspondence dated April 20, 2015. Allow me to start on the areas on which I believe we are in agreement, or likely to be able to negotiate a mutually satisfactory resolution. First, accompanying this letter you will find redacted copies of passports and an invoice that you requested on page 3 of your April 20 epistle. Second, you will also find a Lieberman e-mail exchange that is not privileged that we found embedded within the privileged Lieberman e-mails. The only responsive material that has been redacted is information that constitutes personally identifiable information (such as passport numbers, social security numbers, or bank account numbers) or of material covered by one of the various privileges involved in this proceeding, including the consulting expert privilege under Fed. R. Civ. P. 26(b)(4)(D). Finally, I enclose a copy of Mr. Akhmetshin's errata sheets correcting the transcript from his deposition, and our proposed draft protective order.

      Now, allow me to summarize Mr. Akhmetshin's legal position on some of the issues on which we apparently disagree and may require resolution from the Court.

      **I.**    **"Strategic Communications Work."** You claim to be entitled to "Documents Relating To Mr. Akhmetshin's Strategic Communications Work." (April 20 letter at 1). But there was no such work performed by Mr. Akhmetshin in the course of the expert consulting services that he performed on behalf of Salisbury & Ryan. Mr. Akhmetshin so testified. At page 126 of the transcript you elicited testimony from Mr. Akhmetshin that the strategic communications "proposal you made was directed at Salisbury & Ryan; is that right?" To which Mr. Akhmetshin responded "Yes." You enquired "Why was it rejected?" and Mr. Akhmetshin responded "I do not know." So there was no "strategic communications" work performed by Mr. Akhmetshin for Salisbury & Ryan, and as a result, no documents (other than the proposal) related to such a topic.

The proposal itself is exempt from disclosure by all four protections that Mr. Akhmetshin invokes: (1) the attorney-client privilege; (2) the work product doctrine; (3) the consulting expert privilege defined in Rule 26(b)(4)(D); and (4) Mr. Akhmetshin's contractual obligation as imposed by his engagement letter. The word product doctrine is particularly apt. As you know, the proposal was prepared by Mr. Akhmetshin in connection with his engagement by ECVK's counsel, Salisbury & Ryan, in anticipation of the IMR litigation.

In an effort to overcome these privileges, you cite to *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1988). The case is clearly distinguishable. First, that case only involves the attorney-client privilege and does not even mention the consulting expert privilege of Rule 26(b)(4)(D). The scope of the consulting expert privilege is broad. Some courts have gone so far as to hold that it renders a Rule 26(b)(4)(D) expert such as Mr. Akhmetshin "immune from discovery." *See Chiquita Int'l v. M/V Bolero Reefer*, 1994 U.S. Dist. LEXIS 5820 (S.D.N.Y. May 6,1994) ("a non-testifying expert is generally immune from discovery"). Other federal courts are in accord on the breadth of that protection: "Rule 26(b)(4)(D) broadly covers 'facts known or opinions held' by an expert and does not limit the protection to 'facts known' or 'opinions held' regarding the litigation or trial at issue." *Feist v. RCN Corp.*, 2012 U.S. Dist. LEXIS 159283 (N.D. CA. Nov. 6, 2012). The rationale for this broad application is both simple and clear: "Consulting experts do not offer testimonial evidence during a litigation proceeding and parties are therefore not entitled to discovery from consulting experts." *Morningware, Inc. v. Hearthware Home Products, Inc.*, 2012 U.S. Dist. LEXIS 121333 (N.D. Ill. Aug. 27, 2012).

Moreover, you have known for almost a year that both Mr. Akhmetshin and Mr. Salisbury considered Mr. Akhmetshin's role as a non-testifying expert, yet you persist in making irrelevant objections based on other privileges. (*See* Affidavit of Rinat Akhmetshin sworn to and dated May 14, 2014 at ¶¶ 2, 3,6, 7; *see also* letter from Patrick Salisbury to Rinat Akhmetshin, dated July 26, 2012 at 1-2 (Akhmetshin Depo Ex. 1, Ex. A); Declaration of Patrick Salisbury, executed May 15, 2014, at ¶ 20). Indeed, the engagement letter to Mr. Akhmetshin specifies that he is being engaged to assist with respect to the claims his client has relating to the Russian mine disaster that is the subject of the Dutch litigation. Finally, I note that even if the attorney-client privilege was the only privilege in play, under the circumstances presented here, Mr. Akhmetshin's "strategic communications" work -- if there were any -- would be protected by that privilege. *See FTC v. GlaxoSmithKline*, 294 F.3d141 (D.C. Cir. 2002) ("Our conclusion that the documents are protected by the attorney-client privilege extends also to those communications that GSK shared with its public relations and government affairs consultants . . . . . .") There are no documents that fall within the rubric of "strategic communications" other than Mr. Akhmetshin's proposal. Your argument that you are entitled to that proposal -- a proposal rejected by Salisbury & Ryan -- is not warranted under existing law.

**II.    Mr. Akhmetshin's Communications With Third Parties.** Your argument on pages two and three of the April 20 letter totally ignores the Rule 26(b)(4)(D) consulting expert privilege. Simply because you ignore it does not mean that the privilege is inapplicable. In addition to the scope of the privilege providing such experts "immunity from discovery" and protection for "facts known and opinions held," we draw your attention to authority that holds the doctrine of waiver does not even apply to Rule 26(b)(4)(D). *See Precision of New Hampshire v. Tri Component Products Corp.*, 2013 U.S. Dist. LEXIS 79847

(N.D. Iowa June 5, 2013) *citing Vanguard Savings & Loan Ass'n v. Banks,* 1995 U.S. Dist. LEXIS 2016 (E.D. Pa 1995):

> The court reasoned that Rule 26(b)(4)(D) protects against discovery of information known by non-testifying experts for "reasons entirely independent of the work product doctrine." The court found that because the Rule stems from fairness considerations rather than the work product doctrine, the defendant's claim that the plaintiff waived work product privilege was "wholly irrelevant." The court found it immaterial that the plaintiff may have voluntarily disclosed the expert report to third parties, and stressed the only relevant question is whether the plaintiff meets the requirements of Rule 26(b)(4)(D).

Accordingly, your argument that Mr. Akhmetshin must produce "communications with third parties" is "wholly irrelevant" and, again, not warranted by existing law.

As noted above, in reviewing the Lieberman emails to evaluate whether they were in fact provided for the purpose of offering or seeking legal advice, we did find an email exchange embedded in the privileged communications that was not privileged. Those emails, identified in the Privilege Log as Nos. 226 and 227, are being transmitted to you along with this letter.

### III.  Documents Identified In The Deposition.

We are producing with this letter redacted copies of both passports and an invoice as requested in your April 20 letter.

### IV.  Materials Postdating August 31, 2013.

In seeking documents postdating August 31, 2013, your characterizations of Mr. Akhmetshin's testimony are not credible. The first conversation you reference (Depo Tr. at 49 et seq.) is a conversation with Mr. Salisbury. (Depo Tr. at 49). Beyond being privileged (on several grounds), there is absolutely nothing in the transcript that would justify your unsupported conclusion that this conversation was "regarding his work related to IMR." (April 20 letter at 3). The only question you asked was: "Q: Have you had any communications with Patrick Salisbury since this engagement ended?" (Depo Tr. At 47, lines 13-14). And on page 49 you asked again: "When, approximately, did you have a communication with Mr. Salisbury after this engagement ended?" In neither question was there any reference whatsoever to the communication having to do with Mr. Akhmetshin's "work related to IMR." That conclusion is utterly unsupported by the transcript and the facts.

Similarly, your invocation of the contrived "coffee shop" conversation -- apparently a set up by IMR -- is even more fundamentally flawed. Mr. Akhmetshin testified repeatedly that that conversation was NOT about IMR, but rather the Troika's assets in Kazakhstan. For example, at page 190 you asked if a hard drive contained documents about

3

IMR. Mr. Akhmetshin denied that: "I don't believe it was IMR. I think Mr. Halpert's interest was with Kazakhstan assets, so it was probably something about the Trio." (Depo Tr. at 190-191). Again, on page 196 Mr. Akhmetshin described the material: "It was some background information about these issues which Mr. Halpert was interested in." Q: "Which were what?" A: The standing of -- Trio's standing in the Kazakhstan." (Depo Tr. at 196).

The substance of neither conversation was about Mr. Akhmetshin's work on the Salisbury & Ryan engagement. Mr. Akhmetshin may have mentioned in passing that he had done work for Salisbury & Ryan, but that was nothing more than describing to a new client his credentials and experience with respect to work in Eurasia.

Based on the testimony at his deposition, documents post-dating August 31, 2014 are either protected by all four privileges or they are irrelevant to this proceeding.

### V.     Privilege Log Descriptions.

I appreciate the conundrum of attempting to decipher the legal significance of particular attorney-client communications. While we believe the log was adequate, in an attempt to avoid unnecessary issues we are revising the privilege log with the aim of providing you with a revised privilege log by the end of the week. Following your review of the revised privilege log, we would be happy to sit down in person for a meet and confer, or meet by telephone, to determine whether we can find common ground on any of these issues, or at least narrow our differences in the event that we need court intervention.

### VI.    Documents Identified By ECVK.

As you know, Mr. Akhmetshin is bound by both legal privileges and contractual duties in respecting privileges that may belong to ECVK. The Engagement Letter (Ex. A to Akhmetshin Depo Ex. 1, page 2, paragraph numbered 4) contains an explicit confidentiality obligation "to preserve the confidentiality of all information and data disclosed by the Client to you and provided by you to Salisbury & Ryan LLP or the Client." Since Mr. Kauke's March 30, 2015 correspondence, we have not received permission from Salisbury & Ryan to produce any further documents that have been withheld on the basis of any of the privileges discussed above.

I suggest we have a meet and confer after you receive the revised privilege log so that we can try to narrow any remaining issues.

Very truly yours,

Kim Sperduto

Enclosures:   (1) Docs. Akh 00958-989
              (2) Lieberman exchange Akh 990-991
              (3) Errata sheet
              (4) Protective Order

4