# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE: ) ) APPLICATION OF INTERNATIONAL MINERAL ) RESOURCES, B.V. FOR AN ORDER TO TAKE ) DISCOVERY PURSUANT TO 28 U.S.C. § 1782, ) ) Applicant. ) ) | 1:14-MC-00340 (GK) |


### RINAT AKHMETSHIN'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IMR'S MOTION TO COMPEL


**SPERDUTO THOMPSON PLC**

Kim Hoyt Sperduto
DC Bar No. 416127
Joshua S. Kauke
DC Bar No. 999296

1133 Twentieth Street, N.W.
Second Floor
Washington, D.C.  20036

Phone: (202) 408-8900
 Fax: (202) 408-8910 (f)

Counsel for Rinat Akhmetshin

# **Table of Contents**

Preliminary Statement ................................................................................................... 1

Summary Of Argument ................................................................................................. 1

**POINT I**

MR. AKHMETSHIN HAS DEMONSTRATED THAT HE IS
A RULE 26(b)(4)(D) EXPERT IMMUNE FROM DISCOVERY. ................................. 2

    A.   No Privilege Has Been Waived Since Mr. Akhmetshin's Privilege Log Contained
Sufficient Detail And A Log Is Not Even Required For Rule 26(b)(4)(D) Immunity. ....... 2

    B.   Mr. Akhmetshin's 26(b)(4)(D) Research Captured Facts
And Opinions Beyond The Scope Of Salisbury & Ryan's Concerns. ................................. 6

**POINT II**

THE CRIME-FRAUD EXCEPTION IS INAPPLICABLE
AND CANNOT OVERCOME THE ASSERTED PRIVILEGES. ................................. 7

    A.   The Crime-Fraud Exception Does Not Apply. .................................................. 8

    B.   IMR's Evidence Cannot Reliably Show A Crime Or Fraud. ................................. 9

    C.   IMR's Has Failed To Allege Or Prove An Imminent Crime Or Fraud. ........................... 13

**POINT III**

MR. AKHMETSHIN'S COMMUNICATIONS WITH
THIRD PARTIES ARE SHIELDED BY PRIVILEGE. ............................................ 14

    A.   The Non-Testifying Consulting Expert Privilege Covers
Mr. Akhmetshin's Communications With Third Parties. ................................... 14

    B.   There Are No Materials Relating To Strategic
Communications Work Which May Be Compelled. ......................................... 16

**POINT IV**

MR. AKHMETSHIN'S COMMUNICATIONS WITH MR. LIEBERMAN ARE
PROTECTED BY MR. AKHMETSHIN'S ATTORNEY-CLIENT PRIVILEGE. ..................... 17

**POINT V**

IMR IS NOT ENTITLED TO DOCUMENTS POST-DATING AUGUST 31, 2013. ................ 19

    A.   IMR Is Not Entitled To Relief For Failure To Comply With Local Rules. ....................... 19

B.   Documents Post-Dating August 31, 2013 Are Outside The Scope
Of Discovery Granted To IMR Pursuant To Its § 1782 Application.................................. 21

**POINT VI**

MR. AKHMETSHIN SHOULD NOT BE
COMPELLED TO SIT FOR A SECOND DEPOSITION. ........................................................... 23

**POINT VII**

IMR SHOULD PAY ATTORNEYS' FEES
REQUIRED TO RESPOND TO THIS MOTION....................................................................... 25

Conclusion ..................................................................................................................... 25

# Table of Authorities

## Cases

*Chevron Corp. v. Camp,* 1:10mc 27,

    2010 WL 9462576, 2010 U.S. Dist. LEXIS 97440 (W.D.N.C. Aug. 28, 2010) ........................ 9

*Dist. Hosp. Partners, L.P. v. Sebelius*,

    971 F. Supp. 2d 15 (D.D.C. 2013) ...................................................................................... 20, 21

*\*Educ. Fin. Council v. Oberg*, No. 10-MC-0079,

    2010 WL 3719921, 2010 U.S. Dist. LEXIS 102221 (D.D.C. Mar. 8, 2010) .................... 22, 23

*Eidos Display, LLC v. Chunghwa Picture Tubes, Ltd.*,

    296 F.R.D. 3 (D.D.C. 2013) ................................................................................................... 15

*Elkins v. District of Columbia*,

    250 F.R.D. 20 (D.D.C. 2008) ................................................................................................. 18

*Epstein v. Epstein*, No. 14 C 8431,

    2015 U.S. Dist. LEXIS 51703 (N.D. Ill. Apr. 20, 2015) ........................................................ 13

*Eurasian Natural Resources Corp. v. Sir Paul Judge*,

    2014 EWHC 3556 (QB), 2014 WL 5483609 (Oct. 31, 2014) ........................................... 11, 12

*Exist, Inc. v. E.S.Y., Inc.,* No. 14-CV-62429,

    2015 WL 926003, 2015 U.S. Dist. LEXIS 26248 (S.D. Fla. Mar. 4, 2015) ............................ 22

*\*Feist v. RCN Corp.*, 12-mc-80135,

    2012 WL 5412363, 2012 U.S. Dist. LEXIS 159283 (N.D. Cal. Nov. 6, 2012) ................ 14, 15

*\*Genesco, Inc. v. Visa U.S.A, Inc.*,

    296 F.R.D. 559 (M.D. Tenn. 2014) ............................................................................... 1, 4, 15

*In re Sealed Case*,

    676 F.2d 793 (D.C. Cir. 1982) ............................................................................................... 10

*In re Sealed Case*,

754 F.2d 395 (D.C. Cir. 1985) ...................................................................................... 10, 13, 14

*In re Veiga*,

746 F. Supp. 2d 27 (D.D.C. 2010) ............................................................................................ 2

*Latele TV, C.A. v. Telemundo Communs. Group, LLC,* 12-22539-CIV,

2014 WL 5816585, 2014 U.S. Dist. LEXIS 158634 (S.D. Fla. Nov. 10, 2014) ..................... 12

*Lightfoot v. Rosskopf*,

374 F. Supp. 2d 69 (D.D.C. 2005) ............................................................................................ 5

*\*Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 85 Civ. 3412,

1998 WL 338106, 1998 U.S. Dist. LEXIS 9278 (S.D.N.Y. June 23, 1998) ....................... 4, 23

*NetJumper Software, L.L.C. v. Google Inc.*, Misc. No. M19-138,

2005 WL 3046271, 2005 U.S. Dist. LEXIS 27813 (S.D.N.Y. Nov. 10, 2005) .......................... 4

*Nissei Sangyo Am. v. IRS*, CA No. 95-1019,

1997 U.S. Dist. LEXIS 22473 (D.D.C. May 8, 1997) ............................................................... 9

*Podell v. Citicorp Diners Club, Inc.,*

112 F.3d 98 (2d Cir. 1997) ..................................................................................................... 19

*Precision of New Hampton v. Tri Component Prods. Corp.*, No. C12-2020,

2013 WL 2444047, 2013 U.S. Dist. LEXIS 79847 (N.D. Iowa June 5, 2013) ................. 15, 16

*Roberson v. Bair,*

242 F.R.D. 130 (D.D.C. 2007) ................................................................................................. 25

*Sloan Valve Co. v. Zurn Indus.*, 10 C 204,

2012 WL 5499412, 2012 U.S. Dist. LEXIS 161749 (N.D. Ill. Nov. 13, 2012) ...................... 14

*Tri-State Hosp. Supply Corp. v. United States,*

226 F.R.D. 118 (D.D.C. 2005) .............................................................................................. 8, 10

*U.S. v. Steiger,*

    318 F.3d 1039 (11th Cir. 2003) ............................................................ 13

*United States v. Deloitte LLP,*

    610 F.3d 129 (D.C. Cir. 2010) ............................................................ 15

*White v. Electrolux N. Am., Inc.*, N. 13 C 1617,

    2014 WL 1365424, 2014 U.S. Dist.  LEXIS 47532 (N.D. Ill. Apr. 7, 2014) ........................... 15

*Williams v. Bridgeport Music, Inc.*,

    300 F.R.D. 120 (S.D.N.Y. 2014) ............................................................ 5

*Williams v. City of Dallas*,

    178 F.R.D. 103 (N.D. Tex. 1998) ............................................................ 22

## **Statutes**

18 U.S.C. § 1030 .................................................................................. 10

18 U.S.C. § 2511 .............................................................................. 10, 13

18 U.S.C. § 2701 .................................................................................. 10

## **Rules**

Fed. R. Civ. P. 26(b)(2)(C) .................................................................... 24

*Fed. R. Civ. P. 26(b)(4)(D) ............................................................ passim

Fed. R. Civ. P. 26(b)(5)(A) ...................................................................... 5

Fed. R. Civ. P. 30(a)(2)(B) ..................................................................... 24

Fed. R. Civ. P. 30(e) ............................................................................. 19

Fed. R. Civ. P. 37(a)(5)(B) ..................................................................... 25

Fed. R. Evid. 801 ................................................................................ 11

Fed. R. Evid. 901 ................................................................................ 12

Local Civil Rule 7(m) ....................................................................... 20, 23

## Preliminary Statement

Rinat Akhmetshin submits this memorandum of points and authorities in opposition to International Mineral Resources, B.V.'s ("IMR") motion to compel discovery. Mr. Akhmetshin should not be compelled to produce any of the documents or information sought by IMR. Mr. Akhmetshin has timely and fully complied with his discovery obligations pursuant to 28 U.S.C. § 1782 and the Federal Rules of Civil Procedure. Neither the facts nor the law advanced by IMR in support of its motion suggests -- much less compels -- a contrary conclusion.

## Summary Of Argument

IMR's motion is based on three main arguments, none of which justify any of the requested relief. First, Applicant argues Mr. Akhmetshin's privilege log is deficient, even though a privilege log is not even required for the consulting expert privilege, a privilege that covers approximately 94% of the documents at issue. *See Genesco, Inc. v. Visa U.S.A, Inc.*, 296 F.R.D. 559, 582 (M.D. Tenn. 2014). (*See* Point I below). Second, IMR argues its motion should be granted based on the crime/fraud exception. But IMR has submitted no authority that the crime/fraud exception even applies to the Rule 26(b)(4)(D) consulting privilege immunity. There is no such authority. And as the record reveals, Mr. Akhmetshin broke no law, and testified repeatedly and unequivocally that he did not hack IMR, he did not cause IMR to be hacked, and that the meeting in question was about ENRC, not IMR. (Second Declaration of Rinat Akhmetshin, executed June 14, 2015 ("Sec. Akh. Dec.") ¶¶ 7-8). IMR's description of Mr. Akhmetshin's conversation, given by an individual present on the basis of apparent surveillance of dubious propriety, is contrived and tautological. (*See* Point II below). Third, IMR seeks three categories of documents that they claim are not privileged: communications with third parties,

so-called "strategic communications" work, and communications with personal counselor Ed

Lieberman.  As the Court will see, all such documents were properly withheld.  (*See* Points III

and IV, respectively).  Nor is IMR entitled to documents that post-date his termination as a

consulting expert and even post-date all communications regarding IMR.  (*See* Point V).  As a

consequence, Mr. Akhmetshin should not be forced to sit through another day of deposition (*see*

Point VI) and IMR should pay attorneys' fees for this motion based on its flouting of Rule

26(b)(4)(D) (*see* Point VII).

**POINT I**

**MR. AKHMETSHIN HAS DEMONSTRATED THAT HE IS
A RULE 26(b)(4)(D)EXPERT IMMUNE FROM DISCOVERY.**

**A.      No Privilege Has Been Waived Since Mr. Akhmetshin's Privilege Log Contained
Sufficient Detail And A Log Is Not Even Required For Rule 26(b)(4)(D) Immunity.**

IMR's motion to compel should be denied because Mr. Akhmetshin has done

everything the law requires of him to assert and preserve the three privileges covering the

documents subject to this motion: the non-testifying consulting expert privilege, the attorney-

client privilege, and the work product doctrine.   Mr. Akhmetshin has established these privileges

with "reasonable certainty," *In re Veiga*, 746 F. Supp. 2d 27, 33 (D.D.C. 2010), and his privilege

log does not justify finding a waiver of any of the three privileges involved.  (*See* IMR Br. (Dkt.

27-1) at 15-18).

Mr. Akhmetshin has provided more than sufficient evidence to establish that as a

non-testifying consulting expert, he is entitled to the protections of Fed. R. Civ. P. 26(b)(4)(D).

The legal definition of such an expert is set out in Rule 26(b)(4)(D) itself: "an expert who has

been retained or specifically employed by another party in anticipation of litigation . . . and who

is not expected to be called as a witness at trial."  IMR has known for over a year that Mr.

2

Akhmetshin and Salisbury & Ryan were claiming the consulting expert privilege.  Mr.

Akhmetshin and Mr. Salisbury have both submitted sworn statements to the effect that Mr.

Akhmetshin was hired by ECVK counsel Salisbury & Ryan to provide consulting expert

research and related services with respect to the disputes between ECVK and IMR attendant to

the Dutch litigation and the European arbitrations.  (*See* Affidavit of Rinat Akhmetshin, sworn to

May 14, 2014 ("Akhmetshin Aff.") (Dkt. 10-1), at ¶ 2 and Ex. A attached; Declaration of Patrick

Salisbury executed May 15, 2014 (Dkt. 10-2), at ¶ 20).  Indeed, the engagement letter between

Mr. Akhmetshin and the law firm is captioned "Research and Litigation Support." (Akhmetshin

Aff. at Ex. A).  Even the Declaration submitted by Troika member Patokh Chodiev admits that

Mr. Akhmetshin was hired by Salisbury & Ryan "to assist EuroChem in its dispute against IMR

in  the Dutch action."  (Declaration of Patokh Chodiev, executed March 22, 2014 (Dkt. 1), at ¶

11).  Based on those sworn statements, and the signed engagement letter, there can be no dispute

that Mr. Akhmetshin has established his status as a Rule 26(b)(4)(D) expert.

       Indeed, IMR does not dispute that fact.  Yet, IMR barely mentions the consulting

expert privilege in its motion papers, totally ignores its legal import, and focuses almost

exclusively on the attorney client privilege (IMR Br. at 16) or conflates the different privileges

involved into one generic "privilege" (IMR Br. at 15, 17).  And even while ignoring the scope of

the Rule 26(b)(4)(D) privilege,  IMR argues only that Mr. Akhmetshin's *privilege log* fails to

show why his documents are not discoverable under the consulting expert privilege.  (*See* IMR

Br. at 17-18: "The vague and non-specific descriptions on Mr. Akhmetshin's privilege log . . . in

no way establish that each . . . was prepared by Mr. Akhmetshin in anticipation of litigation or

while he acted in his capacity as an expert retained or specifically employed in anticipation of

litigation.")

IMR's argument is simply wrong.  Given Rule 26(b)(4)(D)'s sweeping protection over "facts known or opinions held by an expert," the Rule does not even require production of a privilege log.  *See Genesco, Inc.*, 296 F.R.D. at 582 ("Rule 26(b)(4)(D) does not require a privilege log."); *NetJumper Software, L.L.C. v. Google Inc.*, Misc. No. M19-138, 2005 WL 3046271, 2005 U.S. Dist. LEXIS 27813, *11 (S.D.N.Y. Nov. 10, 2005) (where discovery is not permitted under Rule 26(b)(4)(D), "an analysis of the nature of each withheld [expert] document is unnecessary").  That rule is a direct result of the fact that non-testifying consulting experts are "immune from discovery." *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 85 Civ. 3412, 1998 WL 338106, 1998 U.S. Dist. LEXIS 9278, *6 (S.D.N.Y. June 23, 1998).  Mr. Akhmetshin cannot be found to have waived the consulting expert privilege based on his privilege log when the law does not even require such a log from a consulting expert.  *See NetJumper Software, L.L.C.,* 2005 U.S. Dist. LEXIS 27813 at *11 (finding no waiver of consulting expert privilege where privilege log was not produced).

Nor is the attorney-client privilege or work product doctrine waived.  Mr. Akhmetshin's revised privilege log contains 263 unique entries.  (*See* IMR Br. Ex. A (Dkt. 27-3)).  Of the 263 entries, 248, or 94.3%, are covered by the consulting expert privilege.  In each instance in which the attorney-client privilege or work product doctrine applies in addition to Rule 26(b)(4)(D), Mr. Akhmetshin's privilege log disclosures avoided revealing "facts known or opinions held" protected by Rule 26(b)(4)(D).  The 15 other entries sufficiently document: (i) attorney-client communications between Mr. Akhmetshin and his personal/business counsel Edward Lieberman on matters related to ENRC, but unrelated to IMR or the Dutch Action (Priv Nos. 207, 217-222, 224-225, 228-229, 231-232); and (ii) attorney client communications and attorney work product materials transmitted between counsel at Salisbury & Ryan which was

4

subsequently attached to communications from Salisbury & Ryan to Mr. Akhmetshin (Priv. Nos. 103a, 199a).  (The Lieberman emails are discussed in further detail at Point IV below).

Fed. R. Civ. P. 26(b)(5)(A)(ii) requires that the proponent of a privilege "describe the nature of the documents, communications, or tangible things not produced or disclosed," but only insofar as he can "without revealing information itself privileged or protected."  That is exactly what Mr. Akhmetshin did.  A privilege log must contain: (1) a description of the document, (2) the document's author, (3) the document's intended recipients, (4) the date of the document, and (5) the specific privilege or privileges claimed.  *See Lightfoot v. Rosskopf,* 374 F. Supp. 2d 69, 72 (D.D.C. 2005) (ordering plaintiff to produce a privilege log containing these elements).  Mr. Akhmetshin's privilege log details each of these elements.  (*See* IMR Br. Ex. A). Despite that, when IMR first complained about insufficient detail, Mr. Akhmetshin revised the privilege log in an effort to provide the fullest description of privileged documents possible without disclosing the "facts known or opinions held" protected by Rule 26(b)(4)(D) or waiving attorney client or work product privileges.  Every entry on the revised Akhmetshin privilege log satisfies the requirements of Rule 26(b)(5), consistent with preserving the three privileges in play.

In *Williams v. Bridgeport Music, Inc.*, 300 F.R.D. 120, 124 (S.D.N.Y. 2014) Judge Sweet found that "not requiring a party to prepare an extensive privilege log for [Rule 26(b)(4)(D)] experts would promote efficient litigation and expeditious discovery, while a contrary holding would allow the parties to play games during discovery with consulting experts."  Mr. Akhmetshin made disclosures in his privilege log in an effort to quickly, efficiently, and effectively comply with his § 1782 obligations.  In response, Mr. Akhmetshin has been met with precisely the kind of games against which Judge Sweet admonished.  The Court

should dismiss IMR's motion with respect to the alleged insufficiency of Mr. Akhmetshin's

privilege log and Mr. Akhmetshin's invocation of Rule 26(b)(4)(D) immunity.

**B.      Mr. Akhmetshin's 26(b)(4)(D) Research Captured Facts And
Opinions Beyond The Scope Of Salisbury & Ryan's Concerns.**

Counsel for Mr. Akhmetshin has been informed that ECVK may not assert its

privilege over certain documents Mr. Akhmetshin identifies as generated from the London

Information Bazaar within the scope of his assignment for Salisbury & Ryan.  The apparent basis

for this ECVK decision is that, having now reviewed certain documents Mr. Akhmetshin

discovered, those documents address matters beyond the scope of ECVK's concerns and

therefore beyond the scope of Mr. Akhmetshin's assignment.    Nonetheless, Mr. Akhmetshin

describes in his Second Declaration how all of the information he so obtained was "part of my

consulting expert role for Salisbury & Ryan."  (Sec. Akh. Dec. ¶ 17).

The fact that Salisbury & Ryan does not now consider some of the information

that Mr. Akhmetshin landed relevant to its interests in the Troika's businesses and how they

structured those businesses does not change the fact that Mr. Akhmetshin discovered those facts

while trolling on its behalf.  Barter by its very nature contemplates a certain symbiosis: Mr.

Akhmetshin gave information on the London Information Exchange in return for receiving

information, sometimes of unknown origin or substance.

As a matter of law, because Rule 26(b)(4)(D) experts are "immune from

discovery" the fact that Salisbury & Ryan may not have needed some of the fruits of his research

does not mean that research loses the protection of the Rule.  By analogy, a law clerk may read

ten cases before she finds the one case that is probative of the issue at hand; that does not mean

that the law clerk was researching beyond the scope of her assignment when reading the other

nine cases.  As a matter of fact, to the extent that the matter presents a factual dispute, it appears

to be a distinction without a difference.  If the Court adopts Mr. Akhmetshin's view of the facts,

the documents remain immune from discovery under Rule 26(b)(4)(D).  If the Court embraces

Salisbury & Ryan's *ex post* "results" analysis (based on the content of the documents so

obtained) then the documents are beyond the scope of this § 1782 proceeding which is limited to

Mr. Akhmetshin's actions "on behalf of ECVK."  (Application, Dkt. 1 at 1).  Either way the

documents would be exempt from disclosure.

**POINT II**

**THE CRIME-FRAUD EXCEPTION IS INAPPLICABLE
AND CANNOT OVERCOME THE ASSERTED PRIVILEGES.**

IMR's argument for application of the crime-fraud exception (IMR Br. at 19-21)

must fail for at least two separate reasons.  First, even if a crime-fraud scenario were involved,

that exception has no application to documents covered by the non-testifying consulting expert

privilege.  Second, IMR's has failed to establish even a *prima facie* case that a crime or fraud

was committed, or that the protected communications have any relationship to any crime.[1]

IMR dedicates approximately twelve pages of its thirty-one page brief to

characterizing (or mischaracterizing) the coffee shop conversation in a manner that serves the

Troika's narrative.  (IMR Br. 1-6, 8-9, 19-21).  IMR asserts that Mr. Akhmetshin "tacitly admits"

that the coffee shop conversation "occurred just as IMR's witness reported it."  (IMR Br. 8).

That is simply false.  The only thing that Phanartzis and Mr. Akhmetshin apparently agree to is

that the conversation occurred on the day and at the location described and that it was surveilled

by IMR spies.  IMR's witnesses failed to notify the Court that the coffee shop session was

---

[1]    The incident illustrates the lengths to which IMR pursued Mr. Akhmetshin to discourage and disrupt his services on behalf of Salisbury & Ryan, or simply to harass Mr. Akhmetshin for his pro-democracy anti-corruption work in Kazakhstan.  Indeed, without such surveillance tactics and harassment, it is unlikely this proceeding would even exist, and it certainly would not exist in its current form.

apparently a pre-arranged entrapment of Mr. Akhmetshin.[2]   Applicant further fails to inform the Court that the prefabricated coffee shop conversation was not about IMR at all, but rather about ENRC and its assets in Kazakhstan.  (Sec. Akh. Dec. ¶ 8; excerpts of Akhmetshin Depo. filed under seal as Exhibit H to IMR Br. (Dkt. 27-10) at 200; excerpts of Akhmetshin Depo. attached here as Exhibit A at 265).

Most significantly, Mr. Akhmetshin testified at his deposition repeatedly that he did not hack any computers, that he does not have the ability to hack computers, and that he did not arrange for others to hack any computers.  (Sec. Akh. Dec. ¶ 7; Akhmtetshin Depo. at 200-02).  Moreover, that testimony was consistent with the Affidavit Mr. Akhmetshin submitted last year which stated "I am not a computer expert and I am not capable of hacking." (Akhmetshin Aff. ¶ 8).  It is also consistent with his statement: "It is not possible that I was overheard saying that I was turning over documents that I had hacked  . . . because I have never done so nor do I have the skills to do so."  (Akhmetshin Aff. ¶ 14).

A.      **The Crime-Fraud Exception Does Not Apply.**

There are only two circumstances under Rule 26(b)(4)(D) which merit subjecting a non-testifying expert to discovery, and neither applies here.  IMR has not cited a single case in which the Rule 26(b)(4)(D) immunity was pierced based on the crime-fraud exception.  There is no such case.  Since IMR bears the burden of proof on its motion to compel, the absence of any authority degrading the consulting expert immunity should be dispositive here.  The only cases IMR cites to support its crime-fraud argument (*Tri-State Hosp. Supply Corp.* and *In re Sealed Case* (IMR Br. at 19-20)) both involve the attorney client privilege.  No court has ever held, as

---

[2]     The fact that the entrapped conversation methodology is a practiced tool of the Troika and their operatives is discussed further at page 9.

IMR asks this Court to do, that the crime-fraud exception invalidates Rule 26(b)(4)(D) immunity.

Rather, a party may discover the facts known and opinions held by a non-testifying consulting expert "only (i) as provided in Rule 35(b); or (ii) on showing exceptional circumstances . . . ."  Fed. R. Civ. P. 26(b)(4)(D); *see Nissei Sangyo Am. v. IRS*, CA No. 95-1019, 1997 U.S. Dist. LEXIS 22473, *12 (D.D.C. May 8, 1997) ("Non-testifying experts' opinions are discoverable only 'upon a showing of exceptional circumstances.'").  Since Rule 35(b) applies to physical and mental examinations, only "exceptional circumstances" could justify piercing the consulting expert privilege here.  *Cf. Chevron Corp. v. Camp,* 1:10mc 27, 2010 WL 9462576, 2010 U.S. Dist. LEXIS 97440, *17 (W.D.N.C. Aug. 28, 2010) (concluding that application of crime-fraud exception would preclude assertion of any privilege other than Rule 26(b)(4)(D), which was analyzed separately).

Yet, IMR has made no effort to establish that "exceptional circumstances" apply.  One can search IMR's motion papers in vain to find any mention of "exceptional circumstances."  Since IMR has failed to articulate a basis for exceptional circumstances, Rule 26(b)(4)(D)'s protections over Mr. Akhmetshin's documents should not be pierced.  *See Nissei Sangyo Am.*, 1997 U.S. Dist. LEXIS 22473 at *12 ("exempting the documents from disclosure is appropriate because Nissei has made no attempt to establish exceptional circumstances, thus it has failed to strip the protection of 26(b)(4)(B)").[3]

## B.   IMR's Evidence Cannot Reliably Show A Crime Or Fraud.

Even if non-testifying consulting expert immunity was susceptible to the crime-fraud exception, and even if it applied to an expert's -- rather than the client's -- conduct, it

---

[3]   Rule 26(b)(4)(B) was the location of the consulting expert privilege before the 2010 Amendments to Rule 26 which moved the privilege to 26(b)(4)(D).

would have no application to the so-called evidence presented here.  IMR has failed to make the necessary *prima facie* showing of any crime or fraud by the client.  (*See* IMR Br. at 20, citing *In re Sealed Case*, 676 F.2d 793, 814-815 (D.C. Cir. 1982)).  In the D.C. Circuit, in "determining whether the crime-fraud exception applies to the attorney-client privilege, the court must consider whether the client made or received the otherwise privileged communication with the intent to further an unlawful or fraudulent act, and establish that the client actually carried out the crime or fraud."  *Tri-State Hosp. Supply Corp. v. United States,* 226 F.R.D. 118, 132-133 (D.D.C. 2005). The moving party "satisfies its burden of proof if it offers evidence that if believed by trier of fact would establish the elements of an ongoing or imminent crime or fraud." *In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985).  IMR's conclusory statement that the evidence it has submitted depicts conduct by "Mr. Akhmetshin" which "constitutes a crime under the Computer Fraud and Abuse Act ('CFAA'), 18 U.S.C. § 1030, and the Electronic Communications Privacy Act ('ECPA'), 18 U.S.C. § 2701, which outlaw the unauthorized accessing of computer systems," is vague, unsubstantiated, relies on unauthenticated evidence of dubious provenance, and falls far short of IMR's burden.  (*See* IMR Br. at 20).[4]

      The nature of the conversation should trigger skepticism.  IMR admits that it had an "IMR investigator" who just happened to be in position to "witness" and "overhear" the coffee shop conversation.  (IMR Br. at 2).  That conversation -- that focused on ENRC not IMR (Sec. Akh. Dec. ¶8; Akhmetshin Depo at 200) -- had all the earmarks of a contrivance intended to induce a boasting statement of capabilities from Mr. Akhmetshin.  In fact, it would not be the first time: the "entrapped conversation" methodology was an established element of the Troika's arsenal, so much so that it was even the subject of the court's opinion in *Eurasian Natural*

---

[4]   IMR alleges the "crime" involved arises under the ECPA, but cites to 18 U.S.C. § 2701, which is the Stored Communications Act.  Mr. Akhmetshin will assume IMR intended to cite the ECPA, 18 U.S.C. § 2511, although both Acts are equally inapplicable.

*Resources Corp. v. Sir Paul Judge*, 2014 EWHC 3556 (QB), 2014 WL 5483609 (Oct. 31, 2014) (Mrs. Justice Swift) (lunch meeting with so-called "journalist" was in reality conversation with representative "commissioned" by ENRC to mislead and entrap defendant into making statements).  IMR's apparent use of this disreputable technique counsels against giving serious weight to the suspiciously paraphrased account by IMR's hired operative.

Indeed, not only is the Phanartzis Declaration hearsay, *see* Fed. R. Evid. 801, but also it is misleadingly crafted.  It purports to directly quote Mr. Akhmetshin with respect to certain statements, but provides its own gloss with respect to key details, such as the source of the documents handed over to Mr. Akhmetshin's "client."  (*See, e.g.,* Dec. of Akis Phanartzis (Dkt. 1) ¶ 13: "Mr. Akhmetshin explained: 'We targeted everyone important' at IMR, 'everyone connected.'").  The term "IMR" is never quoted in the Phanartzis Declaration as having been said by Mr. Akhmetshin.  Similarly, and critically, the Phanartzis Declaration never directly quotes Mr. Akhmetshin using the word "hack" -- or any synonym.  (*See, e.g., id.* ¶ 14).  Presumably, IMR and Mr. Phanartzis, who otherwise had sufficient notes or recordings to directly quote Mr. Akhmetshin with respect to various innocuous details, would have directly quoted Mr. Akhmetshin with respect to his critical "admission" if it was as straightforward as they claim.  The Declaration reeks of manipulation and contrivance, and Mr. Phanartzis has not been subjected to cross-examination on the multitude of questions his document raises.

Most importantly, Mr. Akhmetshin stated repeatedly and emphatically subject to cross-examination under oath, that he never hacked IMR's computers nor organized the hacking of IMR's computers.  (*See, e.g.,* Akhmetshin Depo. at 201-02, 204).  If that is not enough to dissuade the Court from finding *prima facie* evidence that no crime or fraud occurred, then IMR should be ordered to produce the direct evidence underlying its allegations, Mr. Akhmetshin

11

should be given the opportunity for reciprocal discovery, and an evidentiary hearing should be held, so that Mr. Akhmetshin may consider and challenge the questionable unauthenticated materials asserted against him. *Cf. Latele TV, C.A. v. Telemundo Communs. Group, LLC,* 12-22539-CIV, 2014 WL 5816585, 2014 U.S. Dist. LEXIS 158634, *8 (S.D. Fla. Nov. 10, 2014) (evidentiary hearing held to obtain evidence concerning Defendants' argument that the crime-fraud exception generated a waiver of the attorney-client privilege).

IMR's other "evidence" of "hacking" carries even less weight. The "thumb drive" that is the subject of the Raphael Rahav Declaration (Dkt. 1), the Tadeusz Jarmolkiewicz Declaration (Dkt. 1), and Melanie Maugeri Declaration (Dkt. 27-13) was admittedly received from an "anonymous source." (IMR Br. at 5). Since IMR withheld the identities of the so-called "number of sources who we had identified as having received the hacked documents or having known people who had received the information" (Rahav Dec. ¶ 5), there is no reliable way even to begin to discern who planted the thumb drive.[5] The unknown provenance of the thumb drive means that it cannot be authenticated. *See* Fed. R. Evid. 901. The failure to provide any chain of custody not only eviscerates its admissibility, it suggests the ESI it contains was contrived, if not manipulated or manufactured.

Even if the thumb drive contained confidential documents relating to the Troika's business entities, it is not reasonable to conclude -- as did Mr. Jarmolkiewicz -- that those files "could only have been obtained by way of illegal hacking." Indeed, Queens Bench decisions demonstrate that so-called "hacked" materials were already circulating freely on the London Information Bazaar and were leaked by corporate officers or directors of ENRC (whether entrapped or otherwise). *See Eurasian Natural Resources Corporation, Ltd.*, 2014 WL 5483609

---

[5]    In the unlikely event that the Court is inclined to give *any* weight to the thumb drive, Mr. Akhmetshin requests the opportunity to have reciprocal discovery to examine, among other things, the thumb drive. If IMR is entitled to submit an affidavit by its ESI forensic expert, so too should Mr. Akhmetshin.

at ¶ 13  ("The defendant has admitted . . . that some of the information he gave to the 'journalist' was confidential to [ENRC].")  Indeed, the ENRC de-listing scandal was so pervasive in London that stories of ENRC leaks, bribery, and fraud dominated business headlines for years.  (*See, e.g.,* Alistair Osborne, *Burglary And Computer Hacking Add To Woes At ENRC*, The Telegraph, May 23, 2013: "ENRC leaks so badly, why would anybody ever bother to hack it?")

## C.     **IMR's Has Failed To Allege Or Prove An Imminent Crime Or Fraud.**

Even if the Court were to fully credit the dubious sources and arguments offered by IMR, IMR would nonetheless still have failed to satisfy the crime-fraud exception because its application requires a showing of "the elements of an ongoing or imminent crime or fraud."  *See In re Sealed Case*, 754 F.2d at 399.  IMR has failed to demonstrate that any crime was committed under either the CFAA or ECPA,[6] and certainly not anything that was "ongoing" or

---

[6]     Contrary to IMR's account, the ECPA does not "outlaw the unauthorized accessing of computer systems," which is all that IMR has alleged.  (IMR Br. at 20).  The ECPA applies to the wrongful "interception" of communications. *See* 18 U.S.C. §§ 2511 (1)(a) ("intercepts"), 2511(1)(b) ("to intercept"), 2511(1)(c) ("obtained through the interception"), 2511(1)(d) ("obtained through the interception"), 2511(1)(e) ("intercepted").  For example, the ECPA will apply to "any person who—intentionally *intercepts*, endeavors *to intercept*, or procures any person *to intercept* or endeavor *to intercept*, any wire, oral, or electronic communication."  18 U.S.C. § 2511(1)(a) (emphasis added).  Courts have construed "interception" to require acquisition "contemporaneous with the communication," or in layman's terms, acquisition while the communication is "in flight" *See e.g., U.S. v. Steiger,* 318 F.3d 1039, 1048 (11th Cir. 2003) (no evidence communications  were "obtained through contemporaneous acquisition of electronic communications while in flight"); *Epstein v. Epstein*, No. 14 C 8431, 2015 U.S. Dist. LEXIS 51703, *9 (N.D. Ill. Apr. 20, 2015) ("the unanimous view of courts to date, construes § 2511 to require contemporaneous interception").  IMR has not alleged that Mr. Akhmetshin or anyone associated with Mr. Akhmetshin "intercepted" its communications, but rather that Mr. Akhmetshin "stole" information.  (*See, e.g.,* IMR Application (Dkt. 1) at 1).  For this reason alone, IMR has not made -- nor could it make -- a *prima facie* showing that there was a violation of the ECPA.

Likewise, the CFAA does not simply criminalize any "unauthorized accessing of computer systems."  Rather, the CFAA criminalizes very specific and detailed acts relating to computer fraud and abuse, none of which are consistent with IMR's allegations.  Specifically, IMR has failed to allege, much less provide *prima facie* evidence, that that documents allegedly "hacked" by Mr. Akhmetshin: (i) contained information "determined by U.S. Government" to require protection, §1030(a)(1); (ii) involved a "financial record of a financial institution," §1030(a)(2)(A); (iii) contained information "from any department or agency of the United States," § 1030(a)(2)(B); (iv) contained information from a "protected computer," §1030(a)(2)(C); (v) came from a "non public computer of a department or agency of the United States," §1030(a)(3); or (vi) contained "anything of value, §1030(a)(4).  Likewise, IMR has not alleged that Mr. Akhmetshin or anyone associated with Mr. Akhmetshin transmitted a "program, information, code or command" and "intentionally caused damage," "traffic[ed]" passwords, or made any "threats" in an effort "to extort."  §1030(a)(5)-(7). The limited and incredible evidence offered by IMR is insufficient to establish a *prima facie* violation under the CFAA.  *See Metabyte, Inc. v. Nvidia Corp.*, Case No. 12-

"imminent." (*See* IMR Br. at 20).  It should be dispositive that IMR has utterly failed to

establish the required "relationship between the communication at issue and the prima facie

violation." *In re Sealed Case,* 754 at 399.  "A *prima facie* violation is shown if it is established

that the client was engaged in or planning a criminal or fraudulent scheme when it sought the

advice of counsel to further the scheme." *Id.*  IMR has not even attempted to show or make that

link or relationship here.

**POINT III**

**MR. AKHMETSHIN'S COMMUNICATIONS WITH**
**THIRD PARTIES ARE SHIELDED BY PRIVILEGE.**

**A.      The Non-Testifying Consulting Expert Privilege Covers**
**Mr. Akhmetshin's Communications With Third Parties.**

Communications between Mr. Akhmetshin and third parties that reflect "facts

known or opinions held" by Mr. Akhmetshin are immune from disclosure by Rule 26(b)(4)(D).

"Rule 26(b)(4)(D) does not only prohibit discovery of mental impressions, it also protects 'facts

known or opinions held' by a consulting expert as well." *Sloan Valve Co. v. Zurn Indus.*, 10 C

204, 2012 WL 5499412, 2012 U.S. Dist. LEXIS 161749, *13 (N.D. Ill. Nov. 13, 2012).  "Rule

26(b)(4)(D) . . . does not limit the protection to 'facts known' or 'opinions held' regarding the

litigation or trial at issue." *Feist v. RCN Corp.*, 12-mc-80135, 2012 WL 5412363, 2012 U.S.

Dist. LEXIS 159283, *10 (N.D. Cal. Nov. 6, 2012).  Rule 26(b)(4)(D) necessarily covers

communications between a non-testifying consulting expert and third parties.  *See id.* at *12

(quashing subpoena which sought communications between a Rule 26(b)(4)(D) expert and third

parties).  Mr. Akhmetshin utilized journalists, researchers, NGO representatives, and think tank

---

0044, 2013 WL 1729808, 2013 U.S. Dist. LEXIS 58213, *12-13, (N.D. Cal. Apr. 22, 2013) ("The CFAA's scope is
narrow, and the Court  is not inclined or permitted to expand it.")

employees, among others, as sources for his non-testifying consulting expert investigation relating to the Dutch Action.  (Sec. Akh. Dec. ¶¶ 14-16).

Mr. Akhmetshin's engagement with individuals in the London Information Bazaar is protected under Rule 26(b)(4)(D).  Any information Mr. Akhmetshin provided to or obtained from such individuals is protected as "facts known or opinions held" by Mr. Akhmetshin.  *See* Fed. R. Civ. P. 26(b)(4)(D).  Just as in *Feist*, where the court held that a non-testifying consulting expert's communications with a third party as part of his investigation were privileged under Rule 26(b)(4)(D), Mr. Akhmetshin's communications with third parties are privileged here under Rule 26(b)(4)(D).

IMR wrongly contends that Mr. Akhmetshin's communications with such individuals waives the Rule 26(b)(4)(D) privilege.  (IMR Br. at 26).  Courts in this Circuit -- as well as the majority of courts in other Circuits -- that have considered the question of non-testifying consulting expert waiver have held that the privilege may not be waived.  Most recently, Judge Sullivan acknowledged that "while it is unclear whether Rule 26(b)(4)(D) is even subject to waiver, the general trend in other districts has been to find that it is not."  *Eidos Display, LLC v. Chunghwa Picture Tubes, Ltd.*, 296 F.R.D. 3, 7 (D.D.C. 2013) (Sullivan, J.); *see also Genesco, Inc.*, 296 F.R.D. at 586 (Rule 26(b)(4)(D) "serves different purposes and does not permit of waiver"); *Precision of New Hampton v. Tri Component Prods. Corp.*, No. C12-2020, 2013 WL 2444047, 2013 U.S. Dist. LEXIS 79847, *16 (N.D. Iowa June 5, 2013) ("It appears dubious that the waiver doctrine applies to the protections afforded to facts known or opinions held by non-testifying consulting experts.").  Neither the dicta in *White v. Electrolux N. Am., Inc.*, N. 13 C 1617, 2014 WL 1365424, 2014 U.S. Dist.  LEXIS 47532 (N.D. Ill. Apr. 7, 2014) nor the holding in *United States v. Deloitte LLP*, 610 F. 3d 129, 141 (D.C. Cir. 2010), which

concerned only waiver of the work product doctrine, justifies finding a waiver of the Rule 26(b)(4)(D) privilege here with respect to Mr. Akhmetshin's communications with third parties. (IMR Br. at 26).[7]

## B.   There Are No Materials Relating To Strategic Communications Work Which May Be Compelled.

IMR's motion to compel "material related to [Mr. Akhmetshin's] strategic communications work" should be denied for the simple reason that no such work occurred, and no such documents exist.  (IMR Br. at 22-23).  Mr. Akhmetshin's only role in relation to the Dutch Action was as a non-testifying consulting expert.  (*See* Akhmetshin Aff. ¶ 2).  Mr. Akhmetshin performed no strategic communications work on behalf of Salisbury & Ryan or ECVK.  (Sec. Akh. Dec. ¶¶ 9-13).  Mr. Akhmetshin proposed a strategic communications strategy, but his proposal was bluntly rejected.  Twice.  (*Id.*)  Since no documents exist relating to strategic communications work, none can be produced.  (Sec. Akh. Dec. ¶ 13).  Mr. Akhmetshin's written proposal (Priv ID No. 4) is protected by the non-testifying consulting expert privileges, attorney-client privilege, and the work product doctrine.  Mr. Akhmetshin's proposal was sent to Mr. Salisbury in response to communications with Mr. Salisbury about the anticipated litigation by ECVK.

IMR misconstrues the nature of Mr. Akhmetshin's communications with journalists in a flawed effort to pierce the consulting expert privilege and work product doctrine. (IMR Br. at 23-24).  These communications were made as part of Mr. Akhmetshin's consulting expert research and investigation.

---

[7]    The fact that ECVK is one of the holders of the Rule 26(b)(4)(D) privilege presents an additional reason why Mr. Akhmetshin's communications with third parties cannot be found to have waived the non-testifying consulting expert privilege. *See Precision of New Hampton*, 2013 U.S. Dist. LEXIS 79847 at *16 (holding that "even if the protections of Rule 26(b)(4)(D) can be waived" no waiver occurred since it was not the privilege holder that made "the disclosures that formed the basis of the waiver argument").

For example, The communications between Mr. Akhmetshin and a journalist named Mark Hollingsworth similarly fail to substantiate IMR's paranoia that Mr. Akhmetshin orchestrated a strategic communications campaign. In fact, Mr. Hollingsworth's own emails corroborate the fact that Mr. Akhmetshin was able to use journalists to obtain research as part of his investigation. (*See* IMR Br. at 24: "Mr. Hollingsworth wrote Mr. Akhmetshin: '. . . I have a lot of new information and documents about the Trio . . . I am happy to exchange information . . . .'"). Nothing in Mr. Hollingsworth's email even hints that Mr. Akhmetshin used Mr. Hollingsworth -- or any other journalist -- as part of a strategic communications campaign. (*See* IMR Br. Ex. W (AKH000637-638)).

Exchanging information with journalists on the London Information Exchange does not equate to engaging in a strategic communications campaign. (IMR App. (Dkt. 1) at 4). What Mr. Akhmetshin disclosed to and learned from various journalists is protected by Rule 26(b)(4)(D) as "facts known or opinions held" to the non-testifying consulting expert. IMR's motion to compel production of Mr. Akhmetshin's communications with Messrs. Goodley, Hollingsworth, Horton, Balint-Kurti, and Silverstein, and Ms. Ridley should be denied.

### POINT IV

### MR. AKHMETSHIN'S COMMUNICATIONS WITH MR. LIEBERMAN ARE PROTECTED BY MR. AKHMETSHIN'S ATTORNEY-CLIENT PRIVILEGE.

Mr. Akhmetshin's communications with his personal counsel Edward Lieberman (Privilege log Nos. 207, 217-222, 224-225, 228-229, 231-232) are protected from disclosure by the attorney-client privilege. Mr. Akhmetshin and Mr. Lieberman have worked together on a variety of projects over the years, including matters in conjunction with the State Department, Department of Defense, and related agencies. (Akhmetshin Aff. ¶ 5; Sec. Akh. Dec. ¶ 19). When Mr. Akhmetshin and Mr. Lieberman work together, Mr. Lieberman acts as counsel for the

team.  In that capacity, Mr. Akhmetshin relies upon Mr. Lieberman for legal advice in support of their ventures.  (Sec. Akh. Dec. ¶ 19).

Mr. Akhmetshin and Mr. Lieberman did not work together with respect to the Dutch Action.  (*Id.*)  They did, however, work together on ENRC issues that have nothing to do with IMR, the Dutch Action, or Mr. Akhmetshin's work for Salisbury & Ryan.  (*Id.*)

Mr. Akhmetshin's communications with Mr. Lieberman withheld in this proceeding comprise just one such example and satisfy each of the four elements necessary for application of the attorney-client privilege:

(1) the holder of the privilege is or sought to be a client;

(2) the person to whom the communication was made is a member of the bar of a court or his subordinate and in connection with this communication is acting as a lawyer;

(3) the communication relates to a fact of which the attorney was informed by his client without the presence of strangers for the purpose of securing primarily either an opinion on law, legal services, or assistance in some legal proceeding and not for the purpose of committing a crime or tort; and

(4) the privilege has been claimed and not waived by the client.

*Elkins v. District of Columbia*, 250 F.R.D. 20, 24 (D.D.C. 2008).  The Lieberman-Akhmetshin relationship was one of attorney-client.  (Sec. Akh. Dec. ¶ 19).  Mr. Lieberman is an active member of the D.C. bar.  Mr. Akhmetshin and Mr. Lieberman communicated in confidence with the purpose of seeking and providing legal advice with respect to a legal issue in 2013 concerning ENRC, as well as other projects over time.  (*See* excerpts of Akhmetshin Depo. attached here as Exhibit A at 261; Sec. Akh. Dec. ¶ 19).  Finally, Mr. Akhmetshin has asserted the privilege and done nothing to waive it.

IMR challenges only the first element of the attorney-client privilege standard insofar as it objects to Mr. Akhmetshin's deposition errata.  IMR's objection to Mr.

Akhmetshin's errata (IMR Br. at 28) does not change the fact that Mr. Akhmetshin's sworn

deposition testimony is that Mr. Lieberman provided him legal advice.  Mr. Akhmetshin's errata

satisfied the requirements of Fed. R. Civ. P. 30(e), it "listed the changes and the reasons for

making them."  (IMR Br. Ex. Y: "change 'no, no' to 'yes, yes,' reviewed emails").  That change

happened only after he fully understood the question, having originally thought he was being

asked whether Mr. Lieberman represented him with respect to the Salisbury & Ryan matter.

(*See* excerpts of Akhmetshin Depo. attached here as Exhibit A at 261-262).  Mr. Akhmetshin's

correction of his sworn testimony was not a "blatant attempt to reverse testimony" that should

"be rejected out of hand."  (IMR Br. at 28).  It was a change permitted by the rule based on a

better understanding of the question and following a review of the actual emails in question.

Contrary to IMR's myopic view, "the language of the Rule places no limitations on the type of

changes that may be made, nor does the Rule require a judge to examine the sufficiency,

reasonableness, or legitimacy of the reasons for the changes."  *Podell v. Citicorp Diners Club,
Inc.,* 112 F.3d 98, 103 (2d Cir. 1997).

There can be no doubt based on Mr. Akhmetshin's deposition and Second

Declaration that Mr. Akhmetshin's communications with Mr. Lieberman are protected by the

attorney-client privilege.[8]  IMR's motion to compel should therefore be denied.

## POINT V

## IMR IS NOT ENTITLED TO DOCUMENTS POST-DATING AUGUST 31, 2013.

### A.     IMR Is Not Entitled To Relief For Failure To Comply With Local Rules.

IMR's motion for documents arguably responsive to its overbroad subpoena post-

dating August 31, 2013 should be denied for failure to comply with Local Civil Rule 7(m), the

---

[8]     Very brief *in camera* review would confirm the legal nature of the communications.  Mr. Akhmetshin does not
believe any such review is necessary based on his correcting his testimony once he had a better understanding of the
question and an opportunity to review the email communications in question.

meet and confer certification requirement.  Local Civil Rule 7(m) requires that before filing any

non-dispositive motion, "counsel shall discuss the anticipated motion with opposing counsel . . .

in a good faith effort to determine whether there is any opposition to the relief sought and, if

there is opposition, to narrow the areas of disagreement."  L. Civ. R. 7(m).  "A party shall

include in its motion a statement that the required discussion occurred, and a statement as to

whether the motion is opposed."  *Id.*  If any part of a motion fails to comply with the

requirements of Local Civil Rule 7(m) that request is properly denied pursuant to the Rule.  *See*

*Dist. Hosp. Partners, L.P. v. Sebelius*, 971 F. Supp. 2d 15, 22 (D.D.C. 2013) (Huvelle, J.)

("plaintiff's motion as to those additional requests is denied as violating both the spirit and text

of the Local Civil Rule 7(m)").

 Like *Dist. Hosp. Partners*, IMR's request for documents post-dating August 31,

2013 should be denied due to IMR's failure to comply with the either the spirit or language of

Local Civil Rule 7(m).  The "meet and confer" statement in IMR's Motion To Compel omits

reference to the post-August 31, 2013 documents and is limited to "privilege" issues: "In

accordance with Local Civil Rule 7(m), counsel for IMR have in good faith conferred . . . over

Mr. Akhmetshin's privilege assertions without court intervention, but the parties have failed to

reach an agreement, thus necessitating this motion."  (IMR Motion (Dkt. 30) at 2-3).  Again, as

in *Dist. Hosp. Partners*, the fact that IMR "fully complied with Rule 7(m) for a significant

portion of their motion to compel does not save those requests for which they did not comply."

*See id.* at 22 (denying motion with respect to those requests for which plaintiff did not satisfy its

meet and confer obligation under Rule 7(m)).

 Second, while the parties had indeed met and conferred with respect to the post-

August 31, 2013 documents, counsel for Mr. Akhmetshin and IMR had not concluded those

negotiations.  Indeed, as illustrated by the email from Joshua S. Kauke to Fritz Scanlon dated

Friday, May 15, 2015, Mr. Akhmetshin's counsel was actively working with IMR in an effort to

narrow the areas of disagreement on documents post-dating August 31, 2013.  (*See* IMR Br. Ex.

Z (Dkt. 27-27): "At our last meet and confer on May 5, we promised to take another look at post-

8/31/13 docs to see if we could provide some insight.")  The next word received from IMR

counsel was IMR's motion to compel, filed the very next business day, Monday, May 18.  IMR's

limitation of its "meet and confer" certification to the "privilege assertions" concedes that the

parties' discussions over post-August 31 documents were incomplete.  IMR's "meet and confer"

and certification on privilege are insufficient to satisfy Local Rule 7(m).  *See id.* ("The purpose

of the Rule is to 'promote,' *not* 'ensure,' the resolution of as many issues as possible without

court intervention.") (emphasis in original).

Because IMR's request for documents post-dating August 31, 2013 has violated

both the spirit and the text of Local Rule 7(m), its motion should be denied as to irrelevant

documents created months after Mr. Akhmetshin's termination.

**B.**     **Documents Post-Dating August 31, 2013 Are Outside The Scope
Of Discovery Granted To IMR Pursuant To Its § 1782 Application.**

IMR's motion to compel discovery of documents post-dating August 31, 2013

should also be denied because such documents are neither relevant nor reasonably calculated to

lead to discovery of admissible evidence in the underlying Dutch Action.  Indeed, this entire

proceeding is limited to discovery in aid of the Dutch Action.  (*See* Order dated February 5, 2015

(Dkt. 22)).  That purpose is not so broad and indefinite to allow IMR to be entitled to every

document, regardless of date, "responsive" to its "single" document request for "All documents

and communications concerning IMR, Shaft Sinkers, ENRC, EuroChem, ECVK, and/or

Salisbury & Ryan."  (February 5, 2015 Subpoena attached to IMR Br. as Ex. G).

Here, the record is abundantly clear that Mr. Akhmetshin was terminated on Memorial Day weekend 2013.  (Sec. Akh. Dec. ¶ 21).  Most of Mr. Akhmetshin's minimal contacts with Salisbury & Ryan between Memorial Day and August 31, 2013 related to his efforts to get paid.  (Sec. Akh. Dec. ¶ 22).  Between August 31, 2013 and this proceeding, Mr. Akhmetshin had only one communication with Salisbury & Ryan and that communication addressed a different topic.  (Sec. Akh. Dec. ¶ 23)

Courts routinely limit the scope of third-party discovery under Rule 45 to a scope of time "in accordance" with the underlying allegations.  *See, e.g., Exist, Inc. v. E.S.Y., Inc., No. 14-CV-62429*, 2015 WL 926003, 2015 U.S. Dist. LEXIS 26248, *8 (S.D. Fla. Mar. 4, 2015) (granting motion to quash subpoena which court found overbroad and narrowing the date range of documents to be produce to a period of time "in accordance" with the pleadings); *Williams v. City of Dallas*, 178 F.R.D. 103, 110 (N.D. Tex. 1998) (restricting relevant time frame for the subpoena).

Judge Bates' decision to narrow the scope of a subpoena in *Educ. Fin. Council v. Oberg*, No. 10-MC-0079, 2010 WL 3719921, 2010 U.S. Dist. LEXIS 102221 (D.D.C. Mar. 8, 2010) is instructive.  In *Oberg*, a *Qui Tam* plaintiff subpoenaed non-party Education Finance Council ("EFC"), a non-profit trade association, in relation to alleged frauds perpetrated by EFC members.  Judge Bates found that the subpoena seeking documents from "January 1, 2000 to present [2010]" to be overbroad since the complaint only alleged that the defendants had engaged in fraud between 2002 and 2006.  *Id.* at *14-15.  Judge Bates curtailed the subpoena's timeframe to 2007, finding that "once the alleged fraud ceased," any additional documents would have "little or no bearing on the claims in Oberg's suit."  *Id.* at *15.

Documents post-dating Mr. Akhmetshin's May termination and a reasonable winding up period would be neither relevant nor reasonably calculated to lead to the discovery of the evidence sought pursuant to IMR's application for discovery in aid of the Dutch Action.[9]  In the words of Judge Bates, such documents will have "little or no bearing" on the underlying claims.  *See id.*

## POINT VI

### MR. AKHMETSHIN SHOULD NOT BE COMPELLED TO SIT FOR A SECOND DEPOSITION.

IMR's motion to compel should be denied with respect to its request to compel Mr. Akhmetshin to sit for a second deposition.  No basis exists for imposing such an undue burden on Mr. Akhmetshin, who has already had to prepare and sit through approximately five hours and forty-five minutes of investigation.

First, as with IMR's request for documents post-dating August 31, 2013, IMR's request to re-depose Mr. Akhmetshin should be denied for failure to comply with Local Civil Rule 7(m).  IMR's counsel never raised the issue in meet and confer negotiations.  Indeed, IMR failed to certify in its Motion To Compel that it engaged in a meet and confer with respect to this issue.  (*See* Motion to Compel at 2-3).  Thus, for the same reasons articulated in Point V.A., IMR's request to re-depose Mr. Akhmetshin should be denied for failure to comply with Local Rule 7(m).

Second, there is no need to re-depose Mr. Akhmetshin.  IMR's claim that it was not permitted to probe into information on the subject matter of communications and persons present (IMR Br. at 29) carries little weight, since non-testifying consulting experts are "generally immune from discovery."  *See Monarch Knitting Mach. Corp.*, 1998 U.S. Dist.

---

[9]   August 31, 2013 is a fair and reasonable period because August 27, 2013 was the last time Mr. Akhmetshin had any communication with Salisbury & Ryan in relation to the Dutch Action.  (*See* Sec. Akh. Dec.  ¶¶ 21-23).

LEXIS 9278 at *6 ("a consulting expert who will not testify at trial, 'is generally immune from discovery'").

Third, even if the Court orders Mr. Akhmetshin to produce additional documents or finds any objection to have been improperly made, IMR's motion to re-depose Mr. Akhmetshin should be denied because it would impose an undue burden and expense on Mr. Akhmetshin. That burden far outweighs its likely benefit. Under Rule 30, leave of court may only be granted consistent with the principles stated in Rule 26(b)(2). *See* Fed. R. Civ. P. 30(a)(2)(B). Rule 26(b)(2) requires the court to limit the frequency or extent of discovery otherwise allowed if "the burden or expense of the proposed discovery outweighs its likely benefit, considering" a variety of factors, including "the parties' resources." Fed. R. Civ. P. 26(b)(2)(C)(iii).

Given the broad scope of the non-testifying consulting expert privilege, in a second deposition IMR would still be prohibited from probing into any matters related to that immunity. On the other hand, for the same reasons set forth in Mr. Akhmetshin's May 15, 2015 Motion To Recover Costs Of Compliance With IMR's Subpoena (Dkt. 25), the additional personal time and expense required to be re-deposed would further add to the significant expense already imposed by responding to IMR's Subpoena. That IMR contends that Mr. Akhmetshin is not entitled to be reimbursed for his significant expenses further justifies denying its request for a second deposition. (*See* Dkt. 31).

Finally, if the Court determines any further deposition is appropriate, such testimony should be limited to 75 minutes. On April 7, IMR's counsel was explicitly asked if he had completed the deposition, to which he responded, "I am done today, yes," and later reiterated, "I have nothing further today." (*See* excerpts of Akhmetshin Depo. attached here as

24

Exhibit A at 259, 269-270).  The deposition ended at 5:08 p.m. and produced a 270-page

transcript.  Actual deposition time approached five hours and forty-five minutes.  As this Court

has noted before, "the Court should begin with the presumption that the seven-hour limit was

carefully chosen and that extensions of that limit should be the exception, not the rule."

*Roberson v. Bair,* 242 F.R.D. 130, 138 (D.D.C. 2007).  That is particularly true in the

circumstances of this § 1782 miscellaneous proceeding.

## POINT VII

### IMR SHOULD PAY ATTORNEYS' FEES
### REQUIRED TO RESPOND TO THIS MOTION.

Because IMR's Motion to Compel is predominantly generated based on its own

decision to totally ignore the Rule 26(b)(4)(D) consulting expert privilege -- a privilege that is

dispositive of approximately 94% of the documents in dispute -- IMR should be forced to bear

attorneys' fees associated with this motion under Rule 37(a), if not also under Rule 45(d).  Mr.

Akhmetshin should not be forced to pay the price for IMR's selective refusal to acknowledge

controlling Rule 26(b)(4)(D) authority.  When a motion to compel is denied, the Court must

"require the movant, the attorney filing the motion, or both to pay the party or deponent who

opposed the motion its reasonable expenses incurred in opposing the motion, including

attorneys' fees."  Fed. R. Civ. P. 37(a)(5)(B).

### Conclusion

For all the foregoing reasons, the Court should deny IMR's motion to compel and

award Mr. Akhmetshin his reasonable attorneys' fees incurred in opposing the motion.

Mr. Akhmetshin respectfully requests oral argument on the motion.

Dated:          Washington, D.C.
                June 18, 2015

                                              Respectfully submitted,


                                               /s/ Kim Hoyt Sperduto
                                              Kim Hoyt Sperduto
                                              D.C. Bar No. 416127

                                              Joshua S. Kauke
                                              D.C. Bar No. 999296

                                              SPERDUTO THOMPSON PLC
                                              1133 Twentieth Street, N.W.
                                              Second Floor
                                              Washington, D.C.  20036
                                              202.408.8900
                                              202.408.8910 (f)

                                              ksperduto@sperdutothompson.com

                                              Counsel for Rinat Akhmetshin

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of June 2015, that I caused copies of Rinat Akhmetshin's Memorandum Of Points And Authorities In Opposition To IMR's Motion To Compel, and accompanying papers, to be served using the Court's Electronic Case Filing System pursuant to Local Rule 5.4 or by email, on counsel for Applicant, S. Nathan Park, KOBRE & KIM LLP, 1919 M Street, NW, Washington, D.C. 20036, Nathan.park@kobrekim.com, and counsel for Third-Party Intervenor ECVK, Edward Shapiro, LATHAM & WATKINS LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004, edward.shapiro@lw.com, Patrick Salisbury, SALISBURY & RYAN LLP, 1325 Avenue of Americas, New York, New York 10019-6026, PS@salisburyryan.com.

/s/
Kim Hoyt Sperduto
