**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| APPLICATION OF INTERNATIONAL MINERAL | ) | |
| RESOURCES, B.V. FOR AN ORDER TO TAKE | ) | |
| DISCOVERY PURSUANT TO 28 U.S.C. § 1782, | ) | 1:14-MC-00340 (GK) |
| | ) | |
| Applicant. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF RINAT AKHMETSHIN'S MOTION FOR A PROTECTIVE ORDER**

Rinat Akhmetshin submits this memorandum of points and authorities in support

of his motion for a Protective Order pursuant to Fed. R. Civ. P. 26(c) to ensure that there is no

misuse of this 28 U.S.C. § 1782 proceeding.  Mr. Akhmetshin asks that the Court issue its Order

confirming that the discovery materials generated in this miscellaneous proceeding are to be used

only "in aid of foreign litigation," as the statute itself demands.  In this case, that means that the

discovery materials be used only in the litigation brought by EuroChem Volga-Kaliy ("ECVK")

against Applicant International Mineral Resources, B.V. ("IMR"), now on appeal from the lower

court decision in the Amsterdam District Court (the "Dutch Action").   It is unclear how IMR

could oppose such an Order since the very first sentence of their April 3, 2014 *ex parte*

Application to this Court sought "discovery from Rinat Akhmetshin, a resident of the District of

Columbia, for use in foreign proceedings pending in the Amsterdam District Court in the

Netherlands captioned *EuroChem Volga-Kaliy LLC v. International Mineral Resources B.V.*

with case number C/13/539097 (the 'Dutch Action')."  (*Ex Parte* Application (Dkt.1) at 1).  Yet

IMR refused to consent to that simple provision during meet and confer negotiations of a

proposed Protective Order.

During the 2014 motions practice attendant to the Application, IMR sought to circumvent the scope of its original *ex parte* application by asserting that it needed discovery for other unidentified (both then and now) and uninitiated (both then and now) "Contemplated Dutch Proceedings."  Mr. Akhmetshin believes the concept of the "Contemplated Dutch Proceedings" is merely a procedural artifice invoked by IMR to bypass restrictions on the use of discovery.  IMR has now been "contemplating" over a year and Mr. Akhmetshin is unaware of any new "Dutch Proceedings."  There is no rational basis on which to authorize now use of the discovery from this miscellaneous proceeding for Dutch litigations that do not even exist.  They did not exist last year when the *ex parte* Application was filed and they do not exist now.

Mr. Akhmetshin requests that the Court issue its Order requiring IMR to petition this Court prior to use of the discovery in this proceeding in any matter other than the currently pending Dutch Action.  If IMR can at some later date justify its use of this Akhmetshin discovery in some other litigation, then such use could be approved.  Certainly there is no reason to give IMR *carte blanche* now for litigations that do not yet exist and may in fact take on an unintended if not unseemly dimensions.  This Court can make that decision at the time such "contemplated" proceedings become "actual proceedings."

In addition to the issue with respect to limiting use of discovery in this § 1782 proceeding to the Dutch Action, counsel for Mr. Akhmetshin have met and conferred with respect to a stipulated confidentiality agreement and order, but failed to reach a meeting of the minds.   While Mr. Akhmetshin maintains that all of the discovery in this proceeding should be subject to the overriding limitation for "use in the Dutch Action," there are also issues with respect to certain "confidential" information.  Those issues can be fairly characterized as falling within three key categories: (1) the purposes for which confidential information may be used in

this miscellaneous proceeding or the Dutch Action; (2) the identity of qualified persons entitled

to receive "confidential" information entitled to protection under Rule 26(c) either here or in the

Dutch Action; and (3) treatment of confidential information at the conclusion of this proceeding

and the underlying Dutch Action between IMR and ECVK.  In meet and confer sessions between

counsel, Applicant IMR rejected limiting its use of confidential information to the underlying

proceedings or requiring that confidential information be returned or destroyed when such use

has passed.

   Mr. Akhmetshin first proposed to enter into a stipulated protective order on April

3, 2015.  Mr. Akhmetshin's proposal, among other things, would have (i) permitted Mr.

Akhmetshin to designate certain documents and information as confidential; (ii) required IMR to

challenge any designations it disagreed with;  (iii) restricted access to confidential information to

those who needed it for purposes of the Dutch Action; (iv) subjected recipients of confidential

information to this Court's authority; and (v) required IMR to return or destroy all confidential

information after conclusion of the Dutch Action.  (April 3, 2015 Email from Kim Sperduto to

Jonathan Cogan, *et al.*, attached as Ex. A).  IMR responded to Mr. Akhmetshin's proposal three

days later by submitting its own proposed protective order.  In contrast to Mr. Akhmetshin's

proposed order, IMR's proposed order: (i) required Mr. Akhmetshin to seek redress from the

Court if IMR disagreed with a confidential designation; (ii) granted access of confidential

information to "IMR (including officers, directors, and employees") and "any court, party, or

other person involved in any contemplated proceedings"; (iii) excused IMR from even trying to

file confidential information under seal with the Dutch court; (iv) omitted any return or destroy

provision; (v) and lacked provisions that would enable this Court to enforce its Order.  (April 6,

2015 Email from Rebecca Mangold to Kim Sperduto, *et al.*, attached as Ex. B).

On April 7, 2015, counsel agreed that certain portions of the deposition could be designated confidential with the understanding that either a stipulated agreement would be reached or a motion for protective order would be filed.  Subsequent meet and confer efforts failed to meaningfully narrow the areas of dispute.

On April 27, 2015, Mr. Akhmetshin's counsel submitted a revised proposed protective order to IMR counsel.  Mr. Akhmetshin's second proposal was consistent in material respects to his first proposal, but added an overarching restriction on use of discovery materials for any purpose beyond the Dutch Action, to address concerns raised during meet and confer about IMR's apparent position that it was entitled to use Mr. Akhmetshin's discovery for whatever purposes it chose.  (April 27, 2015 Email from Joshua Kauke to Jonathan Cogan, *et al.*, relevant portions attached as Ex. C).  During the parties' May 5, 2015 omnibus meet and confer, counsel further conferred regarding the proposed protective orders.  IMR counsel called the April 27 proposal "way overbroad," said IMR's proposal had been fair, and Mr. Akhmetshin was not entitled to "much else."  IMR contended that § 1782 discovery had been awarded in aid of the Dutch Action and its "contemplated" proceedings.

On May 6, IMR proposed adding new language to its proposed protective order which it claimed would address Mr. Akhmetshin's concern about use of discovery outside of the Dutch Action.  (May 6, 2015 Email from Fritz Scanlon to Joshua Kauke, *et al.*, attached as Ex. D).  IMR's new "notice" provision accomplished no such thing.  It left wide open the opportunity for IMR to use discovery materials for non-legal purposes without giving so much as notice to Mr. Akhmetshin.[1]  Mr. Akhmetshin's counsel responded on May 11, 2015, described

---

[1] IMR proposed in relevant part: "IMR agrees that, prior to notifying Mr. Akhmetshin, it will not use any material obtained from Mr. Akhmetshin pursuant to its Section 1782 Application in any action other than the Dutch Action and Contemplated Dutch Proceedings, as those terms are defined in IMR's Section 1782 Application.  If IMR does wish to use material in other actions obtained from Mr. Akhmetshin pursuant to its Section 1782 Application, IMR

Mr. Akhmetshin's concerns with the new language, and reiterated pre-existing objections regarding burdens of proof, destruction of materials following the Dutch Action, and the expansive scope of "qualified persons" permitted to receive confidential materials.  (May 11, 2015 Email from Kim Sperduto to Fritz Scanlon attached to email chain at Ex. E).  On May 13, 2015, IMR's counsel simply answered: "We believe that the language we provided was already more than you are entitled to get under the law.  If it is not agreeable to your client, then you should immediately seek a protective order from the court."  (May 13, 2015 Email from Fritz Scanlon to Kim Sperduto, *et al.*, attached at Ex. E).

Counsel for Mr. Akhmetshin certifies that they negotiated in good faith in numerous meet and confer sessions over a period of weeks with counsel for Applicant IMR but were unable to reach a consensus.  We have also conferred with counsel for Intervenor ECVK and the Intervenor consents to this motion.

## ARGUMENT

Good cause exists to constrain the scope to which IMR may use the documents and discovery obtained from Mr. Akhmetshin in this 28 U.S.C. § 1782 proceeding.

### POINT I

### GOOD CAUSE EXISTS TO LIMIT THE USE OF DISCOVERY FROM THIS PROCEEDING TO USE IN THE DUTCH ACTION.

The entire purpose of § 1782 is to provide discovery in the United States "in aid of a foreign litigation."  The words of the statute are unambiguous:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing *for use in a proceeding in a foreign or international tribunal,*

---

shall notify Mr. Akhmetshin, and Mr. Akhmetshin shall agree promptly to meet and confer in good faith regarding IMR's intent to use such material.  If, after good faith discussions, IMR and Mr. Akhmetshin are unable to agree that such use may be permitted, Mr. Akhmetshin shall be permitted to make a motion within 5 business days seeking an order preventing IMR from doing so."

including criminal investigations conducted before formal accusation.

28 U.S.C. § 1782 (emphasis added).  Indeed, this Court's authorization of this proceeding in its February 5, 2015 Order emphasized "the discovery is for use in a proceeding before a foreign or international tribunal" and the fact that "there is simply no dispute that the deposition requested is to be used in the appeal of the Dutch Action."  (Feb. 5 Order (Dkt. 22) at 1).  Yet counsel for IMR refused even this basic limitation in meet and confer sessions.

The majority of courts that have considered this fundamental issue have issued protective orders limiting the use of discovery to the foreign proceeding for which the § 1782 petition was originally granted.  For example, in *Application of Time, Inc.,* Misc. A 99-2916, 1999 WL 1059744 (E.D. La. Nov. 22, 1999) the parties disagreed on the scope of alternative purposes for which the discovery could be used.  The court limited the discovery's use to the underlying Indonesian proceeding (and in the § 1782 proceeding itself) that constituted the basis for the original petition.  "No information that is gained through the deposition, including its transcript, may be disclosed, used or disseminated in any way or for any purpose, other than such use as is necessary to prepare for and/or try any matter in the Indonesian proceeding or the captioned litigation in this Court."  *Id.* at *1.  Similarly, in *In re Application of Kegel,* 1:13-mc-006, 2014 WL 7156711 (D.N.D. Dec. 15, 2014) the applicant Kegel sought an order that the discovery was not limited to use in the foreign proceeding:

> Implicit in Kegel's request here is that § 1782(a) does not necessarily imply that the evidence obtained pursuant to an order issued pursuant to the section will only be used for the proceeding for which the evidence is sought.  In other words, once the evidence is obtained it can freely be used in any other foreign proceeding as permitted by the foreign courts.
>
> The court, however, is not so sure. . . .  While § 1782(a) is silent on the precise question of what use can be made of the evidence thereafter, the statute's use of the singular in terms of "use in a proceeding" is at least

6

some suggestion that any order issued by the federal court would be
limited to the specific proceeding or proceedings for which the evidence
is sought when the request for the § 1782(a) order is made.

*Id* at * 3.

While this limitation may seem to be nothing more than common sense, it takes on particular import in this proceeding.  First, Mr. Akhmetshin makes his living in large part through his consulting business.  Disclosure of the discovery materials in this case beyond the controlled forum of the Dutch Action will reveal client names and identities, sources, the means and methods of his research, and other investigative techniques that may jeopardize Mr. Akhmetshin's competitive standing.  Second, IMR is apparently a recidivist litigant, embroiled in litigations, arbitrations, and other disputes throughout Europe, Africa, and Eurasia.  As just one example, attached as Exhibit 17 to the Second Declaration of Patrick Salisbury (Dkt. 39-21) is a copy of a decision in *Eurasian Natural Resources Corporation Ltd. v. Sir Paul Judge,* (Case HQ13X03049) issued by the Queen's Bench (London) in which the Troika's ENRC is suing one of its former directors for leaking information about ENRC's investigation by London's Serious Fraud Office.  Just this month, on June 7 French newspaper LeMonde's Sunday magazine included a full feature article with colored photographs (translation attached as Ex. F) on the Troika's bribery and money laundering relating to high government officials in Paris. Investigations, litigations, and arbitrations involving the Troika, their entities, or agents abound worldwide.  Mr. Akhmetshin's confidential materials should not be subjected to such exposure. Accordingly, Mr. Akhmetshin respectfully requests that this Court issue its Protective Order restricting use of any discovery materials in this case to use in the Dutch Appeal.  If IMR wants to use any materials in a "contemplated Dutch proceeding" (and none has been initiated now for

over a year) it can apply to this Court for such relief when such contemplated proceedings

become a reality.

## POINT II

### GOOD CAUSE EXISTS TO FURTHER RESTRICT
### USE OF AND ACCESS TO CONFIDENTIAL MATERIALS.

Some of the materials in Mr. Akhmetshin's possession contain information of a

proprietary and confidential nature.  These materials include client names, client lists, pricing

data, sources, means and methods of research, politically sensitive information, and related

information that is valuable to Mr. Akhmetshin.  Protecting those materials from public

dissemination is also important to Mr. Akhmetshin.   This Court should issue its Protective Order

limiting the number and identity of individuals both in this miscellaneous proceeding and the

Dutch Appeal that can have access to such information and governing terms of access, use, and

destruction once the Dutch Appeal is concluded.

Pursuant to Rule 26(c)(1)(H), the court may issue an order "requiring trade

secret or other confidential research, development or commercial information not be revealed or

be revealed only in a specified manner."  Good cause exists to limit disclosure of Mr.

Akhmetshin's confidential information and establish reasonable procedures that ensure that those

confidences are maintained.  *See Alexander v. FBI*, 186 F.R.D. 54, 58 (D.D.C.1998) ("Ample

precedent exists for limiting disclosure of highly sensitive, confidential or proprietary

information to attorneys and experts, particularly where there is some risk that a party might use

the information or disseminate it to others who might employ it to gain a competitive advantage

over the producing party.").  Such procedures should include: (i) limiting access to confidential

information; (ii) prescribing the manner in which confidential information is used; (iii) requiring

destruction of the discovery materials at the conclusion of the Dutch Action and this

miscellaneous proceeding, and (iv) subjecting recipients to the jurisdiction of this Court.  (*See, e.g.,* proposed Protective Order ¶¶ 9, 11, 17).

IMR has demanded -- and in its Motion To Compel continues to demand -- information relating to Mr. Akhmetshin's work as a consulting expert both to Salisbury & Ryan and unrelated third parties.   (Second Declaration of Rinat Akhmetshin dated June 14, 2015 (Dkt. 38-1) ¶ 20).  Dissemination of Mr. Akhmetshin's confidential information "would be an economic (and political) disadvantage to [him], if people associated with [his] economic competitors, or people associated with the regime of Mr. Nazarbayev, were to obtain [his] confidential information and materials."  (*Id.*)

Mr. Akhmetshin's financial interest in preserving confidentiality of sensitive business information presents good cause to restrict access to his confidential materials.  An expert's sources, client lists, and research methods all merit special protection given the threat of financial (or other) harm posed by improper disclosure.  *See, e.g., In re Domestic Drywall Antitrust Litig.,* 300 F.R.D. 234, 249 (E.D. Pa. 2014) (requiring disclosures to be narrowly tailored and preserve the confidentiality of the non-party's sources where the non-party had a "financial interest" that relied "heavily on preserving the confidentiality of its sources"); *Sithon Mar. Co. v. Holiday Mansion, No.*, CIV.A. 96-2262-EEO, 1998 WL 231132, *2-3 (D. Kan. May 8, 1998) (production of client list required only subject to protective order).  Given the Troika's history of (lack of) document control and the Troika's demonstrated enmity to Mr. Akhmetshin, the threat of financial (or other) harm raised by production of Mr. Akhmetshin's confidential information is particularly acute here.

For these reasons, good cause exists to issue the proposed protective order, which provides heightened protection for sensitive business confidential information.  Limiting access

to confidential material, prescribing the manner in which confidential information is used,

subjecting recipients of confidential information to the jurisdiction of this Court, and requiring

the return or destruction of documents are all reasonable means to protect confidential

information.

### Conclusion

For the foregoing reasons, the Court should grant Mr. Akhmetshin's Motion For

A Protective Order.  A proposed Protective Order is submitted concurrently with this motion.


Dated:          Washington, D.C.
                June 26, 2015

                                            Respectfully submitted,


                                             /s/ Kim Hoyt Sperduto
                                            Kim Hoyt Sperduto
                                            D.C. Bar No. 416127

                                            Joshua S. Kauke
                                            D.C. Bar No. 999296

                                            SPERDUTO THOMPSON PLC
                                            1133 Twentieth Street, N.W.
                                            Second Floor
                                            Washington, D.C.  20036
                                            202.408.8900
                                            202.408.8910 (f)

                                            ksperduto@sperdutothompson.com

                                            Counsel for Rinat Akhmetshin