**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE:<br><br>APPLICATION OF INTERNATIONAL MINERAL RESOURCES B.V. FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782<br><br>Applicant. | Case No. 1:14-MC-00340 (GK) |

**OPPOSITION TO RINAT AKHMETSHIN'S MOTION FOR A PROTECTIVE ORDER**

International Mineral Resources B.V. ("IMR") respectfully submits this opposition to Rinat Akhmetshin's motion for a protective order (Dkt. 44).

**PRELIMINARY STATEMENT**

It is not surprising that someone who admits to "trolling" gray market information exchanges, bartering for material of "unknown origin or substance," and boasting that he organized the hacking of a corporation's computer systems would want to keep that information from being exposed. Unfortunately for Mr. Akhmetshin, the law does not allow him to do so through a protective order. For the reasons set forth below, his motion seeking such relief should accordingly be denied.

*First*, courts do not, as Mr. Akhmetshin incorrectly argues, limit the use of material obtained through a Section 1782 application to only those specific foreign proceedings discussed in the application. To the contrary, courts allow litigants to use such material in other actions, particularly where, as here, the material obtained demonstrates wrongdoing.

*Second*, Mr. Akhmetshin has failed to show good cause for imposition of a protective order in this case. Under Federal Rule of Civil Procedure 26, a party may obtain a protective

order limiting the use of discovery materials only where he demonstrates "good cause" through a particular and specific factual demonstration that disclosure will result in a clearly defined and very serious injury to his business. Mr. Akhmetshin's vague and conclusory claims that disclosure of material obtained in these proceedings "would be an economic (and political) disadvantage to him" fall far short of this burden.

*Third*, Mr. Akhmetshin has waived any claims for confidential treatment that he may have otherwise asserted over material disclosed in this Section 1782 proceeding. Mr. Akhmetshin produced the vast majority of his documents before ever making a claim of confidentiality; indeed, most of the information over which he now seeks a protective order is a matter of public record as result of other filings that have been made in these proceedings. Mr. Akhmetshin cannot retroactively shield that information through a belated motion for a protective order.

*Fourth*, and finally, if the Court were to enter a protective order in this case – and it should not – the Court should enter the order proposed by IMR. The proposed protective order submitted by Mr. Akhmetshin is grossly overbroad, unduly interferes with IMR's ability to use information gathered in this proceeding, and seeks to shift the burden of demonstrating confidentiality from Mr. Akhmetshin, where it belongs, to IMR to demonstrate a lack of confidentiality. IMR's protective order, on the other hand, protects Mr. Akhmetshin's interests in confidentiality – if any – while allowing IMR to properly litigate this and other proceedings in which Mr. Akhmetshin's materials are relevant.

**ARGUMENT**

A. **Courts Allow Parties to Use Material Gathered in a Section 1782 Proceeding in Actions Other than the Specific Foreign Proceedings Discussed in the Application Particularly Where, as Here, the Material Demonstrates Unlawful Conduct.**

Mr. Akhmetshin is simply wrong in arguing that courts generally issue protective orders limiting the use of discovery to the specific foreign proceedings discussed in the Section 1782 Application. (*See* Dkt. 44-1 at 5-8.) To the contrary, where, as here, material obtained through a Section 1782 action demonstrates or corroborates wrongdoing, courts have allowed the material to be used in a multitude of other proceedings, including additional Section 1782 proceedings and civil complaints against the Section 1782 target.

Indeed, in perhaps the most widely known use of the Section 1782 process, Chevron Corporation and two of its attorneys filed several Section 1782 applications to obtain information for use in a civil case pending against Chevron in Ecuador, a criminal case pending against its two attorneys in that country, and a related international arbitration. *See In re Chevron*, 749 F. Supp. 2d 141, 143-46 & n.8 (S.D.N.Y. 2010). The controversy abroad centered around a claim by a group of Ecuadorian plaintiffs that Chevron was responsible for billions of dollars of environmental pollution in their country. *See id.* at 143. To defend themselves, Chevron and its attorneys filed a series of Section 1782 applications aimed at gathering evidence showing that both the civil litigation and the criminal prosecution in Ecuador had been tainted by fraud and other misconduct by the Ecuadorian plaintiffs and their U.S. lawyer, Steven Donziger, "the field general of the … plaintiffs' efforts in Ecuador." *See id.* at 143-44. With few exceptions, the U.S. courts granted these applications. *Id.* at 146 & n.8, 167-68.

Significantly, the courts did *not* limit the use of material obtained through those Section 1782 applications to only the foreign proceedings; rather, the courts allowed Chevron and its

attorneys to use the information they obtained to pursue additional Section 1782 applications and, in fact, ultimately permitted them to use the information in a civil suit filed against Mr. Donziger and others in U.S. District Court for the Southern District of New York. *See id.* at 145-70 (explaining that evidence gathered in prior Section 1782 proceedings justified granting of Section 1782 application against Mr. Donziger); Ex. A, Compl. in *Chevron v. Donziger* ¶¶ 108, 149, 176, 210, 249-302 (citing evidence gathered in the various Section 1782 proceedings).

Notably, a target of one of Chevron's Section 1782 applications specifically argued in an appeal to the U.S. Court of Appeals for the Second Circuit that the district court erred "by failing to limit the Chevron Parties' use of the [discovery materials] to the Proceedings" discussed in the Section 1782 application. Br. of Resps.-Appellants, *Chevron Corp. v. Berlinger*, 2010 WL 2600667, at *37-*38 (2d Cir. June 14, 2010). The Second Circuit rejected this argument, affirming in full the district court and holding that the material produced may be used "for litigation, arbitration, or submission to official bodies, either local or international." *Chevron Corp. v. Berlinger*, 629 F.3d 297, 311 (2d Cir. 2011); *see also Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 439 (S.D.N.Y. 2011) (concluding that it is immaterial that the Section 1782 discovery materials requested may "be used for other purposes – including litigation against the respondents" so long as the materials "are relevant to the foreign proceedings and 'for use' in the foreign proceedings").

This Court should do the same. As discussed at length in IMR's motion to compel and reply in support thereof, evidence gathered pursuant to this Section 1782 proceeding has demonstrated (and corroborated evidence previously gathered by IMR) that Mr. Akhmetshin was hired by Salisbury & Ryan LLP on behalf of ECVK to hack into IMR's computer systems, steal IMR's confidential information, and disseminate it to third parties – all in an effort to gain an

unfair advantage in the Dutch Action. (*See* Dkts. 26-3, 43.) IMR's primary purpose in pursuing this action is and always has been to obtain evidence for use in the ongoing Dutch Action. However, IMR also intends to use information gathered in this action to pursue further Section 1782 applications aimed at gathering more evidence of such wrongdoing for use in the Dutch Action.[1] In addition, IMR may institute other proceedings based on Mr. Akhmetshin's, Salisbury & Ryan's and/or ECVK's apparent unlawful conduct. For examplefrom the outset of these proceedings, IMR has made clear that it sought evidence not only in aid of the ongoing Dutch proceedings but also in aid of contemplated future proceedings. (*See* Dkt. 1 at 12 ("[T]he documents and deposition testimony requested are 'for use' in the Dutch Action and the Contemplated Dutch Proceedings."); *id.* at 10 (describing the Contemplated Dutch Proceedings).) The Court should not restrict IMR from using the information gathered in this proceeding to fully investigate and prosecute such applications and claims.[2]

---

[1] Specifically, IMR intends to file additional Section 1782 applications to gather additional evidence of wrongdoing for use in the Dutch Action and Contemplated Dutch Proceedings. (*See* Dkt. 1 at 10, 12, 13, 16, 17.) IMR intends to use certain information gathered in this 1782 proceeding to support those applications. Although IMR does not believe Mr. Akhmetshin is entitled to a protective order nor does it believe any of Mr. Akhmetshin's materials are entitled to confidentiality, it will nevertheless limit its use of materials gathered in this 1782 proceeding to materials that are already on the public docket pending resolution by this Court of the instant motion for a protective order.

[2] The cases cited by Mr. Akhmetshin are not to the contrary. (*See* Dkt. 44-1 at 6-7.) The decision in *Application of Time, Inc.*, 1999 WL 1059744 (E.D. La. Nov. 22, 1999) contains no reasoning at all on the issue, and it is unclear from the opinion whether the restriction on use of the Section 1782 material was imposed by the court or was a jointly agreed upon aspect of the parties' proposed protective orders. The language Mr. Akhmetshin cites from *In re Kegel*, 2014 WL 7156711 (D.N.D. Dec. 15, 2014) is dicta; the court eventually based its entry of a protective order on its discretion to place conditions on an order granting a Section 1782 application – discretion that should not be exercised here for the reasons set forth above and below. In any event, neither decision has been cited by any other court and certainly is not binding on this Court.

### B. Mr. Akhmetshin Has Failed to Make An Adequate Showing that Good Cause Exists for Entry of a Protective Order.

Under Rule 26, the party seeking a protective order "bears the burden of proving its necessity." *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987). To meet this "good cause" burden, the "movant must articulate a real and specific harm … and not just stereotyped and conclusory statements." *PHE, Inc. v. Dep't of Justice*, 139 F.R.D. 249, 252 (D.D.C. 1991) (quotations and citation omitted). Where, as here, a party seeks a protective order to protect supposedly "confidential business information, this standard demands that the [movant] ***prove that the disclosure will result in a clearly defined and very serious injury to [his] business***." *Id.* (quoting *John Does I–VI v. Yogi*, 110 F.R.D. 629, 632 (D.D.C. 1986) (emphasis added)). "Broad allegations of harm, unsubstantiated by specific examples … will not suffice." *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).

Mr. Akhmetshin has utterly failed to meet this burden. Mr. Akhmetshin has instead offered the "stereotyped and conclusory" speculation that (i) "disclosure of the discovery materials in this case beyond the controlled forum of the Dutch Action … may jeopardize Mr. Akhmetshin's competitive standing" and (ii) "[d]issemination of Mr. Akhmetshin's confidential information 'would be an economic (and political) disadvantage to [him]'." (Dkt. 44-1 at 7, 9.) Indeed, Mr. Akhmetshin has not even submitted an affidavit in support of his motion. He simply relies on the assertions of counsel and a prior affidavit he submitted in these proceedings where he stated, without any further explanation whatsoever, that "[i]t would be an economic (and political) disadvantage to me if people associated with my economic competitors, or people associated with the regime of Mr. Nazarbayev, were to obtain my confidential information and materials." (Dkt. 44-1 at 9 (citing Dkt. 38-1 ¶ 20).) These broad allegations of harm, unsubstantiated by specific examples, are exactly the type of stereotyped and conclusory

statements that courts have deemed insufficient to warrant entry of a protective order. *See, e.g.*, *PHE, Inc.*, 139 F.R.D. at 252; *Glenmede Trust Co.*, 56 F.3d at 483.

Mr. Akhmetshin has further failed to explain how the information he seeks to shield behind a protective order constitutes a trade secret or the type of "confidential research, development or commercial information" contemplated by Federal Rule 26(c)(1)(G). This failure is not surprising. Mr. Akhmetshin's own description of his work shows that it is no such thing. According to his own testimony, his work consisted instead of gray-market information peddling where he "troll[ed]" informal information exchanges on behalf of ECVK and bartered information in his possession to journalists in exchange for factual information "of an unknown origin or substance." (*See* Dkt. 38 at 6; Dkt. 38-1 ¶¶ 14-17; Dkt. 39 at 9-10.)

Moreover, Mr. Akhmetshin's claims that the protective order is necessary because the material he has produced includes confidential "client names, client lists, pricing data, sources, means and methods of research, [and] politically sensitive information" is simply false. (*See* Dkt. 44-1 at 8) As will be explained further below, any client names, sources, and means and methods of research contained in the material produced in this action have already been publicly disclosed and have therefore lost any confidentiality that could conceivably have previously existed. *See infra* at 9. With regard to client lists, pricing data, and politically sensitive information, the claim is illusory. Mr. Akhmetshin has not produced any such material, nor has Mr. Akhmetshin testified about these things.

### C. Mr. Akhmetshin Has Waived Any Right to a Protective Order With Respect to the Vast Majority of Discovery He Has Provided.

It is well-established that, "[o]nce a party voluntarily discloses documents without limitations, it is precluded from objecting on the grounds of confidential commercial research to full and complete disclosure of similar documents." *PHE, Inc.*, 139 F.R.D. at 252. To this day,

7

Mr. Akhmetshin has not asserted confidentiality over the vast majority of documents he has produced in this case. Moreover, Mr. Akhmetshin sat idly by for months without moving for a protective order. During that time, the vast majority of the material he now seeks to shield behind a protective order has entered the public domain, frequently by Mr. Akhmetshin's own hand. Mr. Akhmetshin has accordingly waived any right to assert claims for confidential treatment of material disclosed in this proceeding. The chronology of events set forth below is fatal to Mr. Akhmetshin's motion:

On March 27, 2015, Mr. Akhmetshin produced his first and largest tranche of documents disclosed in these proceedings (957 of 991 total pages). (*See* Dkt. 25-1 at 7; Dkt. 31 at 14.) At that time, Mr. Akhmetshin had not before sought issuance of a protective order nor had he asserted confidentiality over any material produced or disclosed in this proceeding. Mr. Akhmetshin did not request that the parties enter into a confidentiality agreement until a week later, April 3, 2015 – just four days before his deposition – when he sent to IMR's counsel a draft of a protective order. (*See* Dkt. 44-1 at 3.) Even then, Mr. Akhmetshin did not suggest that he sought a protective order to protect the confidentiality of the documents he had previously produced. (*See* Dkt. 44-2 Ex. A at 1 ("[T]his Protective Order covers information that Mr. Akhmetshin designates 'Confidential' … in deposition transcripts, deposition exhibits, or documents produced *after April 1, 2015*.") (emphasis added).)

IMR declined to accept Mr. Akhmetshin's proposal but, in an attempt to avoid Court intervention, provided Mr. Akhmetshin with its own proposed protective order that it believed was reasonable three days later. (*See* Ex. B.) Mr. Akhmetshin declined the counter-proposal and the parties subsequently agreed to provisionally maintain confidentiality over portions of the deposition transcript that Mr. Akhmetshin's counsel designated confidential. (*See* Ex. C, Tr. at

9-12.) The agreement was contingent upon Mr. Akhmetshin "mov[ing] promptly for a protective order to the extent that [the parties] are not able to agree." (*Id.* at 11.) At no time at the deposition or the following two and a half months did Mr. Akhmetshin assert that the documents produced in this action are confidential, nor did he move for a protective order.

During the time between Mr. Akhmetshin's deposition and his belated motion for protective order filed on June 26, 2015, much of the material Mr. Akhmetshin now seeks to shield behind a protective order was released into the public domain, often by Mr. Akhmetshin himself. For example:

- Mr. Akhmetshin and ECVK have described in detail Mr. Akhmetshin's "means and methods of research" in public filings in this action, (*see, e.g.*, Dkt. 38 at 6-8, 15-23; Dkt. 38-1 ¶¶ 14-20; Dkt. 39 at 5-13, 16-17; Dkt. 39-4 ¶¶ 48-80);

- Mr. Akhmetshin has disclosed his sources in filings he posted on the public docket in this action, and those sources are also listed on his privilege log and other documents that have been filed on the public docket in this case, (*see* Dkt. 38 at 17; Dkt. 38-1 ¶¶ 17; Dkt. 27-1 at 10-11 & n.2, 25-28; Dkt. 27-2); and

- The only four clients Mr. Akhmetshin has revealed in this litigation – ECVK, Salisbury & Ryan, Akezhan Kazhegeldin, and Baruch Halpert – have all been identified by Mr. Akhmetshin or others in public filings in this action, (*see* Dkt. 38 at 3; Dkt. 38-1 ¶¶ 2, 18; Dkt. 27-9 at 190).

Mr. Akhmetshin's attempt to retroactively assert confidentiality over information that has been voluntarily produced (without any claims of confidentiality) and long since placed in the public domain in this very action should be denied. A decision to the contrary would produce the absurd result that IMR – the victim of the misconduct that lies at the heart of these proceedings – would be the only party in the world that was restricted from using these publicly available documents as it saw fit.

### D. If the Court Were to Enter a Confidentiality Order in this Action, it Should Enter the Protective Order Proposed by IMR in April.

In the event the Court were inclined to enter any protective order in this case, it should enter the protective order proposed by IMR in April 2015 (attached hereto as Exhibit B), not Mr. Akhmetshin's grossly overbroad proposal submitted along with his motion for protective order, (*see* Dkt. 44-3). Indeed, there are numerous, glaring problems with Mr. Akhmetshin's proposed protective order, which IMR's proposed version corrects. Among other things:

First, under Mr. Akhmetshin's proposed protective order, all material disclosed in this action – even information that has been placed (and remains without objection to this day) on the public docket – could not be used in any proceeding other than the present action and the Dutch Action. (*See id.* ¶ 2). For the reasons discussed above, such a limitation is contrary to law and common sense and should not be part of any protective order entered by this Court. IMR's proposed protective order includes no such limitation. (*See* Ex. B.)

Second, under Mr. Akhmteshin's proposed protective order, all material disclosed in this action would need to be destroyed or returned at the conclusion of the Dutch Action. (*See* Dkt. 44-3 ¶ 15.) Because materials produced in this action may and likely will be used in other, related legal actions – as is consistent with the law set forth in Section A above – this limitation should not be part of any protective order entered by the Court. IMR's proposed protective order accordingly does not include any such requirement. (*See* Ex. B.)

Third, under Mr. Akhmetshin's proposed protective order, once Mr. Akhmetshin designated material as "Attorneys' Eyes Only," counsel for IMR would be prohibited from disclosing the material even to its own client. (*See* Dkt. 44-3 ¶ 9.) In this District, "courts must be chary of issuing protective orders that restrict the ability of counsel and client to consult with one another during trial or during the preparation therefor." *Klayman v. Judicial Watch, Inc.*,

247 F.R.D. 19, 24 (D.D.C. 2007) (denying request for attorney's-eyes-only protective order and quoting *Doe v. District of Columbia*, 697 F.2d 1115, 1119 (D.C. Cir. 1983)). A court should only impose such a restriction after it determines, among other things, that (i) "the harm posed by disclosure to the client must be substantial and serious" and (ii) "there [is] no alternative means of protecting the public interest which intrudes less directly on the attorney-client relationship." *Id.* at 24 n.2. Mr. Akhmetshin has not even attempted to meet this burden. Mr. Akhmetshin should accordingly be denied the ability to designate any material attorneys' eyes only. IMR's proposed protective order, unlike Mr. Akhmetshin's, does not include any such requirement. (*See* Ex. B.)

Fourth, under Mr. Akhmetshin's proposed protective order, if IMR disagreed with any of Mr. Akhmetshin's "Confidential" or "Attorneys' Eyes only" designations, it would need to, among other things, meet and confer and file a motion to abrogate the designation. (*See* Dkt. 44-3 ¶ 7.) Such a requirement would turn the burden of proof on its head, as it is well-established that a party seeking to shield information behind a protective order "bears the burden of proving its necessity." *Avirgan*, 118 F.R.D. at 254. IMR's proposed protective order would correctly put the onus on Mr. Akhmetshin, not IMR, to move the Court for an order determining whether a designation of confidentiality was properly made. (*See* Ex. B ¶ 4.)

Fifth, under Mr. Akhmetshin's proposed protective order, IMR would be prohibited from using information gathered in this proceeding in the Dutch Action if the Dutch court declines a request for confidential treatment of material designated "Confidential" or "Attorneys' Eyes Only." (See Dkt. 44-3 ¶ 11.) Such a requirement would impose an unfair and unwarranted restraint on IMR's potential use of material gathered in this proceeding, and it would infringe

upon the Dutch court's right to determine what should and should not be treated as confidential. IMR's proposed protective order does not include any such requirement. (*See* Ex. B ¶ 11.)

## CONCLUSION

Based on the foregoing, IMR respectfully requests that the Court deny Mr. Akhmetshin's motion for protective order and decline to enter any protective order in this case. If, however, the Court were to decide to enter a protective order, IMR respectfully requests that it enter the protective order proposed by IMR and attached hereto as Exhibit B.

Dated: Washington, D.C.
July 13, 2015

Respectfully submitted,

/s/ Sangyoon Nathan Park
S. Nathan Park (D.C. Bar No. 1000365)
KOBRE & KIM LLP
1919 M Street NW
Washington, D.C. 20036
Tel: +1 202 664 1900
Fax: +1 202 664 1920
nathan.park@kobrekim.com

Jonathan D. Cogan (admitted *pro hac vice*)
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Fax: +1 212 488 1220
jonathan.cogan@kobrekim.com
*Attorneys for Applicant International Mineral Resources B.V.*