UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: : | |
| : | |
| APPLICATION OF INTERNATIONAL : | |
| MINERAL RESOURCES B.V. FOR AN : | |
| ORDER TO TAKE DISCOVERY : | |
| PURSUANT TO 28 U.S.C. § 1782, : | |
| : | |
| Applicant. : | Civil Action No. 14-mc-340(GK) |
| : | |

## MEMORANDUM OPINION

Applicant International Mineral Resources B.V. ("IMR" or "Applicant") has asked this Court to compel Rinat Akhmetshin ("Mr. Akhmetshin" or "Respondent") to produce certain documents and sit for an additional day of deposition. In the alternative, IMR asks the Court to review the requested documents in camera to determine whether they should be disclosed. Mr. Akhmetshin and Intervenor Eurochem Volga-Kaliy LLC ("ECVK" or "Intervenor") oppose IMR's requests. Upon consideration of the Motion [Dkt. No. 27], Oppositions [Dkt. Nos. 38, 39], Reply [Dkt. No. 43], and the entire record herein, and for the reasons stated below, IMR's Motion shall be **granted in part and denied in part.**

## I.    BACKGROUND

On April 3, 2014, IMR filed an Application for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782 ("Application") [Dkt. No. 1] authorizing it to depose and request documents from Rinat

Akhmetshin, a resident of the District of Columbia. IMR intended to use any evidence obtained from Mr. Akhmetshin in ongoing court proceedings in the Netherlands (the "Dutch Action"). Id.

On June 27, 2014, IMR provided the Court with a Notice [Dkt. No. 16] that it had prevailed in the Dutch Action before the relevant court of first instance (or trial court). IMR maintained, however, that its Application was not moot because, among other reasons, Dutch courts allow the introduction of new evidence on appeal. Id.

On September 23, 2014, this Court issued a Memorandum Order [Dkt. No. 17] denying IMR's Application without prejudice. The Court concluded that the Application was premature because it was not known whether either party would take advantage of the opportunity to submit additional evidence on appeal in the Dutch court system ("Dutch Appeal"). Id.

On October 30, 2014, IMR submitted its Motion to Renew its Application for 28 U.S.C. § 1782 Discovery [Dkt. No. 18], noting, inter alia, that it hoped to use evidence discovered from Mr. Akhmetshin in the Dutch Appeal.

On February 5, 2015, the Court granted IMR's Renewed Application for an Order under 28 U.S.C. § 1782 Permitting International Mineral Resources B.V. to Issue a Subpoena for the Taking of a Deposition and the Production of Documents from Rinat Akhmetshin [Dkt. No. 22].

On April 7, 2015, at IMR's deposition of Mr. Akhmetshin, following the advice of counsel, he declined to answer a number of questions on grounds of privilege. Mr. Akhmetshin has also declined to produce a number of requested documents (primarily on grounds of privilege, although he also contends that some requested documents are not relevant to this proceeding).

On May 18, 2015, IMR filed its Motion to Compel Production of Documents and Additional Day of Deposition.

On May 28, 2015, ECVK, a party to the Dutch Action and Dutch Appeal, filed a Motion to Intervene [Dkt. No. 30] for the limited purpose of responding to applicant IMR's pending Motion to Compel. On June 10, 2015, the Parties indicated that IMR had consented to ECVK's Motion to Intervene, and on June 12, 2015, the Court granted the Motion to Intervene [Dkt. No. 37].

On June 5, 2015, IMR submitted a Status Report stating that its submission in the Dutch Appeal was due on June 23, 2015,[1] and requesting a Status Conference.

On June 11, 2015, the Court held a Status Conference.

On June 18, 2015, Respondent and Intervenor filed their Oppositions to Applicants's Motion to Compel, and on June 25, 2015, Applicant filed its Reply.

---

[1] The briefing schedule proposed by the Parties set the due date for Applicant's Reply on June 25, 2015. However, none of the Parties has indicated whether anything has been decided in the Dutch Appeal or that this Motion has become moot.

## II.  **ANALYSIS**

IMR seeks an order compelling Mr. Akhmetshin to produce 261 documents that he has withheld on grounds of privilege and relevance and to sit for an additional day of deposition in order to respond to questions he refused to answer in his initial deposition on April 7, 2015. Mr. Akhmetshin relies on the non-testifying expert witness privilege codified at Fed. R. Civ. P. 26(b)(4)(D), attorney-client privilege, and the scope of IMR's initial Application [Dkt. No. 1] to shield all but two of the 263 requested documents listed on his privilege log.[2] See Revised Privilege Log, Applicant's Ex. A [Dkt. No. 27-2].

Intervenor ECVK also opposes IMR's Motion to Compel. It notes, however, that "34 [of the 261 documents] are not subject to any privileges that belong to [it]" and thus "defers to Mr. Akhmetshin about whether to produce those documents[.]" Intervenor's Opp'n at 2.

### A.  **Non-testifying Expert Witness Privilege**

Federal Rule of Civil Procedure 26(b)(4)(D) applies to an "expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial" ("non-testifying experts"). Fed. R. Civ. P. 26(b)(4)(D). "Experts in

---

[2] Mr. Akhmetshin has produced Revised Privilege Log entries 226 and 227, having determined that they were not privileged.

this category are treated very differently from those who are

expected to be called at trial." Charles Alan Wright & Arthur R.

Miller, § 2032 Expert Witnesses—Discovery as to Specially-Retained

Experts Who Will Not Be Called, 8A Fed. Prac. & Proc. Civ. § 2032

(3d ed.). The Rule provides that:

> Ordinarily, a party may not, by interrogatories or
> deposition, discover facts known or opinions held by [a
> non-testifying expert]. [A] party may do so only: (i) as
> provided in Rule 35(b)[3]; or (ii) on showing exceptional
> circumstances under which it is impracticable for the
> party to obtain facts or opinions on the same subject by
> other means.

Fed. R. Civ. P. 26(b)(4)(D).

In order to preclude an otherwise valid discovery request,

"the proponent must establish the claimed privilege with

'reasonable certainty.'" In re Veiga, 746 F.Supp. 2d 27, 33 (D.D.C.

2010) (quoting In re Subpoena Duces Tecum Issued to Commodity

Futures Trading Comm'n, 439 F.3d 740, 750-51 (D.C. Cir. 2006).

Respondent contends that he has established with reasonable

certainty that he is a non-testifying expert covered by Rule

26(b)(4)(D), and therefore, that the documents and testimony

Applicant seeks are privileged.

IMR does not rely on either of the exceptions contained in

Rule 26(b)(4)(D) -- physical or mental examinations and

---

[3] Rule 35 deals with physical and mental examinations where a
party's "mental or physical condition . . . is in controversy[,]"
Fed. R. Civ. P. 35(a)(1), and therefore, is not relevant.

"exceptional circumstances" -- to contest Mr. Akhmetshin's assertion of privilege. Instead, IMR contends that Mr. Akhmetshin's privilege log lacks the detail necessary to demonstrate that any of the documents he has withheld actually relate to his work as a non-testifying expert witness. See Revised Privilege Log, Applicant's Ex. A.

Upon the record before it, the Court has little trouble concluding that Mr. Akhmetshin served as a non-testifying expert for ECVK in connection with the Dutch Action. See e.g., Decl. of Patrick Salisbury at ¶¶ 48-68 [Dkt. No. 39-4]. The Court need not conclude whether Mr. Akhmetshin has put forth sufficient grounds to withhold each and every document under Rule 26(b)(4)(D) because, as explained below, the crime-fraud exception to the non-testifying expert privilege necessitates in camera review of all documents withheld under Rule 26(b)(4)(D).

**B.   Crime-Fraud Exception**

IMR contends that even if some of Mr. Akhmetshin's documents would ordinarily be protected by Rule 26(b)(4)(D), the crime-fraud exception to assertions of privilege requires disclosure in this case.

In order to overcome an otherwise valid privilege with the crime-fraud exception, the party seeking discovery must put forth "more . . . than mere allegations of wrongdoing." Tri-State Hospital Supply Corp. v. United States, 238 F.R.D. 102, 104 (D.D.C.

2006). "To drive the privilege away, there must be something to give col[or] to the charge; there must be prima facie evidence that it has some foundation in fact." Id. (internal quotation marks and citations omitted). "This burden does not have to be established entirely with independent evidence—the documents themselves are commonly the best evidence available." Id. (citing United States v. Zolin, 491 U.S. 554, 567 (1989)).

A party "satisfies its burden of proof if it offers evidence that if believed by the trier of fact would establish the elements of an ongoing or imminent crime or fraud." In re Sealed Case, 754 F.2d 395, 399 (D.C. Cir. 1985).

The standard for allowing in camera review is less demanding: "Before engaging in in camera review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." Zolin, 491 U.S. at 572 (internal citations and quotation marks omitted).

### 1.    Applicability of Crime-Fraud Exception

As a threshold matter, Respondent contends that the crime-fraud exception simply does not apply to the non-testifying expert witness privilege. He contends that "[n]o court has ever held, as IMR asks this Court to do, that the crime-fraud exception

invalidates Rule 26(b)(4)(D) immunity." Resp't's Opp'n at 8-9. Respondent is simply incorrect.

Two cases that grew out of a dispute involving a $27.4 billion damages award entered against Chevron by an Ecuadorian court both note the existence of a crime-fraud exception to the non-testifying expert witness privilege. In re Chevron Corp., 749 F. Supp. 2d 141, 168 (S.D.N.Y. 2010) aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp., 409 F. App'x 393 (2d Cir. 2010) ("The crime-fraud exception may vitiate any otherwise applicable protection, as at least one other court has held in another Section 1782 proceeding brought by Chevron to obtain discovery from an expert."); Chevron v. E-Tech Int'l, 2010 WL 3584520 at *6 (S.D. Cal. Sept. 10, 2010) ("[T]he Court is persuaded by the reasons explained by Magistrate Judge McCurine as well as other U.S. courts who have addressed the issue, that the crime-fraud exception applies.").

These cases are among "the many . . . percolating in the federal courts arising from efforts by . . . Chevron Corporation and two of its attorneys . . . to obtain discovery in the United States pursuant to 28 U.S.C. § 1782 in aid of defending themselves against civil litigation . . . and/or criminal prosecution in Ecuador." Lago Agrio Plaintiffs v. Chevron Corp., 409 F. App'x 393, 394 (2d Cir. 2010). In both matters, Chevron Corporation sought the documents of the Ecuadorian Plaintiffs' U.S. consultants because Chevron had come to believe that an Ecuadorian

neutral expert witness's report -- which established the massive damages award -- had been "copied wholesale from" the U.S. consultants. Chevron v. E-Tech, 2010 WL 3584520 at *1 (S.D. Cal. Sept. 10, 2010). The U.S. District Court for the Southern District of California held that the "crime-fraud exception [to the claimed privileges] applie[d]" because "[t]here [wa]s ample evidence in the record that the Ecuadorian Plaintiffs secretly provided information to Mr. Cabrera, who was supposedly a neutral court-appointed expert, and colluded with Mr. Cabrera to make it look like the opinions were his own." Id. at 9.

In reply, Mr. Akhmetshin relies on yet another case arising from the Ecuadorian Chevron matter for the proposition that "only 'exceptional circumstances' could justify piercing the consulting expert privilege here." Resp't's Opp'n at 9 (citing Chevron Corp. v. Camp, 2010 WL 3418394, at *6 (W.D.N.C. Aug. 30, 2010)). However, that case held only that the non-testifying expert privilege had been waived and says nothing about whether the crime-fraud exception would apply. Camp, 2010 WL 3418394, at *6.

More recently, the U.S. District Court for the Southern District of New York has ordered discovery of certain "media strategy [documents]" and "the conclusions reached by retained consultants and experts[,]" finding that they were "within the crime-fraud exception and should be disclosed[.]" U.S. v. Ceglia, 2015 WL 1499194, at *7-*8 (S.D.N.Y. Mar. 30 2015). Indeed, as

Applicant points out, failure to apply the crime-fraud exception
to non-testifying expert witnesses would be inconsistent with the
rationale behind the crime-fraud exception itself, which is that
a privilege must yield when it is used for corrupt purposes. See
In re Sealed Case, 676 F.2d 793, 807-08 (D.C. Cir. 1982) (documents
that are otherwise privileged will lose that status where "the
privileged relation from which they derive was entered into or
used for corrupt purposes").

Thus, the Court concludes that the non-testifying expert
witness privilege contained in Fed. R. Civ. P. 26(b)(4)(D), like
the attorney-client and work-product privileges, must give way to
the crime-fraud exception.

    2.   *Alleged Misconduct*

IMR claims that its "investigators uncovered evidence that
Mr. Akhmetshin, on behalf of ECVK, its parent company EuroChem,
and/or those companies' New York law firm Salisbury & Ryan, hacked
into the computer systems of IMR and its officers and associates,
stole confidential, personal and otherwise sensitive information,
and then disseminated that information in an unlawful attempt to
gain an unfair advantage in the Dutch Action." Applicant's Mot.
at 4. IMR relies on a number of sources to support its allegations.

IMR has put forth evidence "that Mr. Akhmetshin was hired by
Salisbury & Ryan LLP on behalf of ECVK to hack into IMR's computer
systems, steal IMR's confidential information, and disseminate it

to third parties." Applicant's Reply at 6. To substantiate this allegation, IMR points primarily to the sworn declaration of Akis Phanartzis who works for a private investigation firm that IMR hired to follow Mr. Akhmetshin and eavesdrop on his conversations. See Decl. of Akis Phanartzis at ¶¶ 1-12 [Dkt. No. 1-6]. Mr. Phanartzis claims to have overheard Mr. Akhametshin in a London coffee shop state that "he [had] organized the hacking of IMR's computer systems" on behalf of ECVK. Id. at ¶¶ 10, 14.[4] Among other things, "Mr. Akhmetshin [noted] that he was hired because there were certain things that the law firm [Salisbury & Ryan] could not do." Id. at ¶ 21.

In order to further substantiate its hacking allegations, IMR points to a thumb drive containing confidential information belonging to IMR, which it believes Mr. Akhmetshin accessed. IMR claims to have received the thumb drive, which contains a large number of the company's sensitive documents, from an anonymous source. Applicant's Ex. E, Decl. of Raphael Rahav at ¶ 7-8 [Dkt.

---

[4] The Declaration is not entirely clear as to whether Mr. Phanartzis had personal knowledge of all the facts contained therein, stating only that he is "familiar with the facts set forth in this Declaration, either from personal knowledge or on the basis of documents that have been provided to [him]." Id. at ¶ 3 (emphasis added). However, the Declaration recounts the coffee shop incident in the first person, demonstrating that Mr. Phanartzis was present for the recounted conversation: "I . . . took a table close to where Mr. Akhmetshin was sitting. I was sitting at a table approximately one meter from him, with the goal of hearing any conversation that might take place." Id. at ¶ 11.

No. 27-6]; Applicant's Ex. F, Decl. of Tadeusz Jarmolkiewicz at ¶ 12-13 [Dkt. No. 27-7]; Applicant's Ex. L, Decl. of Melanie Maugeri at ¶ 7-9 [Dkt. 27-13]. According to the Declaration of Melanie Maugeri, a digital forensic examiner retained by IMR, certain files on the thumb drive were last accessed by a user called "RA," whom IMR takes to be Rinat Akhmetshin. Ex. L, Decl. of Melanie Maugeri at ¶¶ 7-8. Other files, according to Ms. Maugeri's Declaration, were last accessed by a user called "Scott Horton." Id. Mr. Akhmetshin has admitted to discussing his work for Salisbury & Ryan with a man by that name. Revised Privilege Log entries 247, 249, 251-53; Applicant's Ex. H, Tr. at 164-79 [Dkt. No. 27-9].

IMR contends that Mr. Akhmetshin's alleged hacking constituted a crime under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and the Stored Communications Act, 18 U.S.C. § 2701. However, Applicant also contends that, in addition to showing evidence of a crime or fraud, it may also meet its burden with evidence of some "other type of misconduct fundamentally inconsistent with the basic premises of the adversary system." In re Sealed Case, 676 F.2d at 812.

Mr. Akhmetshin vigorously contests the truth of IMR's allegations. He states plainly, "It is not possible that I was overheard saying that I was turning over documents that I had

hacked from an IMR or ENRC[5] computer, because I have never done so, nor do I have the skills to do so." Akhmetshin Delc. at ¶ 14 [Dkt. No. 10-1].

Moreover, he contends that the "nature of the conversation" in the London coffee shop "should trigger skepticism" because it "had all the earmarks of a contrivance intended to induce a boasting statement of capabilities of Mr. Akhmetshin." Resp't's Opp'n at 10. He alleges that "the entrapped conversation methodology [is] an established [tactic]" used by IMR's preeminent shareholders, three Russian business magnates known as "the Troika." Id. at 10-11 (citing Eurasian Natural Resources Corp. v. Sir Paul Judge, [2014] EWHC 3556 (QB), 2014 WL 5483609 (Oct. 31, 2014) (Mrs. Justice Swift)).[6] The context of this apparent entrapment, he argues, should cast doubt on the veracity of Mr. Phanartzis's allegations.

Mr. Akhmetshin also objects to IMR's contentions related to the thumb drive received from an anonymous source. He states that materials leaked by officers or directors of ENRC, a company related to IMR, were already circulating freely on the "London Information Bazaar," a name the Parties use to describe the

---

[5] ENRC is related to IMR through ownership. The shareholders who ultimately own IMR were the former owners of ENRC. Ex Parte Application at 7 n.3 [Dkt. No. 1].
[6] Available at http://www.bailii.org/ew/cases/EWHC/QB/2014/3 556.html (last visited July 14, 2015).

informal market for sensitive financial, political, and other information that exists in London. Respondent's Opp'n at 12 (citing Eurasian Natural Resources Corporation, Ltd., 2014 WL 5483609 ¶ 13).

Finally, citing Fed. R. Evid. 901, Respondent notes that the thumb drive would not be admissible as evidence at trial for lack of a chain of custody.

While Mr. Akhmetshin's concerns are not frivolous, they are not enough to preclude further review of the documents. IMR must only set forth a "showing of a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." Zolin, 491 U.S. at 572 (internal citations and quotation marks omitted). It has done so.

The Court concludes that it is impossible to discern from Mr. Akhmetshin's rather opaque Revised Privilege Log, which documents may have a nexus to the alleged misconduct. See Privilege Log [Dkt. No. 27-4]. Accordingly, in order to determine which, if any, of the documents withheld under the non-testifying expert privilege are sufficiently linked to the alleged misdeeds to pierce the asserted privilege, the Court shall review, in camera, all of the documents for which Mr. Akhmetshin has asserted non-testifying expert privilege.

### 3.   ECVK's Responsibility

ECVK claims that the crime-fraud exception cannot pierce the non-testifying expert privilege asserted here because IMR has put forward no evidence that ECVK itself engaged in any misconduct. ECVK claims that its counsel, Salisbury & Ryan, did not "direct anyone to obtain information from IMR or any of its affiliates in any improper manner." Intervenor's Opp'n at 22. It notes that "Salisbury & Ryan's engagement letter with Mr. Akhmetshin specifically required that he comply with all applicable laws in the conduct of his research[.]" Id. Finally, ECVK points out that it had no direct interaction with Mr. Akhmetshin. Rather, its counsel made the decision to hire him and supervised his work.

However, Mr. Akhmetshin's engagement letter clearly states that he was hired to work on ECVK's behalf. Akhmetshin Decl., Ex. A at 1 [Dkt. No. 10-1] ("Salisbury & Ryan LLP, as attorney agent [sic] for its client [i.e., ECVK] and not in its individual capacity . . . ., has engaged you to provide the services described below"). Moreover, Mr. Akhmetshin states in his Opposition that he was "tolling [for information] on [ECVK's] behalf." Resp't's Opp'n at 6.

Intervenor relies on In re Sealed Case, 107 F.3d at 50, for the proposition that IMR must show "that ECVK itself had   . . . unlawful intent[.]" Intervenor's Opp'n at 21. However, as discussed above, IMR has put forth evidence that Mr. Akhmetshin

engaged in conduct that could trigger discovery under the crime-fraud exception within the scope of his duties as ECVK's expert. See Applicant's Ex. D at ¶ 14 [Dkt. No. 27-5] ("Mr. Akhmetshin stated that he organized the hacking of IMR's computer systems specifically on behalf of [ECVK]" (emphasis added)). In camera review will allow the Court to determine whether Mr. Akhmetshin "was on a frolic of his own, against the advice of . . . counsel," In re Sealed Case, 107 F.3d at 50, or whether his actions are properly attributable to ECVK.

### C.   Strategic Communications

IMR contends that a large number of documents on Mr. Akhmetshin's privilege log may not be properly withheld under the non-testifying expert privilege because they relate to a public relations campaign orchestrated by Mr. Akhmetshin rather than his expert consulting services.

Respondent and ECVK contend that Mr. Akhmetshin did not engage in any strategic communications on ECVK's behalf. Rather, they say that Mr. Akhmetshin submitted only a proposal to lead a public relations campaign that ECVK swiftly rejected.

Mr. Akhmetshin and ECVK do not argue that strategic communications or public relations work performed by Mr. Akhmetshin would be privileged. Instead, they simply contend that Mr. Akhmetshin's numerous communications with journalists

involved research and investigation in his capacity as a non-testifying expert.

Accordingly, whether the documents sought concern strategic communications and whether Mr. Akhmetshin performed such work at all are factual questions that the Court will be able to answer as part of its in camera review.

### D. Communications with Third Parties

IMR next contends that Mr. Akhmetshin must produce any documents he shared with third parties because third-party disclosure constitutes a waiver of any otherwise applicable claim of privilege. The Parties cite conflicting authority as to whether the non-testifying expert privilege is subject to waiver at all. Compare White v. Electrolux N. Am., Inc., 2014 WL 1365424, at *2 (N.D. Ill. Apr. 7, 2014) (explaining that "the concept of waiver is applicable to Rule 26(b)(4)(D)" because Rule 26(b)(4)(D) "is simply an application of the work product rule") with Precision of New Hampton, Inc. v. Tri Component Prods. Corp., 2013 WL 2444047, at *5-6 (N.D. Iowa June 5, 2013) (after surveying cases, finding that it "appears dubious that the waiver doctrine applies to" the non-testifying expert privilege). Another District Judge in this Circuit has "[found] that while it is unclear whether Rule 26(b)(4)(D) is even subject to waiver, the general trend in other districts has been to find that it is not." Eidos Display, LLC v. Chunghwa Picture Tubes, Ltd., 296 F.R.D. 3, 7 (D.D.C. 2013).

- 17 -

However, the Court need not decide whether the Rule 26(b)(4)(D) privilege is subject to waiver because, as noted above, the limited detail in Mr. Akhmetshin's Revised Privilege Log makes it difficult to determine whether particular communications were, in fact, made in furtherance of his non-testifying-expert role. Before it can reach the issue of waiver, the Court must first determine whether the communications at issue would have been otherwise privileged.

Moreover, our Court of Appeals has stated that whether a privilege subject to waiver has been waived depends upon whether the proponent "had a reasonable basis for believing that the recipient would keep the disclosed material confidential." United States v. Deloitte LLP, 610 F.3d 129, 141 (D.C. Cir. 2010). Thus, even if the Court ultimately determines that the non-testifying expert privilege is subject to waiver, it will have to consider this additional factual question via in camera review.

### E.   Lieberman Documents, Attorney-Client Privilege

Respondent contends that a separate category of documents sought by IMR, which do not directly concern ECVK, are protected by attorney-client privilege because they are communications between Mr. Akhmetshin and his own personal lawyer, Edward Lieberman.[7]

---

[7] These documents are listed in the Revised Privilege Log as numbers 207, 217-222, 224-225, 228-229, 231-232.

IMR contends that these communications are not privileged because Mr. Akhmetshin testified at his deposition "that Mr. Lieberman did not work on the ECVK project and that Mr. Akhmetshin never sought Mr. Lieberman's legal advice concerning the ECVK project, IMR, Shaft Sinkers, or ENRC." Applicant's Mot. at 27 (citing Applicant's Ex. H at 113-14 [Dkt. No. 27-9]). After the deposition, Mr. Akhmetshin amended two of his answers about Mr. Lieberman's provision of legal advice from "no" to "yes," indicating that Mr. Lieberman did, in fact, provide legal advice. Ltr. Form J. Kauke to U.S. Legal Support, Applicant's Ex. Y [Dkt. No. 27-26].

"The attorney-client privilege applies where (1) the holder of the privilege is or sought to be a client; (2) the person to whom the communication was made is a member of the bar of a court or his subordinate and in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed by his client without the presence of strangers for the purpose of securing primarily either an opinion on law, legal services, or assistance in some legal proceeding and not for the purpose of committing a crime or tort; and (4) the privilege has been claimed and not waived by the client." Elkins v. D.C., 250 F.R.D. 20, 24 (D.D.C. 2008) (citing In re Sealed Case, 737 F.2d 94, 98-99 (D.C. Cir. 1984)).

Only prong (3) is at issue. Whether the communications between Mr. Lieberman and Mr. Akhmetshin were made "for the purpose of securing primarily [legal advice,]" id., is not entirely clear from the record. Accordingly, the communications with Mr. Lieberman must be included in Mr. Akhmetshin's submission for in camera review.

**F.   Post-August 31, 2013 Documents**

Respondent claims that Applicant is not entitled to any documents post-dating August 31, 2013 for two reasons. First, Respondent notes that reference to any post-August 31 documents was omitted in IMR's meet and confer statement. Thus, under LCvR 7(m), Applicant's Motion to Compel discovery should be denied with respect to these documents.

Second, Respondent contends that post-August 31, 2013 documents are outside the scope of IMR's Application. Intervenor notes that IMR asked this Court for an order to permit discovery of "a discrete universe of documents and testimony related to Mr. Akhmentshin's own unlawful efforts on behalf of EuroChem and/or ECVK." Intervernor's Opp'n at 16 n.8 (citing IMR's 28 U.S.C. § 1782 Application at 17 [Dkt. 1]). August 31, 2013 was three months after the end of ECVK's retention of Mr. Akhmetshin. Id. Accordingly, documents post-dating August 31, 2013 could not have any relation to "Mr. Akhmetshin's . . . efforts on behalf of EuroChem" -- unlawfull or otherwise.

Therefore, Applicant's Motion to Compel with respect to documents created on or after August 31, 2013 shall be denied.

### G.   Additional Day of Deposition

IMR contends that because Mr. Akhmetshin made overbroad assertions of privilege at his first deposition, he should be required to sit for an additional day of deposition. The Court agrees.

Mr. Akhmetshin, upon the advice of counsel, declined to answer questions about the general subject matter of communications, the persons present for those communications, and even the number of individuals present for those communications. The Court's in camera review may reveal additional overbroad assertions of privilege.

Accordingly, the Parties shall work collaboratively to schedule an appropriate time for the deposition, and Mr. Akhmetshin shall appropriately answer relevant questions regarding non-privileged information.

### IV.   CONCLUSION

For the foregoing reasons, IMR's Motion to Compel Production of Documents and Additional Day of Deposition [Dkt. No. 27] shall be **granted in part and denied in part**, and Mr. Akhmetshin shall submit for in camera review all documents listed on his Revised

Privilege Log except documents post-dating August 31, 2013 or documents that have already been produced to opposing counsel.

July 28, 2015

Gladys Kessler
United States District Judge

Copies to: attorneys on record via ECF