UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                                    :
IN RE:                              :
                                    :
APPLICATION OF INTERNATIONAL        :
MINERAL RESOURCES B.V. FOR AN       :
ORDER TO TAKE DISCOVERY             : Civil Action No. 14-mc-340(GK)
PURSUANT TO 28 U.S.C. § 1782,       : (Under Seal)
                                    :
            Applicant.              :
                                    :
```

### MEMORANDUM OPINION

On May 18, 2014, Applicant International Mineral Resources B.V. ("IMR" or "Applicant") filed a Motion to Compel Production of Documents [Dkt. No. 27] that Rinat Akhmetshin ("Mr. Akhmetshin" or "Respondent") had refused to produce on grounds of privilege. On June 18, 2015, Mr. Akhmetshin and Intervenor Eurochem Volga-Kaliy LLC ("ECVK" or "Intervenor") filed their Oppositions [Dkt. Nos. 38, 39], and on June 25, 2015, IMR filed its Reply [Dkt. No. 43].

On July 28, 2015, the Court issued a Memorandum Opinion and Order [Dkt. Nos. 47, 48], requiring Mr. Akhmetshin to submit the documents at issue for in camera review. In re Application of Int'l Mineral Res. B.V., No. CV 14-MC-340(GK), 2015 WL 4555248, at *7 (D.D.C. July 28, 2015) [Dkt. No. 48]. The Court refers readers to that Opinion for additional background on the matter at hand.

Having reviewed the 261 documents[1] submitted by Mr. Akhmetshin, the Court concludes that the overwhelming majority of them are not privileged. Indeed, a great many of Mr. Akhmetshin's (and Intervenor's) assertions of privilege are entirely frivolous. Accordingly, Mr. Akhmetshin shall immediately produce to counsel for IMR all non-privileged documents as set forth below.

## I.    PRIVILEGES ASSERTED

Mr. Akhmetshin has asserted that all of the 261 documents at issue are subject to one or more of the following: attorney-client privilege, work-product doctrine, and non-testifying expert privilege. Intervenor joins Mr. Akhmetshin's assertions of privilege for the most part, but notes that "34 [of the 261 documents] are not subject to any privileges that belong to [it]" and thus "defers to Mr. Akhmetshin about whether to produce those documents[.]" Intervenor's Opp'n at 2.

"In order to demonstrate the applicability of the attorney-client privilege, the proponent must establish each of the following essential elements:(1) The holder of the privilege is, or sought to be, a client;(2) The person to whom the communication is made is a member of the bar or his subordinate and, in connection

---

[1] The Privilege Log Mr. Akhmetshin submitted to the Court, as well as the Revised Privilege Log Submitted to Opposing Counsel Applicant's Ex. A [Dkt. No. 27-2], contain 263 entries, but Mr. Akhmetshin determined that entries 226 and 227 are not privileged and has released them to IMR.

with the communication at issue, is acting in his or her capacity as a lawyer; (3) The communication relates to a fact of which the attorney was informed by his client, outside the presence of strangers, for the purpose of securing legal advice; and (4) The privilege has been claimed by the client." In re Veiga, 746 F. Supp. 2d 27, 34 (D.D.C. 2010) (citing Elkins v. District of Columbia, 250 F.R.D. 20, 24 (D.D.C. 2008)). Attorney-client privilege "has generally been narrowly construed" and may be waived by voluntary disclosure. Id.

The work-product doctrine is codified at Fed. R. Civ. P. 26(b)(3)(A) and protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."[2] Fed. R. Civ. P. 26(b)(3)(A).

This privilege too may be waived, but the test differs from the one applicable to attorney-client privilege. "[V]oluntary disclosure to a third party constitutes a waiver where the disclosure is made under circumstances inconsistent with the maintenance of secrecy from one's adversary. Pursuant to this so-

---

[2] Work product "may be discovered if:(i) they are otherwise discoverable under Rule 26(b)(1); and(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26.

-3-

called 'maintenance of secrecy' standard, courts inquire whether
the proponent 'had a reasonable basis for believing that the
recipient would keep the disclosed material confidential.'" Veiga,
746 F. Supp. 2d at 35 (quoting United States v. Deloitte LLP, 610
F.3d 129, 140 (D.C. Cir. 2010)).

The non-testifying expert privilege, codified at Fed. R. Civ.
P. 26(b)(4)(D), provides that "[o]rdinarily, a party may not, by
interrogatories or deposition, discover facts known or opinions
held by an expert who has been retained or specially employed by
another party in anticipation of litigation or to prepare for trial
and who is not expected to be called as a witness at trial." Fed.
R. Civ. P. 26 (b)(4)(D).[3]

The Parties disagree as to whether this privilege is subject
to waiver, and as recently as July 25, 2013, another Judge in this
District noted the "uncertain state of the law with respect to
waiver and Rule 26(b)(4)(D)[.]" Eidos Display, LLC v. Chunghwa
Picture Tubes, Ltd., 296 F.R.D. 3, 8 (D.D.C. 2013). Moreover, as
the Court noted in its July 28, 2015 Memorandum Opinion, before
the Court may reach the issue of waiver of Rule 26(b)(4)(D), it

---

[3] A party may discover such information "only: (i) as provided in
Rule 35(b); or (ii) on showing exceptional circumstances under
which it is impracticable for the party to obtain facts or opinions
on the same subject by other means." Fed. R. Civ. P. 26 (b)(4)(D).
Rule 35 deals with physical and mental examinations where a party's
"mental or physical condition . . . is in controversy[,]" Fed. R.
Civ. P. 35(a)(1), and therefore, is not relevant.

must first determine whether the communications at issue were made in furtherance of Mr. Akhmetshin's asserted role as a non-testifying witness. In re Application, 2015 WL 4555248, at *7.

## II.   APPLICATION OF PRIVILEGE DOCTRINES

### A.   Documents Scheduling E-mails

As noted above, the vast majority of Mr. Akhmetshin's assertions of privilege are entirely without basis. The first group of non-privileged documents that must be released are e-mails containing nothing more than attempts to schedule phone calls and in-person meetings. See e.g., United States v. Moazzeni, 906 F. Supp. 2d 505, 514 (E.D. Va. 2012) ("emails scheduling appointments or discussing administrative matters" were not protected by attorney-client privilege). Such communications do not contain "facts known or opinions held" by an expert, Fed. R. Civ. P. 26(b)(4)(D), nor do they "relate[] to a fact of which the attorney was informed . . . for the purpose of securing legal advice," Veiga, 746 F. Supp. 2d at 34, nor are they work product "prepared in anticipation of litigation or for trial," Fed. R. Civ. P. 26(b)(3)(A). Accordingly, Mr. Akhmetshin must produce the documents identified by the following privilege log entries: 5-21, 27-44, 47-53, 58-63, 68-69, 71-75, 78-88, 93-96, 100-102, 125-29, 131-36, 138-48, 195-96, 233-35, and 237.

**B. Documents Relating to Strategic Communications and Public Relations**

In their briefs, the Parties made very different representations as to Mr. Akhmetshin's role as ECVK's agent. IMR contended that Mr. Akhmetshin did not serve as an expert, but instead, performed "strategic communications" work on ECVK's behalf. See Applicant's Mot. at 9-10.

During his deposition, Mr. Akhmetshin acknowledged that, in the course of his consulting work for various clients, he often engages in strategic communications campaigns and described the methods he employs to "encourage journalists to look into [his] client['s] matters." Akhmetshin Deposition at 149-151, Applicant's Ex. H [Dkt. No. 27-9]. He also stated that he "developed and proposed to ECVK a strategic communications strategy relevant to [litigation between IMR and ECVK in the courts of the Netherlands]." Decl. of Rinat Akhmetshin ("Akhmetshin Decl.") ¶ 6, Applicant's Ex. I [Dkt. No. 27-10]. Mr. Akhmetshin and ECVK, however, have consistently maintained that Mr. Akhmetshin's strategic communications and public relations proposal was swiftly rejected and that Mr. Akhmetshin performed no such work on ECVK's behalf.

As the Court noted in its previous Memorandum Opinion, "Mr. Akhmetshin and ECVK do not argue that strategic communications or

-6-

public relations work performed by Mr. Akhmetshin would be privileged. Instead, they simply contend that Mr. Akhmetshin's numerous communications with journalists involved research and investigation in his capacity as a non-testifying expert." In re Application, 2015 WL 4555248, at *6. The Court also stated that "whether the documents sought concern strategic communications and whether Mr. Akhmetshin performed such work at all are factual questions that the Court will be able to answer as part of its in camera review." Id. Having performed an extensive review of the documents submitted, the Court can conclusively answer both questions in the affirmative.

Mr. Akhmetshin's Privilege Log is riddled with e-mails between him and reporters for major publications. See e.g., Priv Nos. 22, 23, 24, 97, 164, 170, 192, 201, 202, 205. Respondent explains this by contending that "Mr. Akhmetshin was able to use journalists to obtain research as part of his investigation." Resp't's Opp'n at 17. According to Respondent, rather than feeding stories to journalists, Mr. Akhmetshin merely "[e]xchanged information with journalists on the London Information Exchange[, which] does not equate to engaging in a strategic communications campaign." Resp't's Opp'n at 17.

Mr. Akhmetshin's explanation of his interactions with reporters, as it turns out, is simply not accurate. In none of the

-7-

e-mails produced does Mr. Akhmetshin ask these reporters for information. Instead of exchanging information, the flow of information appears to be one-way: In numerous emails Mr. Akhmetshin forwards the details of ECVK's suit against IMR as well as generally derogatory information about IMR and its affiliates to reporters, see e.g., Priv Nos. 170, 201, 202, 205. Moreover, Mr. Akhmetshin's public relations role is made clear by e-mails containing what could reasonably be called a smoking gun.

For example, Privilege Log entry 76 contains an email between ECVK's counsel, Mr. Akhmetshin, and an ECVK employee. Among other things, it states, "As I mentioned, Rinat [Akhmetshin] is advising on the international PR campaign we have been discussing. . . . He has thoughts as to how we should proceed and can help your PR and IR people." Id. Those "thoughts" quickly turned into actions as reporters went directly to Mr. Akhmetshin for information about ECVK's dispute with IMR. See e.g., Priv No. 98 (reporter asks Mr. Akhmetshin, "what is the chance i can get an on the record comment from eurochem? And any possibility of documents/charges? i'm running out of time so would realy love to get a quote or two and a bit more info.").

In Privilege Log entry 163, Mr. Akhmetshin writes to ECVK's counsel, "was great to see you, patrick. Attached is the document i mentioned to you. pls send me your filings once they are ready

-8-

and i will work on getting the story out." Priv No. 163 (emphasis
added). In entry 171, Mr. Akhmetshin forwards ECVK's counsel an e-
mail from a reporter along with the following note: "this guy is
writing for the sunday times [a prominent UK newspaper], . . . he
did tons of kazakh stories with me. pls send me details about
arbitration and NL [presumably, Netherlands] cases, will channel
it to him when the time is right." Priv No. 171 (emphasis added).
Later, Mr. Akhmetshin does just that, sending the same reporter
copies of documents from the Dutch Action. Priv No. 205.

        The examples above were not isolated incidents. On another
occasion, Mr. Akhmetshin wrote ECVK's counsel stating, "patrick,
simon [a reporter for The Guardian, another UK newspaper] is trying
to run a piece in the guardian about yr case, can u send a link or
some info where their lawyers can confirm the filing?" Priv No.
197. Minutes later, he asks Intervenor's counsel for information
to answer questions from another reporter. Priv No. 198.

        Later, Ed Lieberman, a lawyer whom Mr. Akhmetshin contends is
his personal counsel, forwarded Mr. Akhmetshin a copy of a news
story from The Guardian. Priv No. 217.[4] Mr. Akhmetshin responds,

---

[4] Despite Mr. Akhmetshin's claims to the contrary, this particular
e-mail exchange is not subject to attorney-client privilege
because there is absolutely nothing to indicate it was made for
the purpose of giving or receiving legal advice.

"i MADE that!! Thanks meester!" Priv No. 218. Mr. Lieberman
answers, "Who didn't know that[?]" Priv No. 219.

Finally, if there was any doubt that Mr. Akhmetshin was
performing public relations and strategic communications work on
ECVK's behalf, ECVK's counsel felt the need to clarify the
following in an e-mail ending Mr. Akhmetshin's relationship with
ECVK: "to avoid any further confusion, if you [Mr. Akhmetshin]
receive any inquiries form the press or other outsiders about our
case, just ask them to contact [ECVK's] press relations department
directly." Priv No. 254.

In short, despite his assertions to the contrary, there is
overwhelming evidence that Mr. Akhmetshin, in fact, engaged in
strategic communications and public relations on ECVK's behalf.

Mr. Akhmetshin and ECVK have never claimed that such documents
are subject to the non-testifying expert privilege (instead, they
falsely claimed that such documents did not exist). Resp't's Opp'n
at 16; Intervenor's Opp'n at 11-12. Moreover, strategic
communications-related documents are not subject to the work-
product or attorney-client privilege, because even if such
privileges could apply to some of the underlying documents, sharing
the information with journalists looking to disseminate them
would, of course, constitute waiver. In re Veiga, 746 F. Supp. 2d
at 34-35.

Accordingly, Mr. Akhmetshin must produce to IMR all documents related to strategic communications, including any e-mails providing information to journalists, any e-mails between Mr. Akhmetshin and ECVK's counsel containing information also provided to journalists, and any e-mails between Mr. Akhmetshin and ECVK's counsel concerning Mr. Akhmetshin's conduct of the strategic communications and/or public relations campaign. Those documents are listed as Privilege Log entries: 4, 22-24, 55-56, 76, 97-98, 103, 104, 152, 153, 155, 163-165, 169-71, 175, 177-82, 187-93, 197-203, 205, 208, 216-219, 238, 240, 241, 243-254, 261.

## C.  News Articles

The next group of documents that are very clearly not subject to any privilege are news articles appearing in major publications. Many of the withheld documents are simply copies of articles reprinted from the internet without any analysis or indication that they were used for any particular purpose (or even read by Mr. Akhmetshin). Because the Court concludes that Mr. Akhmetshin was engaged in non-privileged, strategic communications work, and has no reason to believe these news articles were used for anything other than that work, it follows that the news articles themselves are not privileged and must be produced. These documents are Privilege Log entries: 137, 166, 174, 194, 204, 206, 210-213, 215, 223, 236, 239, and 242.

-11-

**D.   Documents Subject to Non-Testifying Expert Privilege**

Despite Mr. Akhmetshin's overbroad assertions of privilege discussed above and below this section, several of the documents listed in Mr. Akhmetshin's Privilege log do, in fact, contain "facts known or opinions held" by Mr. Akhmetshin in his capacity as an expert on Eurasian business and political affairs hired by ECVK in anticipation of litigation. Fed. R. Civ. P. 26(b)(4)(D). As discussed in the next section, many of these documents must be produced under the crime-fraud exception, but a fair number do not appear to be connected to the wrongdoing IMR alleges.  Therefore, the following Privilege Log entries are privileged under Rule 26(b)(4)(D) and need not be produced: 25, 26, 45, 46, 64, 65, 77, 89-92, 107, 108, 114-117, 130, 149-151, 154, 156-162, 168, 172, 173, 176, 183-186, 209.

**E.   Crime-Fraud Exception**

In its Motion to Compel, IMR alleged that Mr. Akhmetshin had organized the hacking of computer systems belonging to IMR and affiliated companies and then proceeded to disseminate that information to ECVK and journalists. More specifically, IMR contended that Mr. Akhmetshin had accessed a thumb-drive containing the hacked files and that the thumb-drive was later given to IMR's agents by an anonymous source. According to IMR,

-12-

these actions violated 18 U.S.C. §§ 1030 and 2701.[5] See In re Application, 2015 WL 4555248, at *4-*7 for a more extended discussion of IMR's allegations.

The Court held in its previous Memorandum Opinion that the crime-fraud exception applicable to most forms of privilege also applies to the non-testifying expert privilege udner Fed. R. Civ. P. 26(b)(4)(D). In re Application, 2015 WL 4555248, at *3. When invoking the crime-fraud exception to defeat a claim of privilege, a party "satisfies its burden of proof if it offers evidence that if believed by the trier of fact would establish the elements of an ongoing or imminent crime or fraud." In re Sealed Case, 754 F.2d 395, 399 (D.C. Cir. 1985). This prima facie showing "does not have to be established entirely with independent evidence—the documents themselves are commonly the best evidence available." Tri-State Hospital Supply Corp. v. United States, 238 F.R.D. 102, 104 (D.D.C. 2006) (citing United States v. Zolin, 491 U.S. 554, 567 (1989)). Once a party has made its prima facie showing, in

---

[5] Under § 1030, it is a crime to gain unauthorized access to and obtain information from a "computer . . . which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce." 18 U.S.C. § 1030(a)(2)(C) & (e)(2). Under § 2701, it is a crime to "intentionally access[] without authorization a facility through which an electronic communication service is provided; or intentionally exceed[] an authorization to access that facility; and thereby obtain[]…a wire or electronic communication while it is in electronic storage."

order to obtain discovery of a particular communication it must "establish some relationship between the communication at issue and the prima facie violation." In re Sealed Case, 754 F.2d 395, 399 (D.C. Cir. 1985).

The Court previously concluded that IMR had made a sufficient showing to trigger in camera review. Now the Court concludes that the evidence submitted by IMR with its Motion together with several of the withheld documents are sufficient to make the prima facie showing necessary to overcome the non-testify expert privilege.

IMR's claims that Mr. Akhmetshin organized the hacking of IMR-related computers and searched for specific information located there are supported by e-mails between Mr. Akhmetshin and ECVK's counsel. See Priv No. 54 (Mr. Akhmetshin writes, "the project is already up and running and it is churning up the info."); Priv No. 57 (To ECVK's counsel: "patrick, the indexing is done, can you, pls send me a list of terms/names for a scan?"); Priv No. 67 ("dear patrick, looks like the work is finally completed."); Priv No. 119 ("just spoke with the guy – he said they pulled everything there was available. Need to go collect it some time after the holidays").

Other e-mails reference an object – mentioned only as "the thing" – which must be dropped off. See Priv No. 66 (Mr. Akhmetshin writes, "i really hope to be able to have the thing in the next

-14-

day or two."); Priv No. 70 (Mr. Akhmetshin writes, "plan to get
that thing in London tomorrow, can take it anywhere, pls advise
where should I go."); Priv No. 121 ("i plan to collect the thing
in london on wed this week and be traveling to msk after that. .
. . can drop the thing with you afternoon dec.10."). A reasonable
fact finder could conclude that this object is the thumb-drive
containing sensitive IMR files that IMR's agents later recovered
in London.

IMR has thus made the requisite showing, and therefore, Mr.
Akhmetshin must produce all documents related to the alleged crime.
The related documents are Privilege Log entries 54, 57, 66, 67,
70, and 118-24.[6]

### F.    Attorney-Client Privilege

Mr. Akhmetshin claims that his e-mails corresponding with his
"personal counsel" Mr. Lieberman are protected by attorney-client
privilege and the work-product doctrine. They are not.

---

[6]  ECVK contends that any crime allegedly committed by
Mr. Akhmetshin could not overcome a privilege owned by ECVK unless
IMR could make a showing that ECVK had somehow been implicated in
the wrongdoing. The Court need not reach that contention because
the communications make clear that ECVK's counsel had knowledge of
Mr. Akhmetshin's alleged activities taken on ECVK's behalf. See In
re Sealed Case, 676 F.2d 793, 815 (D.C. Cir. 1982) ("The prima
facie violation may also be the attorney's, since attorney
misconduct negates the premise that the adversary system furthers
the cause of justice.").

As discussed above, several of Mr. Akhmetshin's e-mails with Mr. Lieberman involve not legal advice or work produced in anticipation of litigation, but discussion of Mr. Akhmetshin's strategic communications work. Priv Nos. 207, 217-219.

Other e-mails that on first blush appear to be of a legal nature, see Priv Nos. 220, 221, and 222, are likewise not subject to attorney-client privilege. Whether or not these communications were originally made for the purpose of receiving legal advice, Mr. Akhmetshin waived whatever privilege the e-mails had by acknowledging in later Privilege Log entries that he forwarded the communications to a third-party, see Priv No. 224, 225, whose job apparently was "to sell it[,]" see Priv No. 222. See also Priv No. 228 (sharing communication with Mr. Lieberman with third party); Priv No. 229 (communication from Mr. Lieberman); Priv No. 230 (forwarding Priv No. 229 to third party).

Finally, two e-mails between Mr. Lieberman and Mr. Akhmetshin are simply not of a legal nature and do not fall under any asserted privilege. Priv Nos. 231, 232.

For these reasons, none of Mr. Akhmetshin's communications with Mr. Lieberman are privileged and the following Privilege Log entries must be produced: 207, 217-222, 224, 225, 228-232.

**G.    E-mails with Third Party**

The documents produced for in camera review include numerous
e-mails between Mr. Akhmetshin and the owner of the e-mail address
2703tarazuisun@gmail.com. Mr. Akhmetshin contends that two of his
e-mails with 2703tarazuisun@gmail.com are protected by attorney-
client privilege. See Priv Nos. 228, 230. But the mere inclusion
of Mr. Lieberman on e-mails sent to 2703tarazuisun@gmail.com does
not bring the communications within the bounds of attorney-client
privilege. Instead, the inclusion of a third party's e-mail address
waives the privilege that Mr. Akhmetshin's communications with Mr.
Lieberman might have otherwise enjoyed. In re Veiga, 746 F. Supp.
2d at 34; United States v. Singhal, 800 F. Supp. 2d 1, 7 (D.D.C.
2011) (e-mails between lawyer and client including "third party
recipients" were not privileged).

Mr. Akhmetshin contends that the rest of the e-mails sent to
or from 2703tarazuisun@gmail.com are protected from discovery by
the non-testifying expert privilege and the work product doctrine.
Respondent's basis for asserting the protection of the work product
doctrine is hard to understand, as none of the documents appear to
have been created by a party's representative in anticipation of
litigation as Rule 26(b)(3)(A) requires. Moreover, even if the e-
mails contained work product, Mr. Akhmetshin has not put forth a
reasonable    basis    for    concluding    that    the    owner    of

-17-

2703tarazuisun@gmail.com would keep the information confidential, and thus, sharing the information waives the asserted privilege. In re Veiga, 746 F. Supp. 2d at 35.

Finally, with respect to the non-testifying expert privilege, IMR contends that Mr. Akhmetshin's e-mails with 2703tarazuisun@gmail.com constitute waiver of the privilege provided by Rule 26(b)(4)(D). Mr. Akhmetshin argues that the non-testifying expert privilege simply is not waivable.

As the Court has noted earlier, the law is unsettled as to whether the protections of Rule 26(b)(4)(D) may be waived. Eidos Display, 296 F.R.D. at 8. However, the Court need not reach that issue because context makes clear that Mr. Akhmetshin's e-mails with 2703tarazuisun@gmail.com fall within the scope of Mr. Akhmetshin's strategic communications and public relations role rather than his role as an expert.

Many of the e-mails between Mr. Akhmetshin and 2703tarazuisun@gmail.com simply share news coverage. See e.g., Priv No. 2, 99, 111. Others discuss the news. See e.g., Priv No. 3, 112, 113. In others, Mr. Akhmetshin forwards his communications with journalists to 2703tarazuisun@gmail.com. See e.g., Priv No. 250 (forwarding journalist's question).

Nowhere in his e-mails with 2703tarazuisun@gmail.com does Mr. Akhmetshin appear to be acting as an "expert," and accordingly,

the e-mails are not covered by Rule 26(b)(4)(D). The following Privilege Log entries must be produced: 1-3, 92, 99, 105, 106, 109-13, 150, 151, 157, 167, 175, 177, 179, 181, 182, 191, 214, 228, 230, and 250.

**H.   Documents Post-Dating May 27, 2013**

By Mr. Akhmetshin's own admission in Privilege Log entry 255, whatever role he played as IMR's agent ceased on May 27, 2013. Priv No. 255. Yet, he claims that 17 e-mails post-dating May 27, 2013, are protected by various privileges.

E-mails written or received by Mr. Akhmetshin after he severed his relationship with EVCK are not subject to the non-testifying expert or work-product privileges. Work-product doctrine protects the work of a "party or its representative," which on May 27, 2013, Mr. Akhmetshin had ceased to be. Fed. R. Civ. P. 26(b)(3)(A). The non-testifying expert privilege protects facts and opinions known to or held by an expert "retained or specially employed by another party." Fed. R. Civ. P. 26(b)(4)(D). After May 27, 2013, Mr. Akhmetshin was no longer retained or employed by ECVK, so facts and opinions made known after that date cannot be privileged. Accordingly, Privilege Log entries 247-263 must be released.[7]

---

[7] Except for several e-mails that address Mr. Akhmetshin's negotiation of his final payment from ECVK, these e-mails also relate to strategic communications and would also be discoverable on that ground.

## III. RULE 11

Federal Rule of Civil Procedure 11 provides:

> By presenting to the court a pleading, written motion,
> or other paper . . . an attorney . . . certifies that to
> the best of the person's knowledge, information, and
> belief, formed after an inquiry reasonable under the
> circumstances:
>
> (1) it is not being presented for any improper purpose,
> such as to harass, cause unnecessary delay, or
> needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions
> are warranted by existing law or by a nonfrivolous
> argument for extending, modifying, or reversing existing
> law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or,
> if specifically so identified, will likely have
> evidentiary support after a reasonable opportunity for
> further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on
> the evidence or, if specifically so identified, are
> reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). The Rule goes on to state that "[i]f, after
notice and a reasonable opportunity to respond, the court
determines that Rule 11(b) has been violated, the court may impose
an appropriate sanction on any attorney, law firm, or party that
violated the rule or is responsible for the violation." Fed. R.
Civ. P. 11 (c).

As explained above, the vast majority of Respondent's and
Intervenor's assertions of privilege are utterly baseless.
Moreover, Mr. Akhmetshin and Intervenor have made groundless

-20-

factual contentions. They have also denied other factual contentions that are, in fact, supported by the documents they sought to withhold. All of these actions have unnecessarily delayed the proceedings before this Court and appear to have needlessly increased the costs of litigation.

"On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). The Court shall do so here.

## IV.    CONCLUSION

In response to IMR's discovery requests and Motion to Compel, Mr. Akhmetshin has made - and ECVK has supported - overbroad and unwarranted assertions of privilege. Mr. Akhmetshin must now produce all unprivileged documents to IMR, and both Mr. Akhmetshin and Intervenor must show cause, by September 1, 2015, why their unwarranted assertions of privilege do not violate Rule 11(b).

August 19, 2015

Gladys Kessler
Gladys Kessler
United States District Judge

**Copies to:** attorneys on record via ECF